# EXHIBIT C

# State Immunity

*Selected Materials and Commentary*

ANDREW DICKINSON
RAE LINDSAY
JAMES P LOONAM

CLIFFORD CHANCE

With a foreword by
Sir Robert Jennings, QC
Formerly Whewell Professor of International
Law at Cambridge, and formerly Judge and
President of the International Court of Justice
in The Hague

OXFORD
UNIVERSITY PRESS

1.025    **European Convention on State Immunity**[21]**, Additional Protocol and Explanatory Reports**

**European Convention on State Immunity**

Preamble

The member States of the Council of Europe, signatory hereto,

Considering that the aim of the Council of Europe is to achieve a greater unity between its Members;

Taking into account the fact that there is in international law a tendency to restrict the cases in which a State may claim immunity before foreign courts;

Desiring to establish in their mutual relations common rules relating to the scope of the immunity of one State from the jurisdiction of the courts of another State, and designed to ensure compliance with judgments given against another State;

Considering that the adoption of such rules will tend to advance the work of harmonisation undertaken by the member States of the Council of Europe in the legal field,

Have agreed as follows:

1.026    CHAPTER I

Immunity from jurisdiction

Article 1

1. A Contracting State which institutes or intervenes in proceedings before a court of another Contracting State submits, for the purpose of those proceedings, to the jurisdiction of the courts of that State.

2. Such a Contracting State cannot claim immunity from the jurisdiction of the courts of the other Contracting State in respect of any counterclaim:

 (a) arising out of the legal relationship or the facts on which the principal claim is based;

 (b) if, according to the provisions of this Convention, it would not have been entitled to invoke immunity in respect of that counterclaim had separate proceedings been brought against it in those courts.

3. A Contracting State which makes a counterclaim in proceedings before a court of another Contracting State submits to the jurisdiction of the courts

---

[21] Referred to below as the "European Convention". Basle, 16 May 1972; Cmnd 5081; ETS No 74. See Sinclair (1973) 22 ICLQ 254 and the other materials cited by Oppenheim, vol 1, 343, fn 8.

of that State with respect not only to the principal claim but also to the counterclaim.

Article 2    1.027

A Contracting State cannot claim immunity from the jurisdiction of a court of another Contracting State if it has undertaken to submit to the jurisdiction of that court either:

 (a) by international agreement;
 (b) by an express term contained in a contract in writing; or
 (c) by an express consent given after a dispute between the parties has arisen.

Article 3    1.028

1. A Contracting State cannot claim immunity from the jurisdiction of a court of another Contracting State if, before claiming immunity, it takes any step in the proceedings relating to the merits. However, if the State satisfies the court that it could not have acquired knowledge of facts on which a claim to immunity can be based until after it has taken such a step, it can claim immunity based on these facts if it does so at the earliest possible moment.

2. A Contracting State is not deemed to have waived immunity if it appears before a court of another Contracting State in order to assert immunity.

Article 4    1.029

1. Subject to the provisions of Article 5, a Contracting State cannot claim immunity from the jurisdiction of the courts of another Contracting State if the proceedings relate to an obligation of the State, which, by virtue of a contract, falls to be discharged in the territory of the State of the forum.

2. Paragraph 1 shall not apply:

 (a) in the case of a contract concluded between States;
 (b) if the parties to the contract have otherwise agreed in writing;
 (c) if the State is party to a contract concluded on its territory and the obligation of the State is governed by its administrative law.

Article 5    1.030

1. A Contracting State cannot claim immunity from the jurisdiction of a court of another Contracting State if the proceedings relate to a contract of employment between the State and an individual where the work has to be performed on the territory of the State of the forum.

2. Paragraph 1 shall not apply where:

 (a) the individual is a national of the employing State at the time when the proceedings are brought;

18 *Treaties*

1.047 **Article 22**

1. A Contracting State shall give effect to a settlement to which it is a party and which has been made before a court of another Contracting State in the course of the proceedings; the provisions of Article 20 do not apply to such a settlement.

2. If the State does not give effect to the settlement, the procedure provided for in Article 21 may be used.

1.048 **Article 23**

No measures of execution or preventive measures against the property of a Contracting State may be taken in the territory of another Contracting State except where and to the extent that the State has expressly consented thereto in writing in any particular case.

**CHAPTER IV**
Optional provisions

1.049 **Article 24**

1. Notwithstanding the provisions of Article 15, any State may, when signing this Convention or depositing its instrument of ratification, acceptance or accession, or at any later date, by notification addressed to the Secretary General of the Council of Europe, declare that, in cases not falling within Articles 1 to 13, its courts shall be entitled to entertain proceedings against another Contracting State to the extent that its courts are entitled to entertain proceedings against States not party to the present Convention. Such a declaration shall be without prejudice to the immunity from jurisdiction which foreign States enjoy in respect of acts performed in the exercise of sovereign authority (*acta jure imperii*).

2. The courts of a State which has made the declaration provided for in paragraph 1 shall not however be entitled to entertain such proceedings against another Contracting State if their jurisdiction could have been based solely on one or more of the grounds mentioned in the Annex to the present Convention,

*European Convention on State Immunity* 19

unless that other Contracting State has taken a step in the proceedings relating to the merits without first challenging the jurisdiction of the court.

3. The provisions of Chapter II apply to proceedings instituted against a Contracting State in accordance with the present article.

4. The declaration made under paragraph 1 may be withdrawn by notification addressed to the Secretary General of the Council of Europe. The withdrawal shall take effect three months after the date of its receipt, but this shall not affect proceedings instituted before the date on which the withdrawal becomes effective.

**Article 25** 1.050

1. Any Contracting State which has made a declaration under Article 24 shall, in cases not falling within Articles 1 to 13, give effect to a judgment given by a court of another Contracting State which has made a like declaration:

   (a) if the conditions prescribed in paragraph 1(b) of Article 20 have been fulfilled; and

   (b) if the court is considered to have jurisdiction in accordance with the following paragraphs.

2. However, the Contracting State is not obliged to give effect to such a judgment:

   (a) if there is a ground for refusal as provided for in paragraph 2 of Article 20; or

   (b) if the provisions of paragraph 2 of Article 24 have not been observed.

3. Subject to the provisions of paragraph 4, a court of a Contracting State shall be considered to have jurisdiction for the purpose of paragraph 1(b):

   (a) if its jurisdiction is recognised in accordance with the provisions of an agreement to which the State of the forum and the other Contracting State are Parties;

   (b) where there is no agreement between the two States concerning the recognition and enforcement of judgments in civil matters, if the courts of the State of the forum would have been entitled to assume jurisdiction had they applied, mutatis mutandis, the rules of jurisdiction (other than those mentioned in the Annex to the present Convention) which operate in the State against which the judgment was given. This provision does not apply to questions arising out of contracts.

4. The Contracting States having made the declaration provided for in Article 24 may, by means of a supplementary agreement to this Convention, determine the circumstances in which their courts shall be considered to have jurisdiction for the purposes of paragraph 1(b) of this Article.

5. If the Contracting State does not give effect to the judgment, the procedure provided for in Article 21 may be used.

### Article 26

Notwithstanding the provisions of Article 23, a judgment rendered against a Contracting State in proceedings relating to an industrial or commercial activity, in which the State is engaged in the same manner as a private person, may be enforced in the State of the forum against property of the State against which judgment has been given, used exclusively in connection with such an activity, if:

(a) both the State of the forum and the State against which the judgment has been given have made declarations under Article 24;
(b) the proceedings which resulted in the judgment fell within Articles 1 to 13 or were instituted in accordance with paragraphs 1 and 2 of Article 24; and
(c) the judgment satisfies the requirements laid down in paragraph 1 (b) of Article 20.

## CHAPTER V
### General provisions

### Article 27

1. For the purposes of the present Convention, the expression "Contracting State" shall not include any legal entity of a Contracting State which is distinct therefrom and is capable of suing or being sued, even if that entity has been entrusted with public functions.
2. Proceedings may be instituted against any entity referred to in paragraph 1 before the courts of another Contracting State in the same manner as against a private person; however, the courts may not entertain proceedings in respect of acts performed by the entity in the exercise of sovereign authority (*acta jure imperii*).
3. Proceedings may in any event be instituted against any such entity before those courts if, in corresponding circumstances, the courts would have had jurisdiction if the proceedings had been instituted against a Contracting State.

### Article 28

1. Without prejudice to the provisions of Article 27, the constituent States of a Federal State do not enjoy immunity.
2. However, a Federal State Party to the present Convention may, by notification addressed to the Secretary General of the Council of Europe, declare that its constituent States may invoke the provisions of the Convention applicable to Contracting States, and have the same obligations.

1.051

1.052

1.053

3. Where a Federal State has made a declaration in accordance with paragraph 2, service of documents on a constituent State of a Federation shall be made on the Ministry of Foreign Affairs of the Federal State, in conformity with Article 16.

4. The Federal State alone is competent to make the declarations, notifications and communications provided for in the present Convention, and the Federal State alone may be party to proceedings pursuant to Article 34.

### Article 29

The present Convention shall not apply to proceedings concerning:

(a) social security;
(b) damage or injury in nuclear matters;
(c) customs duties, taxes or penalties.

### Article 30

The present Convention shall not apply to proceedings in respect of claims relating to the operation of seagoing vessels owned or operated by a Contracting State or to the carriage of cargoes and of passengers by such vessels or to the carriage of cargoes owned by a Contracting State and carried on board merchant vessels.

### Article 31

Nothing in this Convention shall affect any immunities or privileges enjoyed by a Contracting State in respect of anything done or omitted to be done by, or in relation to, its armed forces when on the territory of another Contracting State.

### Article 32

Nothing in the present Convention shall affect privileges and immunities relating to the exercise of the functions of diplomatic missions and consular posts and of persons connected with them.

### Article 33

Nothing in the present Convention shall affect existing or future international agreements in special fields which relate to matters dealt with in the present Convention.

### Article 34

1. Any dispute which might arise between two or more Contracting States concerning the interpretation or application of the present Convention shall be submitted to the International Court of Justice on the application of one of the parties to the dispute or by special agreement unless the parties agree on a different method of peaceful settlement of the dispute.

1.054

1.055

1.056

1.057

1.058

1.059

### Article 98

*Cooperation with respect to waiver of immunity and consent to surrender*

1. The Court may not proceed with a request for surrender or assistance which would require the requested State to act inconsistently with its obligations under international law with respect to the State or diplomatic immunity of a person or property of a third State, unless the Court can first obtain the cooperation of that third State for the waiver of the immunity.

2. The Court may not proceed with a request for surrender which would require the requested State to act inconsistently with its obligations under international agreements pursuant to which the consent of a sending State is required to surrender a person of that State to the Court, unless the Court can first obtain the cooperation of the sending State for the giving of consent for the surrender.

---

# PART 2
# OTHER INTERNATIONAL MATERIALS

2.001   ILC Final Draft Articles and Commentary on Jurisdictional Immunities of States and their Property (1991)[1]

## PART I

Introduction

### Scope of the present articles

### Article 1

2.002   The present articles apply to the immunity of a State and its property from the jurisdiction of the courts of another State

*Commentary*[2]

2.003   (1) The purpose of the present articles is to formulate rules of international law on the topic of jurisdictional immunities of States and their property.

(2) Article 1 indicates the subject matter to which the articles should apply. In any given situation in which the question of State immunity may arise, a few basic notions or concepts appear to be inevitable. In the first place, the main character of the present draft articles is "jurisdictional immunities". The expression "jurisdictional immunities" in this context is used not only in relation to the right of sovereign States to exemption from the exercise of the power to adjudicate, normally assumed by the judiciary or magistrate within a legal system of the territorial State, but also in relation to the non-exercise of all other administrative and executive powers, by whatever measures or procedures and by whatever authorities of the territorial State, in relation to a judicial proceeding. The concept therefore covers the

---

[1] YBILC (43rd session), Vol II, Pt 2, 13. For history of the proposals and selected bibliography, see Watts, *The International Law Commission 1949–1998*, Vol III (Oxford, 1999), 1999–2005. See also http://www.un.org/law/ilc/guide/gfra.htm. An Ad Hoc Committee on Jurisdictional Immunities of States and their Properties was established by the General Assembly in its resolution 55/150 of 12 December 2000. The Committee's final report, dated 28 February 2003, is reproduced at 2.048 to 2.077 below. See http://www.un.org/law/jurisdictionalimmunities.

[2] The notes 24–186 in the official commentary to Arts 1–22 below are taken from the Yearbook of the International Law Commission and reproduced at the end of this section.

International Chamber of Commerce or UNCITRAL, or other institutionalized or ad hoc commercial arbitration. Submission of an investment dispute to ICSID arbitration, for instance, is not submission to the kind of commercial arbitration envisaged in this draft article and can in no circumstances be interpreted as a waiver of immunity from the jurisdiction of a court which is otherwise competent to exercise supervisory jurisdiction in connection with a commercial arbitration, such as an International Chamber of Commerce arbitration or an arbitration under the aegis of the American Arbitration Association.[168]

(9) The article in no way seeks to add to or detract from the existing jurisdiction of the courts of any State, nor to interfere with the role of the judiciary in any given legal system in the judicial control and supervision which it may be expected or disposed to exercise to ensure the morality and public order in the administration of justice needed to implement the arbitral settlement of differences. Only in this narrow sense is it correct to state that submission to commercial arbitration by a State entails an implied acceptance of the supervisory jurisdiction of a court of another State otherwise competent in matters relating to the arbitration agreement.

PART IV

State Immunity from Measures of Constraint in Connection With Proceedings Before a Court

2.037

Commentary

(1) The first three parts—"Introduction", "General principles" and "Proceedings in which State immunity cannot be invoked"—having been completed, the draft should also contain a fourth part concerning State immunity from measures of constraint in connection with proceedings. Immunity in respect of property owned, possessed, or used by States in this context is all the more meaningful for States in view of the recent growing practice for private litigants, including multinational corporations, to seek relief through attachment of property owned, possessed or used by developing countries, such as embassy bank accounts or funds of the central bank or other monetary authority, in proceedings before the courts of industrially advanced countries.

(2) Part IV of the draft is concerned with State immunity from measures of constraint upon the use of property, such as attachment, arrest and execution, in connection with a proceeding before a court of another State. The expression "measures of constraint" has been chosen as a generic term, not a technical one in use in any particular internal law. Since measures of constraint vary considerably in the practice of States, it would be difficult, if not impossible, to find a term which covers each and every possible method or measure of constraint in all legal systems. Suffice it, therefore, to mention by way of example the more notable and readily understood

measures, such as attachment, arrest and execution. The problem of finding readily translatable terms in the official languages is indubitably multiplied by the diversity of State practice in the realm of procedures and measures of constraint.

(3) Part IV is of special significance in that it relates to a second phase of the proceedings in cases of measures of execution, as well as covering interlocutory measures or pre-trial or prejudgement measures of attachment, or seizure of property ad fundandam jurisdictionem. Part IV provides in general, but subject to certain limitations, for the immunity of a State from all such measures of constraint in respect of the use of its property in connection with proceeding before a court of another State.

**State immunity from measures of constraint**

2.038

Article 18

1. No measures of constraint, such as attachment, arrest and execution, against property of a State may be taken in connection with a proceeding before a court of another State unless and except to the extent that:

   (a) the State has expressly consented to the taking of such measures as indicated:
   
   (i) by international agreement;
   (ii) by an arbitration agreement or in a written contract; or
   (iii) by a declaration before the court or by a written communication after a dispute between the parties has arisen;
   
   (b) the State has allocated or earmarked property for the satisfaction of the claim which is the object of that proceeding; or
   
   (c) the property is specifically in use or intended for use by the State for other than government non-commercial purposes and is in the territory of the State of the forum and has a connection with the claim which is the object of the proceeding or with the agency or instrumentality against which the proceeding was directed.

2. Consent to the exercise of jurisdiction under article 7 shall not imply consent to the taking of measures of constraint under paragraph 1, for which separate consent shall be necessary.

Commentary

2.039

(1) Article 18 concerns immunity from measures of constraint only to the extent that they are linked to a judicial proceeding. Theoretically, immunity from measures of constraint is separate from jurisdictional immunity of the State in the sense that the latter refers exclusively to immunity from the adjudication of litigation. Article 18 clearly defines the rule of State immunity in its second phase, concerning property, particularly measures of execution as a separate procedure from the original proceeding.

(2) The practice of States has evidenced several theories in support of immunity from execution as separate from and not interconnected with immunity from jurisdiction.[169] Whatever the theories, for the purposes of this article, the question of immunity has been decided in the negative and until there is a judgement in favour of the plaintiff, immunity from execution may be viewed, therefore, as the last bastion of State immunity. If it is admitted that no measures of constraint by way of execution or coercion can be exercised by the authorities of one State against another State and its property, such a possibility does not exist even in international litigation, whether by judicial settlement or arbitration.[170]

(3) Article 18 is a merger and a reformulation of former articles 21 and 22 as provisionally adopted on first reading. Former article 22 with consent to such measures from measures of constraint and former article 21 dealt with State immunity from measures of constraint. Since the ideas expressed in those two articles were closely related, the Commission agreed to the proposal of the Special Rapporteur for the merger, which was supported by many members as well as Governments. In this manner, the principle of non-execution against the property of a State at any stage or phase of proceedings is clearly set out, followed by the exceptions to that principle.

**Paragraph 1**

(4) The measures of constraint mentioned in this article are not confined to execution but cover also attachment and arrest, as well as other forms of saisie, saisie-arrêt and saisie-exécution, including enforcement of arbitral award, sequestration and interim, interlocutory and all other prejudgement conservatory measures, intended sometimes merely to freeze assets in the hands of the defendant. The measures of constraint indicated in paragraph 1 are illustrative and non-exhaustive.

(5) The property protected by immunity under this article is State property, including, in particular, property defined in article 19. The original text of the chapeau of former article 21 and of paragraph 1 of former article 22 as provisionally adopted on first reading contained the phrase, [or property in which it has a legally protected interest,], over which there were differences of view among members of the Commission. In their written submissions, a number of Governments criticized the phrase as being vague and permitting a broadening of the scope of immunity from execution. The bracketed phrase was therefore deleted and replaced by the words "property of a State".

(6) The word "State" in the expression "proceeding before a court of another State" refers to the State where the property is located, regardless of where the substantive proceeding takes place. Thus, before any measures of constraint are implemented, a proceeding to that effect should be instituted before a court of the State where the

property is located. Of course, in some special circumstances, such as under a treaty obligation, no further court proceeding may be required for execution once there is a final judgement by a court of another State party to the treaty.

(7) The principle of immunity here is subject to three conditions, the satisfaction of any of which would result in non-immunity: (a) if consent to the taking of measures of constraint is given by international agreement, in an arbitration agreement or in a written contract, or by a declaration before the court or by a written communication after a dispute between the parties has arisen; or (b) if the property has been allocated or earmarked by the State for the satisfaction of the claim; or (c) if the property, is specifically in use or intended for use by the State for other than government non-commercial purposes.[171] Subparagraph (c) further provides that, for there to be no immunity, the property must have a connection with the object of the claim, or with the agency or instrumentality against which the proceeding was directed.

(8) The phrase "the taking of such measures, as indicated" in paragraph 1 (a) refers to both the measures of constraint and the property. Thus express consent can be given generally with regard to measures of constraint or property, or be given for particular measures or particular property, or, indeed, be given for both measures and property.

(9) Once consent has been given under paragraph 1 (a), any withdrawal of that consent may only be made under the terms of the international agreement (subparagraph (i)) or of the arbitration agreement or the contract (subparagraph (ii)). However, once a declaration of consent or a written communication to that effect (subparagraph (iii)) has been made before a court, it cannot be withdrawn. In general, once a proceeding before a court has begun, consent cannot be withdrawn.

(10) Under paragraph 1 (b), the property can be subject to measures of constraint if it has been allocated or earmarked for the satisfaction of the claim or debt which is the object of the proceeding. This should have the effect of preventing extraneous or unprotected claimants from frustrating the intention of the State to satisfy specific claims or to make payment for an admitted liability. Understandably, the question whether particular property has or has not been allocated for the satisfaction of a claim may in some situations be ambiguous and should be resolved by the court.

(11) The use of the word "is" in paragraph 1 (c) indicates that the property should be specifically in use or intended for use by the State for other than government non-commercial purposes at the time the proceeding for attachment or execution is instituted. To specify an earlier time could unduly fetter States' freedom to dispose of their property. It is the Commission's understanding that States would not encourage and permit abuses of this provision, for example by changing the status of their property in order to avoid attachment or execution. The words "for commercial [non-governmental] purposes" included in the text adopted on first reading have been

replaced by the phrase "for other than government non-commercial purposes" in line with the usage of that phrase in article 16.

*Paragraph 2*

(12) *Paragraph 2 makes more explicit the requirement of separate consent for the taking of measures of constraint under part IV. Consent under article 7 of part II does not cover any measures of constraint but is confined exclusively to immunity from the jurisdiction of a court of a State in a proceeding against another State.*[172]

## Specific categories of property

2.040 Article 19

1. The following categories, in particular, of property of a State shall not be considered as property specifically in use or intended for use by the State for other than government non-commercial purposes under paragraph 1 (c) of article 18:

   (a) property, including any bank account, which is used or intended for use for the purposes of the diplomatic mission of the State or its consular posts, special missions, missions to international organizations, or delegations to organs of international organizations or to international conferences;

   (b) property of a military character or used or intended for use for military purposes;

   (c) property of the central bank or other monetary authority of the State;

   (d) property forming part of the cultural heritage of the State or part of its archives and not placed or intended to be placed on sale;

   (e) property forming part of an exhibition of objects of scientific, cultural or historical interest and not placed or intended to be placed on sale.

2. Paragraph 1 is without prejudice to paragraph 1 (a) and (b) of article 18.

**Commentary**

*Paragraph 1*

2.041 (1) *Article 19 is designed to provide some protection for certain specific categories of property by excluding them from any presumption or implication of consent to measures of constraint. Paragraph 1 seeks to prevent any interpretation to the effect that property classified as belonging to any one of the categories specified is in fact property specifically in use or intended for use by the State for other than government non-commercial purposes under paragraph 1 (c) of article 18. The words "in particular" suggest that the enumeration in subparagraphs (a) to (e) is merely illustrative.*

(2) *This protection is deemed necessary and timely in view of the trend in certain jurisdictions to attach or freeze assets of foreign States, especially bank accounts,*[173]

*assets of the central bank*[174] *or other instrumental legati*[175] *and specific categories of property which equally deserve protection. Each of these specific categories of property, by its very nature, must be taken to be in use or intended for use for governmental purposes removed from any commercial considerations.*

(3) *Property listed in paragraph 1 (a) is intended to be limited to that which is in use or intended for use for the "purposes" of the State's diplomatic functions.*[176] *This obviously excludes property, for example, bank accounts maintained by embassies for commercial purposes.*[177] *Difficulties sometimes arise concerning a "mixed account" which is maintained in the name of a diplomatic mission, but occasionally used for payment, for instance, of supply of goods or services to defray the running costs of the mission. The recent case law seems to suggest the trend that the balance of such a bank account should not be subject to an attachment order issued by the court of the forum State because of the non-commercial character of the account in general.*[178] *Property listed in paragraph 1 (a) also excludes property which may have been, but is no longer, in use or intended for use for diplomatic or cognate purposes. The expressions "missions" and "delegations" also include permanent observer missions and observer delegations within the meaning of the 1975 Vienna Convention on the Representation of States in their Relations with International Organizations of a Universal Character.*

(4) *The word "military", in the context of paragraph 1 (b), includes the navy, air force and army.*[179]

(5) *With regard to paragraph 1 (c), the Special Rapporteur suggested the addition of the words "and used for monetary purpose" at the end of the paragraph,*[180] *but they were not included for lack of general support.*[181]

(6) *The purpose of paragraph 1 (d) is to protect only property characterized as forming part of the cultural heritage or archives of the State which is owned by the State.*[182] *Such property benefits from protection under the present articles when it is not placed or intended to be placed on sale.*

(7) *Paragraph 1 (e) extends such protection to property forming part of an exhibition of objects of cultural or scientific or historical interest belonging to the State.*[183] *State-owned exhibits for industrial or commercial purposes are not covered by this subparagraph.*

*Paragraph 2*

(8) *Notwithstanding the provision of paragraph 1, the State may waive immunity in respect of any property belonging to one of the specific categories listed, or any part of such a category, by either allocating or earmarking the property within the meaning of article 18 (b), paragraph 1, or by specifically consenting to the taking of measures of constraint in respect of that category of its property, or that part thereof, under article 18 (a), paragraph 1. A general waiver or a waiver in respect of all*

171 For the case law, international opinion, treaties and national legislation dealing with immunity from measures of constraint, see the seventh report of the former Special Rapporteur (footnote 13 above [Not here reproduced]), paragraphs 33–82, and the second report of the Special Rapporteur (footnote 17 above [Not here reproduced]), paras. 42–44.

For recent legislation, see further the Australia Foreign States Immunities Act of 1985 (sections 30–35); the South Africa Foreign States Immunities Amendment Act of 1988 (section 14(b)) (footnote 51 above); the United States Act to Implement the Inter-American Convention on International Commercial Arbitration (footnote 166 above).

For recent cases concerning the provision of paragraph 1 (a), see, for example, with respect to the requirement of express consent by international agreement under subparagraph (i), O'Connell Machinery Co. v. MV Americana and Italia Di Navigazione, SpA (footnote 142 above), in which, despite an express waiver of immunity in article XXIV (6) of the Italy–United States Treaty of Friendship, Commerce and Navigation, 1965, the Court did not interpret the treaty as providing for waiver of prejudgement attachment. See also, New England Merchants National Bank v. Iran Power Generation and Transmission Co., et al. (502 F. Supp 120, United States District Court for the Southern District of New York, 26 September 1980, AJIL (Washington, D.C.), vol. 75 (1981), p. 375; E-Systems Inc. v. Islamic Republic of Iran and Bank Melli Iran (United States District Court, Northern District, Texas, 19 June 1980, ILR (London), vol. 63 (1982), p. 424).

With regard to the requirement of express consent in a written contract under subparagraph (ii), see, for example, Libra Bank Limited v. Banco Nacional de Costa Rica (1982) (676 F.2d, p. 47, United States Court of Appeals, 2nd Cir. 12 April 1982, ILM (Washington, D.C.), vol. 21 (1982), p. 618), in which the court held that a written waiver by a foreign State of any right of immunity from suit with respect to a loan agreement constitutes an explicit waiver of immunity for prejudgement attachment for purposes of the Foreign Sovereign Immunities Act, section 1610 (d)(1). See, however, on the requirement of express consent by an arbitration agreement under subparagraph (ii), Birch Shipping Corp. v. Embassy of Tanzania (1980) (France, Court of Appeal of Paris, 26 June 1981, ILR (London), vol. 65 (1984), p. 88); Société Benvenuti et Bonfant v. Banque commerciale congolaise (France, Cour de Cassation, 21 July 1987, Journal du droit international (Clunet) (Paris), vol. 115 (1988), p. 108); Guinea v. Maritime International Nominees Establishment (see footnote 168 above); Liberian Eastern Timber Corporation (LETCO) v. The Government of the Republic of Liberia (United States District Court for the Southern District of New York, 12 December 1986, ILM (Washington, D.C.), vol. 26 (1987), p. 695).

Cf. cases concerning measures of constraint in connection with ICSID proceedings: Popular Revolutionary Republic of Guinea and Société guinéenne de pêche (Soguipêche) v. Atlantic Triton Company (France, Court of Appeal of Rennes, Second Chamber, 26 October 1984, ILR (London), vol. 82 (1990), p. 76; Atlantic Triton Company v. Popular Revolutionary Republic of Guinea and Société guinéenne de pêche (Soguipêche) (see footnote 168 above); Senegal v. Seutin as Liquidator of the West African Industrial Concrete Co. (SOABI) (ibid.) (see footnote 168 above); Benvenuti et Bonfant SARL v. Government of the People's Republic of the Congo (France, Court of Appeal of Paris, 26 June 1981, ILR (London), vol. 65 (1984), p. 88); Société Benvenuti et Bonfant v. Banque commerciale congolaise (France, Cour de Cassation, 21 July 1987, Journal du droit international (Clunet) (Paris), vol. 115 (1988), p. 108); Guinea v. Maritime International Nominees Establishment (see footnote 168 above); Liberian Eastern Timber Corporation (LETCO) v. The Government of the Republic of Liberia (United States District Court for the Southern District of New York, 12 December 1986, ILM (Washington, D.C.), vol. 26 (1987), p. 695).

For recent cases concerning the provision of paragraph 1 (c), see, for example, Islamic Republic of Iran and Others v. Société Eurodif and Others (France, Court of Cassation, First Civil Chamber, 14 March 1984, ILR (London), vol. 77 (1988), p. 513) in which the court stated that notwithstanding the fact that foreign States enjoyed immunity from execution as a matter of principle, the immunity could be set aside where the assets attached had been allocated for a commercial activity of a private law nature upon which the claim was based. See also, General National Maritime Transport Company v. Société Marseille Fret (France, Court of Cassation, First Civil Chamber, 4 February 1986, ibid., p. 530); Re Royal Bank of Canada and Corriveau et al. (Canada, Ontario High Court, 22 October 1980, ibid. vol. 64 (1983), p. 69); Banque du Gothard v. Chambre des Recours en Matière Pénale du Tribunal d'Appel du Canton du Tessin and Another (footnote 142 above); Giamahiria araba libica popolare socialista v. Rossbeton Officine Meccaniche s.r.l. e Libyan Arab Airlines, Ministero degli affari esteri e Ministero di grazia e giustizia (Italy, Corte di Cassazione, 25 May 1989, Rivista di diritto internazionale privato processuale (Padua), vol. XXVI (1990), p. 663); cf. International Consolidated Companies Inc. v. Nigerian National Petroleum Corporation (Italy, Tribunale di Taranto, 18 December 1987, order, Rivista ... (Milan), vol. LXXII (1989), p. 110).

On the question of the measures of constraint involving the property of State enterprises, see, for example, In the Matter of Constitutional Complaints of the National Iranian Oil Company Against Certain Orders of the District Court and the Court of Appeals of Frankfurt in Prejudgement Attachment Proceedings

against the Complainant (footnote 142 above), in which the court found that there exists no general rule of international law mandating that accounts maintained in domestic banks and designated as account of a foreign government agency with separate legal personality be treated as property of the foreign State. The court indicated additionally that general international law does not require absolute immunity from execution of accounts standing in the name of the foreign State itself, but that immunity of accounts of a foreign Government held in banks located in the forum State is to be accorded only if the account itself at the time of the levy is designed to be used for internationally protected governmental purposes. In Société Nationale Algérienne de Transport et de Commercialisation des Hydrocarbures (Sonatrach) v. Migeon (France, Court of Cassation, First Civil Chamber, 1 October 1985, ILM (Washington, D.C.), vol. 26 (1987), p. 998); ILR (London), vol. 77 (1988), p. 525), the court stated that, while the assets of a foreign State were not subject to attachment unless they had been allocated for a commercial activity under private law upon which the claim was based, the assets of a State-owned entity which was legally distinct from the foreign State concerned could be subjected to attachment by all debtors of that entity, of whatever type, provided that the assets formed part of a body of funds allocated for a principal activity governed by private law. See also, Société Air Zaire v. Gauthier and van Impe (France, Court of Appeal of Paris, First Chamber, 31 January 1984, ibid., p. 510).

172 In some legal systems, a sufficient legal relationship between the subject-matter and the State of the forum is also required for its courts to consider any order of attachment against property of a foreign State which is located in the territory of the State of the forum. See, for example, Socialist Libyan Arab Popular Jamahiriya v. Libyan-American Oil Company (LIAMCO) (see footnote 168 above).

For a more detailed account of the judicial and treaty practice of States and government contracts, see the former Special Rapporteur's seventh report (footnote 13 above [Not here reproduced]), paras. 85–102.

In some jurisdictions, for example in Switzerland, execution is based on the existence of a sufficient connection with Swiss territory (Binnenbeziehung). See, for example, Greek Republic v. Walder and others (1930) (Recueil officiel des arrêts du Tribunal fédéral suisse, 1930, vol. 56, p. 237; Annual Digest ... 1929–1930 (London), vol. 5 (1935), case No. 78, p. 121); J.-F. Lalive, "Swiss law and practice in relation to measures of execution against the property of a foreign State", Netherlands Yearbook of International Law (Alphen aan den Rijn), vol. X (1979), p. 160, and I. Sinclair, "The law of sovereign immunity: Recent developments", Collected Courses ..., 1980-II (Alphen aan den Rijn, Sijthoff and Noordhoff, 1981), vol. 167, p. 236. See also Lord Denning's observations in Thai–Europe Tapioca Service Ltd. v. Government of Pakistan, Ministry of Food and Agriculture, Directorate of Agricultural Supplies (1975) (footnote 45 above). On the requirement of a separate or second consent to execution, see the judgement of the Court of Appeal of Aix-en-Provence in Banque d'État tchécoslovaque v. Englander (1966) (Annuaire français de droit international, 1967 (Paris), vol. 13, p. 825; ILR (London), vol. 47 (1974), p. 157)—however, this judgement was set aside by the Court of Cassation (1969) (Journal du droit international (Clunet) (Paris), vol. 96 (1969), p. 923; ILR (Cambridge), vol. 52 (1979), p. 335); and Clerget v. Représentation commerciale de la République démocratique du Viet Nam (1969) (Annuaire français de droit international, 1970 (Paris), vol. 16, p. 931).

173 See, for example, Birch Shipping Corp. v. Embassy of Tanzania (1980) (footnote 171 above); the decision of 13 December 1977 of the Federal Constitutional Court of the Federal Republic of Germany in X v. Republic of the Philippines (United Nations, Materials on Jurisdictional Immunities ..." p. 297); and Alcom Ltd. v. Republic of Colombia (1984) (The All England Law Reports, 1984, vol. 2, p. 6). See also, Banco de la Nación Lima v. Banco Católica del Veneto (footnote 168 above).

174 See, for example, Hispano Americana Mercantil S.A. v. Central Bank of Nigeria (1979) (Lloyd's Law Reports, 1979, vol. 2, p. 277, reproduced in United Nations, Materials on Jurisdictional Immunities ... p. 449); Re Royal Bank of Canada and Corriveau et al. (1980) (footnote 171 above); Libra Bank Ltd. v. Banco Nacional de Costa Rica (1982) (ibid.); and Trendtex Trading Corporation Ltd. v. Central Bank of Nigeria (1977) (footnote 53 above). See also, Libyan Arab Socialist People's Jamahiriya v. Actimon SA (Switzerland, Federal Tribunal, 24 April 1985, ILR (London), vol. 82 (1990), p. 30). Cf. Banque Compafina v. Banco de Guatemala et al. (United States District Court for the Southern District of New York, 23 March 1984, ILM (Washington, D.C.), vol. 23 (1984), p. 782).

175 See, for example, the Romanian legation case (1949) (Revue hellénique de droit international (Athens), vol. 3 (1950), p. 331); and, in a case concerning a contract of employment at the Indian Embassy in Berne, J. Monnier, "Note à l'arrêt de la première Cour civile du Tribunal fédéral du 22 mai 1984 dans l'affaire S. contre État indien", Annuaire suisse de droit international (Zürich), vol. 41 (1985), p. 235.

176 See, for example, Alcom Ltd. v. Republic of Colombia (1984) (footnote 173 above). See also, Republic of "A" Embassy Bank Account Case (Austria, Supreme Court, 3 April 1986, ILR (London), vol. 77

**Article 3**

To be notified to the Honourable Congress of State for the purposes of Article 99.3 of the Constitution.

**Article 4**

To be notified, published and archived by the National Official Registry.

Menem—Rodolfo C Barra—José A Caro Figueroa—Jorge A Rodríguez—Alberto J Mazza—Carlos V Corach—Domingo F Cavallo—Guido Di Tella.

## Australia: Foreign States Immunities Act 1985[4]

No. 196 of 1985
An Act relating to foreign State immunity
(Assented to 16 December 1985)
BE IT ENACTED by the Queen, and the Senate and the House of Representatives of the Commonwealth of Australia, as follows:

### PART 1—PRELIMINARY

**Short title**

1. This Act may be cited as the Foreign States Immunities Act 1985.

**Commencement**

2. The provisions of this Act shall come into operation on such day as is, or such respective days as are, fixed by Proclamation.

**Interpretation**

3. (1) In this Act, unless the contrary intention appears— "agreement" means an agreement in writing and includes—

(a) a treaty or other international agreement in writing; and
(b) a contract or other agreement in writing;

"Australia", when used in a geographical sense, includes each of the external Territories;

"bill of exchange" includes a promissory note;

"court" includes a tribunal or other body (by whatever name called) that has functions, or exercises powers, that are judicial functions or powers or are of a kind similar to judicial functions or powers;

"diplomatic property" means property that, at the relevant time, is in use predominantly for the purpose of establishing or maintaining a diplomatic or consular mission, or a visiting mission, of a foreign State to Australia;

---

[4] As amended. The legislation is based on the proposal contained in the Australian Law Reform Commission's Report No 24 "Foreign State Immunities" (1984) (see http://www.alrc.gov.au/publications/finalreps.htm). With the exception of s 18(2) (which came into force on 1 January 1989), the Act came into force on 1 April 1986.

482                           *Other national legislation*

(5) In addition to any other person who has authority to waive the application of section 30 on behalf of a foreign State or a separate entity of the foreign State, the person for the time being performing the functions of the head of the State's diplomatic mission in Australia has that authority.

**Execution against commercial property**                                    5.053

32. (1) Subject to the operation of any submission that is effective by reason of section 10, section 30 does not apply in relation to commercial property.

(2) Where a foreign State is not immune in a proceeding against or in connection with a ship or cargo, section 30 does not prevent the arrest, detention or sale of the ship or cargo if, at the time of the arrest or detention—

(a) the ship or cargo was commercial property; and
(b) in the case of a cargo that was then being carried by a ship belonging to the same or to some other foreign State—the ship was commercial property.

(3) For the purposes of this section—

(a) commercial property is property, other than diplomatic property or military property, that is in use by the foreign State concerned substantially for commercial purposes; and
(b) property that is apparently vacant or apparently not in use shall be taken to be being used for commercial purposes unless the court is satisfied that it has been set aside otherwise than for commercial purposes.

**Execution against immovable property, &c.**                                5.054

33. Where—

(a) property—
    (i) has been acquired by succession or gift; or
    (ii) is immovable property; and
(b) a right in respect of the property has been established as against a foreign State by a judgment or order in a proceeding as mentioned in section 14,

then, for the purpose of enforcing that judgment or order, section 30 does not apply to the property.

**Restrictions on certain other relief**                                      5.055

34. A penalty by way of fine or committal shall not be imposed in relation to a failure by a foreign State or by a person on behalf of a foreign State to comply with an order made against the foreign State by a court.

---

Australia                                                                    483

**Application of Part to separate entities**                                 5.056

35. (1) This Part applies in relation to a separate entity of a foreign State that is the central bank or monetary authority of the foreign State as it applies in relation to the foreign State.

(2) Subject to sub-section (1), this Part applies in relation to a separate entity of the foreign State as it applies in relation to the State if, in the proceeding concerned—

(a) the separate entity would, apart from the operation of section 10, have been immune from the jurisdiction; and
(b) it has submitted to the jurisdiction.

PART V—MISCELLANEOUS

**Heads of foreign States**                                                  5.057

36. (1) Subject to the succeeding provisions of this section, the Diplomatic Privileges and Immunities Act 1967 extends, with such modifications as are necessary, in relation to the person who is for the time being—

(a) the head of a foreign State; or
(b) a spouse of the head of a foreign State.

As that Act applies in relation to a person at a time when he or she is the head of a diplomatic mission.

(2) This section does not affect the application of any law of Australia with respect to taxation.

(3) This section does not affect the application of any other provision of this Act in relation to a head of a foreign State in his or her public capacity.

(4) Part III extends in relation to the head of a foreign State in his or her private capacity as it applies in relation to the foreign State and, for the purpose of the application of Part III as it so extends, a reference in that Part to a foreign State shall be read as a reference to the head of the foreign State in his or her private capacity.

**Effect of agreements on separate entities**                                5.058

37. An agreement made by a foreign State and applicable to a separate entity of that State has effect, for the purposes of this Act, as though the separate entity were a party to the agreement.

**Power to set aside process, &c.**                                          5.059

38. Where, on the application of a foreign State or a separate entity of a foreign State, a court is satisfied that a judgment, order or process of the court made or

## Canada: State Immunity Act[7]

An Act to provide for state immunity in Canadian courts

1980-81-82-83, c. 95, s. 1

SHORT TITLE

5.067 **Short title**
1. This Act may be cited as the *State Immunity Act*.

INTERPRETATION

5.068 **Definitions**
2. In this Act,

"foreign state" *«État étranger»*

"foreign state" includes

(a) any sovereign or other head of the foreign state or of any political subdivision of the foreign state while acting as such in a public capacity,

(b) any government of the foreign state or of any political subdivision of the foreign state, including any of its departments, and any agency of the foreign state, and

(c) any political subdivision of the foreign state;

"political subdivision" *«subdivision politique»*

"political subdivision" means a province, state or other like political subdivision of a foreign state that is a federal state.

1980-81-82-83, c. 95, s. 2

---

[7] R.S., 1985, c. S-18, as amended. Originally codified in 1980 (1980-81-82-83), c 95. Source: http://laws.justice.gc.ca/en/S-18/93811.html (Consolidated Statutes and Regulations, maintained by the Department of Justice). See http://www.canlii.org/ca/sta/s-18/whole.html

STATE IMMUNITY

5.069 **State immunity**
3. (1) Except as provided by this Act, a foreign state is immune from the jurisdiction of any court in Canada.

**Court to give effect to immunity**
(2) In any proceedings before a court, the court shall give effect to the immunity conferred on a foreign state by subsection (1) notwithstanding that the state has failed to take any step in the proceedings.

**Immunity waived**
4. (1) A foreign state is not immune from the jurisdiction of a court if the state waives the immunity conferred by subsection 3(1) by submitting to the jurisdiction of the court in accordance with subsection (2) or (4).

**State submits to jurisdiction**
(2) In any proceedings before a court, a foreign state submits to the jurisdiction of the court where it

(a) explicitly submits to the jurisdiction of the court by written agreement or otherwise either before or after the proceedings commence;

(b) initiates the proceedings in the court; or

(c) intervenes or takes any step in the proceedings before the court.

**Exception**
(3) Paragraph (2)(c) does not apply to

(a) any intervention or step taken by a foreign state in proceedings before a court for the purpose of claiming immunity from the jurisdiction of the court; or

(b) any step taken by a foreign state in ignorance of facts entitling it to immunity if those facts could not reasonably have been ascertained before the step was taken and immunity is claimed as soon as reasonably practicable after they are ascertained.

5.070 **Third party proceedings and counter-claims**
(4) A foreign state that initiates proceedings in a court or that intervenes or takes any step in proceedings before a court, other than an intervention or step to which paragraph (2)(c) does not apply, submits to the jurisdiction of the court in respect of any third party proceedings that arise, or counter-claim that

**Idem**

(4) Where service on an agency of a foreign state cannot be made under subsection (3), a court may, by order, direct how service is to be made.

**Date of service**

(5) Where service of an originating document is made in the manner provided in subsection (2), service of the document shall be deemed to have been made on the day that the Deputy Minister of Foreign Affairs or a person designated by him pursuant to subsection (2) certifies to the relevant court that the copy of the document has been transmitted to the foreign state.

R.S., 1985, c. S-18, s. 9, as amended by Department of Foreign Affairs and International Trade Act 1995, c. 5, s. 27.

5.076 **Default judgment**

10. (1) Where, in any proceedings in a court, service of an originating document has been made on a foreign state in accordance with subsection 9(1), (3) or (4) and the state has failed to take, within the time limited therefor by the rules of the court or otherwise by law, the initial step required of a defendant or respondent in those proceedings in that court, no further step toward judgment may be taken in the proceedings except after the expiration of at least sixty days following the date of service of the originating document.

**Idem**

(2) Where judgment is signed against a foreign state in any proceedings in which the state has failed to take the initial step referred to in subsection (1), a certified copy of the judgment shall be served on the foreign state

(a) where service of the document that originated the proceedings was made on an agency of the foreign state, in such manner as is ordered by the court; or

(b) in any other case, in the manner specified in paragraph 9(1)(c) as though the judgment were an originating document.

**Idem**

(3) Where, by reason of subsection (2), a certified copy of a judgment is required to be served in the manner specified in paragraph 9(1)(c), subsections 9(2) and (5) apply with such modifications as the circumstances require.

**Application to set aside default judgment**

(4) A foreign state may, within sixty days after service on it of a certified copy of a judgment pursuant to subsection (2), apply to have the judgment set aside.

1980-81-82-83, c. 95, s. 9.

**No injunction, specific performance, etc., without consent**

11. (1) Subject to subsection (3), no relief by way of an injunction, specific performance or the recovery of land or other property may be granted against a foreign state unless the state consents in writing to that relief and, where the state so consents, the relief granted shall not be greater than that consented to by the state.

**Submission not consent**

(2) Submission by a foreign state to the jurisdiction of a court is not consent for the purposes of subsection (1).

**Agency of a foreign state**

(3) This section does not apply to an agency of a foreign state.

1980-81-82-83, c. 95, s. 10.

5.077

**Execution**

12. (1) Subject to subsections (2) and (3), property of a foreign state that is located in Canada is immune from attachment and execution and, in the case of an action *in rem*, from arrest, detention, seizure and forfeiture except where

(a) the state has, either explicitly or by implication, waived its immunity from attachment, execution, arrest, detention, seizure or forfeiture, unless the foreign state has withdrawn the waiver of immunity in accordance with any term thereof that permits such withdrawal;

(b) the property is used or is intended for a commercial activity; or

(c) the execution relates to a judgment establishing rights in property that has been acquired by succession or gift or in immovable property located in Canada.

**Property of an agency of a foreign state is not immune**

(2) Subject to subsection (3), property of an agency of a foreign state is not immune from attachment and execution and, in the case of an action *in rem*, from arrest, detention, seizure and forfeiture, for the purpose of satisfying a judgment of a court in any proceedings in respect of which the agency is not immune from the jurisdiction of the court by reason of any provision of this Act.

**Military property**

(3) Property of a foreign state

(a) that is used or intended to be used in connection with a military activity, and

(b) that is military in nature or is under the control of a military authority or defence agency

5.078

512

*Other national legislation*

(6) Where the provisions of Part II do not apply to a constituent territory by virtue of any such order subsections (2) and (3) shall apply to it as if it were a separate entity.

5.122 **Restriction and extension of immunities and privileges.**

17. If it appears to the President that the immunities and privileges conferred by Part II in relation to any State—

(a) exceed those accorded by the law of that State in relation to Singapore; or

(b) are less than those required by any treaty, convention or other international agreement to which that State and Singapore are parties,

the President may, by order, provide for restricting or, as the case may be, extending those immunities and privileges to such extent as appears to the President to be appropriate.

5.123 **Evidence by certificate.**

18. A certificate by or on behalf of the Minister for Foreign Affairs shall be conclusive evidence on any question—

(a) whether any country is a State for the purposes of Part II, whether any territory is a constituent territory of a federal State for those purposes or as to the person or persons to be regarded for those purposes as the head or government of a State;

(b) whether, and if so when, a document has been served or received as mentioned in section 14 (1) or (5).

5.124 **Excluded matters.**

19.—(1) Part II does not affect any immunity or privilege applicable in Singapore to diplomatic and consular agents, and section 8 (1) does not apply to proceedings concerning a State's title to or its possession of property used for the purposes of a diplomatic mission.

(2) Part II does not apply to—

(a) proceedings relating to anything done by or in relation to the armed forces of a State while present in Singapore and, in particular, has effect subject to the Visiting Forces Act;

Cap. 344.

(b) criminal proceedings; and

(c) proceedings relating to taxation other than those mentioned in section 13.

*South Africa*

513

**South Africa: Foreign States Immunities Act**[13]

5.125 NO 87 OF 1981
as amended by Foreign States Immunities Amendment Act, No. 48 of 1985[14]
ACT

To determine the extent of the immunity of foreign states from the jurisdiction of the courts of the Republic; and to provide for matters connected therewith.

5.126 1. *Definitions.*—(1) In this Act, unless the context otherwise indicates—

"commercial purposes" means purposes of any commercial transaction as defined in section 4(3);

"consular post" means a consulate-general, consulate, consular agency, trade office or labour office;

"Republic" includes the territorial waters of the Republic, as defined in section 2 of the Territorial Waters Act, 1963 (Act No. 87 or 1963);

"separate entity" means an entity referred to in subsection (2)(1).

(2) Any reference in this Act to a foreign state shall in relation to any particular foreign state be construed as including a reference to—

(a) the head of that foreign state, in his capacity as such head of state;

(b) the government of that foreign state; and

(c) any department of that government,

but not as including a reference to—

(i) any entity which is distinct from the executive organs of the government of that foreign state and capable of suing or being sued; or

(ii) any territory forming a constituent part of a federal foreign state.

5.127 2. *General immunity from jurisdiction.*—(1) A foreign state shall be immune from the jurisdiction of the courts of the Republic except as provided in this Act or in any proclamation issued thereunder.

(2) A court shall give effect to the immunity conferred by this section even though the foreign state does not appear in the proceedings in question.

(3) The provisions of this Act shall not be construed as subjecting any foreign state to the criminal jurisdiction of the courts of the Republic.

---

[13] Assented to: 6 October 1981. Date of commencement: 20 November 1981. English translation of Afrikaans text signed by the State president.
[14] See 5.144 below. See the further amendments contained in the Foreign States Immunities Amendment Act No. 5 of 1988 (at 5.145 below), but not yet in operation.

518                                                           *Other national legislation*

(3) A foreign state which appears in proceedings cannot thereafter object that subsection (1) has not been complied with in the case of those proceedings.

(4) No judgment in default of appearance shall be given against a foreign state except on proof that subsection (1) has been complied with and that the time for notice of intention to defend or oppose or entering an appearance as extended by subsection (2) has expired.

(5) A copy of any default judgment against a foreign state shall be transmitted through the Department of Foreign Affairs and Information of the Republic to the ministry of foreign affairs of the foreign state, and any time prescribed by rules of court or otherwise for applying to have the judgment set aside shall begin to run two months after the date on which the copy of the judgment is received at that ministry.

(6) Subsection (1) shall not prevent the service of any process or other document in any manner to which the foreign state has agreed, and subsections (2) and (4) shall not apply where service is effected in any such manner.

(7) The preceding provisions of this section shall not be construed as applying to proceedings against a foreign state by way of counter-claim or to an action *in rem*, and subsection (1) shall not be construed as affecting any rules of court whereby leave is required for the service of process outside the jurisdiction of the court.

5.139   14. *Other procedural privileges.*—(1) Subject to the provisions of subsections (2) and (3)—

(a) relief shall not be given against a foreign state by way of interdict or order for specific performance or for the recovery of any movable or immovable property; and

(b) the property of a foreign state shall not be subject to any process—

(i) for its attachment in order to found jurisdiction;
(ii) for the enforcement of a judgment or an arbitration award; or
(iii) in an action *in rem*, for its attachment or sale.

[*Para. (b) substituted by s. 1 of Act No. 48 of 1985*]

(2) Subsection (1) shall not prevent the giving of any relief for the issue of any process with the written consent of the foreign state concerned, and any such consent, which may be contained in a prior agreement, may be expressed so as to apply to a limited extent or generally, but a mere waiver of a foreign state's immunity from the jurisdiction of the courts of the Republic shall not be regarded as a consent for the purposes of this subsection.

(3) Subsection (1)(b) shall not prevent the issue of any process in respect of property which is for the time being in use or intended for use for commercial purposes.

*South Africa*                                                               519

5.14    15. *Immunity of separate entities.*—(1) A separate entity shall be immune from the jurisdiction of the courts of the Republic only if—

(a) the proceedings relate to anything done by the separate entity in the exercise of sovereign authority; and
(b) the circumstances are such that a foreign state would have been so immune.

(2) If a separate entity, not being the central bank or other monetary authority of a foreign state, waives the immunity to which it is entitled by virtue of subsection (1) in respect of any proceedings, the provisions of section 14 shall apply to those proceedings as if references in those provisions to a foreign state were references to that separate entity.

(3) Property of the central bank or other monetary authority of a foreign state shall not be regarded for the purposes of subsection (3) of section 14 as in use or intended for use for commercial purposes, and where any such bank or authority is a separate entity the provisions of subsections (1) and (2) of that section shall apply to it as if references in those provisions to a foreign state were references to that bank or authority.

5.141   16. *Restriction and extension of immunities and privileges.*—If it appears to the State President that the immunities and privileges conferred by this Act in relation to a particular foreign state—

(a) exceed or are less than those accorded by the law of that foreign state in relation to the Republic; or
(b) are less than those required by any treaty, convention or other international agreement to which that foreign state and the Republic are parties,

he may by proclamation in the Gazette restrict or, as the case may be, extend those immunities and privileges to such extent as appears to him to be appropriate.

5.142   17. *Evidence by certificate.*—A certificate by or on behalf of the Minister of Foreign Affairs and Information shall be conclusive evidence on any question—

(a) whether any foreign country is a state for the purposes of this Act;
(b) whether any territory is a constituent part of a federal foreign state for the said purposes;
(c) as to the person or persons to be regarded for the said purposes as the head of state or government of a foreign state;
(d) whether, and if so when, any document has been served or received as contemplated in section 13(1) or (5).

5.143   18. *Short title and commencement.*—This Act shall be called the Foreign States Immunities Act 1981, and shall come into operation on a date to be fixed by the State President by proclamation in the Gazette.