UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNY RUBIN,<br>DEBORAH RUBIN,<br>DANIEL MILLER,<br>ABRAHAM MENDELSON,<br>STUART E. HERSCH,<br>RENAY FRYM,<br>NOAM ROZENMAN,<br>ELENA ROZENMAN and<br>TZVI ROZENMAN,<br><br>   Plaintiffs — Judgment Creditors,<br><br>v.<br><br>THE ISLAMIC REPUBLIC OF IRAN,<br>THE IRANIAN MINISTRY OF INFORMATION<br>AND SECURITY,<br>AYATOLLAH ALI HOSEINI KHAMENEI,<br>ALI AKBAR HASHEMI-RAFSANJANI and<br>ALI FALLAHIAN-KHUZESTANI<br><br>   Defendants – Judgment Debtors,<br><br>v.<br><br>MUSEUM OF FINE ARTS, a not-for-profit corporation<br>(a/k/a Boston MFA), HARVARD UNIVERSITY, et al.<br><br>   Trustee Process Defendants. | Case No.: 1:05-MC-10079 |

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ESTABLISHING THAT NO PERSON OTHER THAN
IRAN MAY ASSERT IRAN'S SOVEREIGN IMMUNITY DEFENSES
UNDER §§ 1609 AND 1610 OF THE FSIA

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**……………………………………………....iii-iv

I.   **BACKGROUND AND TRAVEL**……………………………………………1-5

II.  **ONLY IRAN HAS STANDING TO ASSERT A SOVEREIGN
     IMMUNITY DEFENSE TO THIS ENFORCEMENT
     PROCEEDING**………………………………………………………………5-10

III. **PARTIAL SUMMARY JUDGMENT IS APPROPRIATE
     AND IN THE INTEREST OF JUDICIAL
     ECONOMY**…………………………………………………………………11-12

     **CONCLUSION**………………………………………………………………12

## TABLE OF AUTHORITIES

Acree v. Republic of Iraq, 276 F.Supp.2d 95 (D.D.C. 2003) *rev'd on other grounds* 370 F.3d 41 (D.C.Cir. 2004)……………………………………………………………8, 10

Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc., 179 F.3d 1279 (11th Cir. 1999)…………………………………………………………..……………………..8, 10

Brown v. Medtronic, 852 F.Supp. 717 (S.D.Ind. 1994)……………………….......12

Caribbean Trading and Fidelity Co., 948 F.2d 111 (2nd Cir. 1991)………………11

Davis v. Bryan, 810 F.2d 42 (2nd Cir. 1987)…………………………………………9

Didi v. Destra Shipping Co., Ltd., 1993 WL 8662 (E.D.La. 1993)…………………..8

FDIC v. Giammettei, 34 F.3d 51 (2nd Cir. 1994)………………………...…………12

Hulmes v. Honda Motor, 924 F.Supp. 673 (D.N.J. 1996)…………………………...12

International Ship Repair and Marine Services, Inc. v. St. Paul Fire and Marine Ins. Co., 944 F.Supp. 886 (M.D. Fla. 1996). ………………………………………..……12

Liberty Mutual Insurance Co. v. Greenwich Ins. Co., 286 F.Supp.2d 73 (D. Mass. 2003)………………………………………………………………………………………..9

Malewicz v. City of Amsterdam, 362 F.Supp.2d 298 (D.D.C. 2005)…………….…..5

Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc., 385 F.3d 1206 (9th Cir. 2004)…………………………………………………………………………...…..11

National Union Fire Insurance Company v. The People's republic of The Congo, (N.D.Ill. December 5, 1991) (No. 91-C3172)………………………………….8, 9, 11

New York Land Co. v. Republic of Philippines 634 F.Supp. 279 (S.D.N.Y. 1986)…………………………………………………………………………….6, 7

Presbyterian Church of Sudan v. Talisman Energy, 244 F.Supp.2d 289 (S.D.N.Y.)……………………………………………………………………8, 10

Republic of Philippines v. Marcos, 806 F.2d 344 (2nd Cir. 1986)……………………7

Rhode Island Hospital Trust National bank v. Ohio Casualty Insurance Company, 789 F.2d 74 (1st Cir. 1986)……………………………………………………………...9

Rubin v. Islamic Republic of Iran, 281 F. Supp. 2d 258 (D.D.C. 2003)………….…..2

Rubin v. Islamic Republic of Iran, 2005 WL 670770 (D.D.C. 2005)…………….…..5

Sesostris v. Transportes Navales, 727 F.Supp. 737 (D. Mass. 1989)…………….…...5

Transmatic, Inc. v. Gulton Industries, Inc., 53 F.3d 1270 (Fed. Cir. 1995)…………………………………………………………………………….....12

Tri-State Mint, Inc. v. Riedel Environmental Services, 29 F.3d 424 (8th Cir. 1994)…………………………………………………………………………………12

Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480 (1983)………………………………………………………………………...9, 10

Walker International Holdings Ltd. v. The Republic of Congo, 395 F.3d 229 (5th Cir. 2004), cert. denied 125 S. Ct. 1841 (2005)………………………………………...11, 12

Walsh v. U.S., 31 F.3d 696 (8th Cir. 1994)………………………………………………12

Wilmington Trust v. United States Dist. Court, 934 F.2d 1026 (9th Cir. 1991)………………………………………………………………………7, 8, 12

W.S.A. Inc. v. ACA Corp., 1997 WL 551599 (S.D.N.Y. 1996)………………….......9

## CONSTITUTIONS, STATUTES AND RULES

28 U.S.C. §1602 et seq., Foreign Sovereign Immunities Act (FSIA)…..……………...
…………………………..……………………………………2, 4, 5, 6, 7, 10, 11, 13

28 U.S.C. §1963……………………………………………………...…………………..3

Federal Rules of Civil Procedure 69…………………………………………………..4

Terrorism Risk Insurance Act §201…………………………………...……………………5

iv

## I.    **BACKGROUND AND TRAVEL**

The Plaintiffs are American citizens who were severely harmed by a triple suicide bombing carried out by the terrorist group Hamas on September 4, 1997, at an outdoor pedestrian mall in Jerusalem, Israel.

On July 31, 2001, Plaintiffs brought suit under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §1605(a)(7), in the United States District Court for the District of Columbia ("D.C. Court") against the Islamic Republic of Iran ("Iran") and other Iranian government defendants for their provision of training and other material support and assistance to the Hamas terrorists who carried out the bombing attack. Section 1605(a)(7) of the FSIA creates subject-matter jurisdiction and abrogates the sovereign immunity of designated foreign state sponsors of terrorism (such as Iran) in civil actions for money damages "for personal injury or death that was caused by an act of torture, extra-judicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources...for such an act...". 28 U.S.C. 1605(a)(7).

Following a four-day evidentiary hearing conducted pursuant to 28 U.S.C. §1608, the D.C. Court found "clear and convincing evidence" that Iran and the other defendants provided terrorist training and other material assistance to the Hamas terrorists who executed the bombing attack. The D.C. Court found Iran and the other defendants liable for the torts of battery, assault, and intentional infliction of emotional distress against the Plaintiffs. Rubin v. Islamic Republic of Iran, 281 F. Supp. 2d 258 (D.D.C. 2003).

On September 10, 2003, the D.C. Court entered judgment in favor of Plaintiffs against Iran and the other defendants, jointly and severally, in the total amount of $71,500,000.00 in compensatory damages ("Judgment"). A copy of the judgment as

13412/000/pld/13b                    1

registered in this Court is appended to Plaintiffs' Motion for Partial Summary Judgment as "Exhibit A".

To date, the Plaintiffs have recovered $399,001.00 upon the judgment. Defendants have failed to pay the balance owed under the judgment. See Affidavit of David J. Strachman appended to Plaintiffs' Motion for Partial Summary Judgment as "Exhibit B". The portion of the Judgment for compensatory damages that remains due and unpaid is $71,100,999.00, excluding post-judgment interest.[1] Iran has refused to honor the Judgment.

On February 10, 2005, the Plaintiffs registered their Judgment in this Court pursuant to 28 U.S.C. §1963 and the Judgment therefore has "the same effect as a judgment of" this Court. Id.

On March 28, 2005, the Plaintiffs filed a Motion for Order of Attachment by Trustee Process, seeking to secure antiquities and artifacts held by the Trustee Process Defendants that, according to highly credible information received by Plaintiffs, remain the legal property of Iran.[2]

The documents evidencing the registration of the Judgment in this Court and the pleadings on Plaintiffs' Motion for Order of Attachment were served upon Iran and the other defendants on or about April 15, 2005. See Affidavit of Georgia J. Asimakopoulos,

---

[1] The D.C. Court also imposed punitive damages against all defendants except Iran in the amount of $187,500,000.00.

[2] As discussed in plaintiffs' Memorandum in support of their Motion for Order of Attachment by Trustee Process, most of these items came into the possession of the Trustee Process Defendants during the course of several excavations in Iran during the 1920's and 30's. Plaintiffs will demonstrate when this proceeding reaches the merits phase that these antiquities and artifacts were removed from Iran without Iran's permission or knowledge and therefore remain the property of Iran under applicable Iranian, international and domestic law. Similar claims against the Trustee Process Defendants have been raised in the past in respect to antiquities and artifacts from other parts of the world. Descriptions of these efforts are attached collectively to Plaintiffs' Motion for Partial Summary Judgment as "Exhibit C".

dated April 26, 2005, attached to Plaintiffs' Motion for Partial Summary Judgment as "Exhibit D".

After the Summonses to the Trustee Process Defendants were approved by and filed with the Court, the Plaintiffs served the Summonses on the Trustee Process Defendants on May 16, 2005.

On June 3, 2005, one of the Trustee Process Defendants, the Museum of Fine Arts ("MFA"), filed a Response to the trustee process summons. In its Response, the MFA admits that the MFA holds antiquities and other property that originated in Iran, but claims that these items are not owned by Iran.[3] The MFA's Response further asserts that even if this property does belong to Iran, it is immune from execution pursuant to § 1610 of the FSIA. MFA Response at 3.

On June 27, 2005, the other Trustee Process Defendants, i.e. Harvard University, President and Fellows of Harvard College, Harvard University Art Museums, Busch-Reisinger Museum, Fogg Art Museum, Sackler Museum, Semitic Museum, and Peabody Museum of Archaeology and Ethnology (hereinafter collectively "Harvard"), filed their Response to the trustee process summons. Like the MFA, Harvard admits in its Response that it holds antiquities and other property that originated in Iran, but asserts that this property is not owned by Iran.[4] Echoing the MFA, the Response filed by

---

[3] In light of the MFA's response, Plaintiffs served upon the MFA pursuant to Fed. R. Civ. P. 69 a request for the production of documents in aid of execution in order to determine the factual basis for the claims of ownership of these Iranian antiquities. A copy of the Plaintiffs' Request for Production of Documents is attached to Plaintiffs' Motion for Partial Summary Judgment as "Exhibit E".

[4] In light of Harvard's response, Plaintiffs served upon Harvard pursuant to Fed. R. Civ. P. 69 a request for the production of documents in aid of execution in order to determine the factual basis for the claims of ownership of these Iranian antiquities. A copy of the Plaintiffs' Request for Production of Documents is attached to Plaintiffs' Motion for Partial Summary Judgment as "Exhibit E".

13412/000/pld/13b                                    3

Harvard also claims that even if this property belongs to Iran, it is immune from execution pursuant to § 1610 of the FSIA.  Harvard Response at 2.

In July 2005, the Plaintiffs served copies of the Trustee Process Summonses to Harvard and the MFA and Process Receipt and Returns upon Iran.  See Affidavit of Georgia J. Asimakopoulos, ¶2, dated July 25, 2005, attached to Plaintiffs' Motion for Partial Summary Judgment as "Exhibit F".

On June 27, 2005, Harvard also filed a Motion to Quash Summons and to Dissolve Attachment By Trustee Process ("Motion to Quash").  By its Motion to Quash, Harvard seeks not only to quash the summons but also a dispositive ruling that the assets sought are immune from execution under §§ 1609 – 1610 of the FSIA.

In other words, both the MFA and Harvard are seeking to extinguish this proceeding summarily, on the grounds that Iran's assets are immune from attachment and execution under §§ 1609 – 1610 of the FSIA.

If it were necessary for Plaintiffs to respond to this immunity argument on the merits, they would demonstrate that the assets in question are subject to attachment and execution pursuant to both §201 of the Terrorism Risk Insurance Act ("TRIA") and §1610 of the FSIA. *See e.g.* Rubin v. Islamic Republic of Iran, 2005 WL 670770 (D.D.C. 2005) (writ of execution against Iranian property granted under §201 of TRIA); Malewicz v. City of Amsterdam, 362 F.Supp.2d 298 (D.D.C. 2005) (holding that exhibition of foreign state artwork by museums in the United States constitutes commercial activity under §1610 of the FSIA); Sesostris v. Transportes Navales, 727 F.Supp. 737, 744 (D.Mass. 1989) (commercial use by the foreign sovereign is not required under §1610).

Fortunately, however, both the Court and the parties will be spared the need to litigate the sovereign immunity claims raised by the Trustee Process Respondents (and the extensive briefing and arguments, and the complex decision and disposition, that litigation of those claims would entail) because, as shown below, as a matter of law only Iran has standing to assert its sovereign immunity defense in this proceeding.

Plaintiffs therefore now move for partial summary judgment establishing that no person other than Iran has standing to assert Iran's sovereign immunity under §§ 1609 – 1610 of the FSIA.

Taking the sovereign immunity claims off the table will dispose of Harvard's Motion to Quash in its entirety, and put to rest the immunity claims contained in the Responses filed by both Harvard and the MFA. Thus, once Plaintiffs' motion is granted, the sole question remaining in this proceeding will be the ownership of the property at issue. Entry of partial summary judgment on this matter will therefore significantly ease, expedite and simplify the conclusion of these proceedings, and so preserve significant judicial and party resources. [5]

## II.   ONLY IRAN HAS STANDING TO ASSERT A SOVEREIGN IMMUNITY DEFENSE TO THIS ENFORCEMENT PROCEEDING

It is well established throughout the federal circuits that a claim of sovereign immunity under the FSIA can only be asserted by the foreign state itself.

For example, in New York Land Co. v. Republic of Philippines 634 F.Supp. 279 (S.D.N.Y. 1986), the plaintiff obtained a preliminary injunction restraining assets of the defendants (former President of the Philippines, Ferdinand Marcos and his wife Imelda

---

[5] Accordingly, the Plaintiffs are also filing currently herewith a motion to stay further briefing on the motion to quash pending disposition of the instant Motion for Partial Summary Judgment.

Marcos) controlled by third party trustees. The third parties moved to quash the injunction, asserting *inter alia* that the Marcoses were entitled to sovereign immunity under the FSIA. The United States District Court for the Southern District of New York summarily rejected this argument, finding that the third party trustees did not have standing to assert the Marcoses' sovereign immunity:

> The record holders of the Manhattan Properties raise the additional defenses that President Marcos is immune from suit under Philippine law (in particular a 1981 amendment to the Philippine Constitution) and is further protected by the Foreign Sovereign Immunity Act of 1976, 28 U.S.C. §§ 1602 *et seq.* Without reaching the merits of these defenses, it is sufficient to say that Mr. Marcos has not appeared in this action, and that none of the appearing defendants is entitled to raise either defense on his behalf.

*Id*. at 290 (emphasis supplied).

The third-party trustees appealed, and the Second Circuit affirmed the holding of the district court that they were without standing to assert the Marcoses' sovereign immunity. Republic of Philippines v. Marcos, 806 F.2d 344, 360 (2nd Cir. 1986) ("Appellants … claim that the Marcoses are entitled to sovereign immunity. We agree that appellants have no standing to assert this claim.").

The Ninth Circuit has also adopted this position. In Wilmington Trust v. United States Dist. Court, 934 F.2d 1026 (9th Cir. 1991), that Court explained its rationale for limiting claims of immunity to foreign states as follows:

> Congress intended the FSIA to supplant the earlier practice whereby a foreign sovereign would appeal to the State Department "to make a formal suggestion of immunity to the court." H.R. No. 1487, 94th Cong., 2d Sess. 7, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6606. Congress transferred this decision to the courts. *Id.* We hold that, based on the language of the statute and its legislative history, Congress intended requests for protection under the FSIA to originate from the foreign state party.

<u>Wilmington Trust v. United States Dist. Court</u>, 934 F.2d 1026, 1032-3 (9th Cir. 1991) (emphasis supplied).

The Eleventh Circuit has adopted the same FSIA standing rule, expressly holding that, "[p]arties other than a foreign sovereign ordinarily lack standing to raise the defense of sovereign immunity." <u>Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.</u>, 179 F.3d 1279, 1290 (11th Cir. 1999).

In addition to the Second, Ninth and Eleventh Circuits, it appears that every district court to have considered the question has followed the same rule. For example, in a recent decision, the United States District Court for the District of Columbia (which is the default venue for FSIA actions) held:

> The United States argues that its challenge to the Court's subject matter jurisdiction based on the defense of Iraq's restored sovereign immunity is a question of law that it has in common with the main action. <u>Iraq's sovereign immunity</u>, however, is not "the applicant's claim or defense." Instead, as is noted above, it <u>is a defense that can be asserted only by Iraq</u>.

<u>Acree v. Republic of Iraq</u>, 276 F.Supp.2d 95, 102 (D.D.C. 2003) *rev'd on other grounds* 370 F.3d 41 (D.C.Cir. 2004) (emphasis supplied). *See also* <u>Presbyterian Church of Sudan v. Talisman Energy</u>, 244 F.Supp.2d 289, 342 n. 42 (S.D.N.Y. 2003) ("Certainly, as a sovereign country, Sudan is potentially entitled to immunity under the Foreign Sovereign Immunities Act.... However, [defendant] lacks standing to raise an FSIA defense on Sudan's behalf."); <u>Didi v. Destra Shipping Co., Ltd.</u>, 1993 WL 232075 at 2 (E.D.La. 1993) ("A party other than the alleged foreign state generally does not have standing to assert the defense of sovereign immunity as it relates to that foreign state."); <u>National Union Fire Insurance Company v. The People's Republic of The Congo</u>, (N.D.Ill. December 5, 1991) (No. 91-C3172) at 10 (attached hereto) (Third party

garnishee "has no standing to raise an immunity defense under" the FSIA on behalf of foreign state judgment debtor).[6]

In fact, there is nothing unusual about this rule. As the Supreme Court has explained, "sovereign immunity is an affirmative defense that must be specially pleaded." Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 494 n. 20 (1983) (quoting the House Report on the FSIA).

It is well established that affirmative defenses and personal defenses cannot be raised by third parties. Thus, for example, even though "a surety may generally raise the defenses available to its principal, this is not the case where such defenses are personal to the debtor or arise by operation of law." Liberty Mut. Ins. Co. v. Greenwich Ins. Co., 286 F.Supp.2d 73, 77 (D.Mass. 2003) (Noting the "inability of a third-party to raise a personal defense of a debtor"). *See also* Rhode Island Hospital Trust National Bank v. Ohio Casualty Insurance Company, 789 F.2d 74, 78-79 (1st Cir. 1986) ("a surety may not assert personal defenses of its principal, such as insanity, infancy, or duress, and also may not claim defenses that arise by operation of law, such as the statute of limitations."); W.S.A. Inc. v. ACA Corp., 1996 WL 551599 (S.D.N.Y. 1996) ("while [defendant] contends that the complaint is untimely as to [other defendants] it has no standing to raise the affirmative defense of statute of limitations on their behalf, nor may I consider its application sua sponte.") (citing Davis v. Bryan, 810 F.2d 42, 44 (2nd Cir. 1987)).

The sole exception to the rule that sovereign immunity may be asserted only by the foreign state itself, is when the presence of sovereign immunity – i.e. the absence of any of the exceptions to immunity enumerated in the FSIA – would negate the court's

---

[6] The Report and Recommendation in National Union apparently became final by operation of Fed.R.Civ.P. 72 since neither the docket nor the court file (which Plaintiffs examined) indicate that any objections were filed to it.

13412/000/pld/13b

8

subject-matter jurisdiction.  Since in such a case the court's subject-matter jurisdiction is in the balance, the court itself *sua sponte* must question whether the foreign state defendant is immune from suit, irrespective of whether the foreign state itself appears to defend the action.  *See e.g.* <u>Aquamar</u>, 179 F.3d at 1290 ("When the court's jurisdiction rests on the presence of the foreign sovereign [in the case] the court may address the issue independently.) <u>Verlinden</u>, 461 U.S. at 494 n. 20 (Under § 1605 of the FSIA and 28 U.S.C. § 1330 "subject matter jurisdiction turns on the existence of an exception to foreign sovereign immunity.  Accordingly, even if the foreign state does not enter an appearance to assert an immunity defense, a District Court still must determine that immunity is unavailable under the Act.") (citation omitted).[7]

However, the presence or absence of sovereign immunity can affect the court's subject-matter jurisdiction only in a <u>plenary suit</u> under §1605 of the FSIA (which is a jurisdictional provision) and thus sovereign immunity can be raised by someone other than the foreign state (i.e. by the court or another party) only in such a plenary suit.

By contrast, the immunities provided in §§1609-1610 of the FSIA, which govern attachment and execution of property of a foreign state, are <u>not jurisdictional</u> and cannot affect the Court's subject-matter jurisdiction:

---

[7] When the existence *vel non* of sovereign immunity impacts subject-matter jurisdiction, some courts have allowed parties other than the foreign state to raise the immunity issue.  <u>See</u> <u>Aquamar</u>, 179 F.3d at 1290 ("Because federal jurisdiction depended upon PNB's presence, the fact that plaintiffs, rather than PNB, raised the issue of sovereign immunity did not foreclose the district court's inquiry.").

However, other courts have held that in such a case – i.e. even when subject-matter jurisdiction is a stake – only the court itself, and not other parties, may raise the immunity question. *See e.g.* <u>Acree</u>, 276 F.Supp.2d at 102 (denying a motion of the United States to intervene in order to assert Iraq's FSIA immunity since "Iraq's sovereign immunity. . . is a defense that can be asserted only by Iraq [and] the Court can address its subject matter jurisdiction *sua sponte* and has done so …"); <u>Presbyterian Church</u>, 244 F.Supp.2d at 342 n. 42 (holding that Sudan's non-sovereign co-defendant "lacks standing to raise an FSIA defense on Sudan's behalf.")

[T]he FSIA preserved a distinction between two different aspects of foreign sovereign immunity: jurisdictional immunity – that is, a foreign sovereign's immunity from actions brought in United States courts – and immunity from attachment – a foreign sovereign's immunity from having its property attached or executed upon. *See Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 252 (5th Cir. 2002). The FSIA's structure demonstrates that it preserves the distinction between these two types of immunity. On the one hand, § 1604 establishes a default rule that a foreign sovereign will be immune from the jurisdiction of United States courts unless one of the exceptions set out in § 1605 applies; on the other hand, § 1609 provides that the property of foreign states and their instrumentalities will be immune from attachment and execution unless one of the exceptions set out in § 1610 applies.

Ministry of Defense and Support for Armed Forces of Islamic Republic of Iran v. Cubic Defense Systems, 385 F.3d 1206, 1218 (9th Cir. 2004). *See also* National Union Fire Insurance Company at 8 ("We conclude . . . that the immunity rules in § 1609 and 1610 for execution upon foreign state property are not rules of subject matter jurisdiction."); *Cf.* Caribbean Trading and Fidelity Co., 948 F.2d 111, 115 (2nd Cir. 1991) ("[T]he applicability and effect of Section 1609 are not matters, like subject-matter jurisdiction, that may be raised at any time by a foreign state.")[8]

Therefore, since the immunity provided in §§ 1609-1610 is utterly irrelevant to the Court's subject-matter jurisdiction in the instant trustee process proceeding, Iran alone can assert that immunity.[9]

---

[8] Accordingly, § 1604 is entitled "immunity of a foreign state from jurisdiction" and § 1605 is entitled "general exceptions to the jurisdictional immunity of a foreign state." By contrast, §§ 1609 and 1610 neither mention subject matter jurisdiction nor reference the term "jurisdiction."

[9] The sole decision to the contrary appears to be Walker International Holdings Ltd. v. The Republic of Congo, 395 F.3d 229, 233 (5th Cir. 2004), *cert. denied* 125 S. Ct. 1841 (2005). Walker is extremely weak authority at best, in light of the surprising fact that the Fifth Circuit overlooked all the previous on-point case law and mistakenly believed it was writing on a *tabula rasa*. In the words of the Fifth Circuit: "Walker cites no authority and we were unable to find any authority for the proposition that it is the sovereign's *exclusive* right to raise the issue of sovereign immunity under the FSIA." *Id.*

Thus, whether due to a lack of proper briefing by appellant or otherwise, the Fifth Circuit simply missed the extensive authority from the Second, Ninth and Eleventh Circuits and from the federal district court cases referenced above, which expressly and uniformly held that third parties may not assert sovereign

## III.    PARTIAL SUMMARY JUDGMENT IS APPROPRIATE AND IN THE INTEREST OF JUDICIAL ECONOMY

Summary judgment "is especially appropriate where the issues in dispute are purely legal . . ." Brown v. Medtronic, 852 F.Supp. 717, 718 (S.D.Ind. 1994). *See also* Walsh v. U.S., 31 F.3d 696, 698 (8th Cir. 1994) ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."); Tri-State Mint, Inc. v. Riedel Environmental Services, 29 F.3d 424, 426 (8th Cir. 1994) ("Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."); Hulmes v. Honda Motor, 924 F.Supp. 673 (D.N.J. 1996)(motion presenting only questions of law is ripe for summary adjudication).

The question of whether anyone other than Iran may assert Iran's sovereign immunity is a purely legal question about the standing to assert an affirmative defense. The federal courts commonly grant partial summary judgment disposing of a defendant's affirmative defense. *See e.g.* FDIC v. Giammettei, 34 F.3d 51, 54-55 (2nd Cir. 1994) (holding and citing precedents for the rule that summary judgment may be utilized to eliminate an affirmative defense, and affirming the district court's grant of partial summary judgment disposing of defendants' affirmative defenses); Transmatic, Inc. v. Gulton Industries, Inc., 53 F.3d 1270, 1274-1275 (Fed. Cir. 1995) (affirming district court's grant of partial summary judgment dismissing defendant's affirmative defense); International Ship Repair and Marine Services, Inc. v. St. Paul Fire and Marine Ins. Co.,

---

immunity defenses on behalf of foreign states. Had this unanimous prior authority been before it, the Fifth Circuit might well have concluded that Congress "intended requests for protection under the FSIA to originate from the foreign state party." Wilmington Trust, *supra* at 1032-3. In any case, since Walker does not even address, much less provide a rationale for diverging from, the wall-to-wall case law of the other circuits, it can have no real weight as precedent.

944 F.Supp. 886, 891 (M.D.Fla. 1996) ("partial summary judgment may be used by the Court to dispose of affirmative defenses.")

Obviously, it would be a glaring and egregious waste of precious time and resources, both for the Court and the parties, to litigate and determine the amenability of the assets held by the Trustee Process Respondents to execution under TRIA and the FSIA when Iran has not made any claim of immunity and no other party has standing to do so.

Plaintiffs' motion for partial summary judgment dispositively settling the question of who may raise a sovereign immunity defense in this case, is therefore well-founded and eminently appropriate.

## Conclusion

For the foregoing reasons, the Plaintiffs respectfully request that the Court enter partial summary judgment establishing that no party other than Iran has standing to assert Iran's foreign sovereign immunity defenses under 28 U.S.C. §§ 1609-1610.

Respectfully Submitted,

Jenny Rubin, et al.

By their attorneys,


/s/ Richard J. Grahn
Richard J. Grahn, Esq., BBO #206620
Edward V. Colbert, III, Esq., BBO #566187
Georgia J. Asimakopoulos, Esq., BBO #658232
LOONEY & GROSSMAN LLP
101 Arch Street
Boston, MA 02110
(617) 951-2800


/s/ David J. Strachman
David J. Strachman, Esq., BBO #660136
McIntyre, Tate, Lynch & Holt
321 South Main Street, Ste. 400
Providence, RI 02903
(401) 351-7700

Dated:  July 25, 2005

DOCKETED

DEC 6 - 1991

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. | ) ) ) | Sent for Microfilming |
| Plaintiff, | ) | DEC 6 - 1991 |
| v. | ) | 91 C 3172 |
| | ) | Judge Norgle    Filmed on |
| THE PEOPLE'S REPUBLIC OF THE CONGO, | ) ) | Magistrate Judge Weisberg |
| Defendant. | ) ) | |

Report and Recommendation on Pending Motions

On October 23, 1987 plaintiff National Union Fire Insurance Co. of Pittsburgh, Pa. (NUFI) obtained a judgment by default against the Peoples Republic of the Congo (The Congo) for $ 22,457,273.62 in a British court. The Congo had defaulted in repayment of a loan made pursuant to a Credit Facility Agreement dated December 13, 1983. The background is summarized in National Union Fire Insurance Co. v. Peoples Republic of The Congo, 729 F. Supp. 936 (S.D.N.Y. 1989), recognizing and enforcing the judgment.

On May 22, 1991 NUFI registered the New York judgment in this district. On August 14, 1991 NUFI noticed a motion before the District Judge in New York for permission to execute on the judgment as required by §1610(c) of the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§1330, 1332(a)(4), 1441(d) and 1602-1611. On the same date NUFI served Citations to Discover Assets on several parties in this district including Amoco Congo Exploration Company, Amoco Congo Petroleum Company, Amoco Corporation and Amoco Production Company (collectively, Amoco). As permitted by Illinois Supreme Court Rule 277(b) and Ill. Rev Stat. (1989) Ch. 110 ¶ 2-1402(a), made applicable by Fed. R. Civ. Proc. 69(a), the citations were signed by the Clerk of the court. They ordered Amoco to appear on September 12, 1991 to be examined under oath concerning indebtedness due to the judgment debtor. Judgment debtor was defined to include not only The Congo but also any of its

84

agencies or instrumentalities, specifically including Societe Nationale de Recherches et d'Exploitation Petrolieres (Hydro-Congo). The citations also ordered the production of documents and prohibited Amoco from making any transfer of property to the judgment debtor.

Amoco and The Congo each moved to vacate and quash the citations. They also moved for protective orders limiting any discovery by NUFI and vacating deposition notices and document demands subsequently served by NUFI. Extensive briefs and affidavits were filed. On October 9, 1991 Judge Norgle referred to this court all matters regarding these supplemental post-judgment proceedings pursuant to 28 U.S.C. § 636(b)(l)(A).1/

This court set November 1, 1991 for a hearing and ruling on all pending motions. Amoco subsequently noticed for that date an emergency motion to vacate or lift restraining orders or for an immediate ruling on its motion to vacate, stating objections to a proposed settlement between NUFI and The Congo. NUFI noticed for the same date before Judge Norgle its motion for entry of a Stipulated Turnover Order (Order) pursuant to a settlement agreement entered into by The Congo and NUFI dated as of October 14, 1991 as amended October 30, 1991 (Settlement Agreement). This court has been advised that the Order which is dated November 1, 1991 was entered in chambers by Judge Norgle based on his impression that all matters in controversy had been settled. Upon learning of Amoco's objections he stayed the Order until November 15, 1991 and on November 13, 1991 extended that stay until this court has ruled on pending motions and he has ruled on any objections to those rulings.

A further hearing was held on November 1, 1991. On November 8, 1991 the Amoco parties moved to vacate or amend the Order. NUFI and Amoco have filed briefs on the central issue raised by Amoco's objections to the Order, whether the court has subject matter jurisdiction and power to enter the Order.

---

1/ The referral order has an X in the box opposite local Rule 1.70 C 2 relating to non-dispositive pretrial matters but the referenced statement below is to "all matters regarding supplemental (post-judgment) proceedings." As this court stated at the hearing on November 8, 1991, Judge Norgle has confirmed our view that the order was intended to refer all supplemental proceedings, dispositive as well as non-dispositive.

On November 1, 1991, Judge Norgle granted the motion of counsel for The Congo to withdraw. NUFI has submitted a copy of a letter addressed to this court dated November 8, 1991 signed by the Delegate Minister For Mines And Energy and The Secretary of State For The Budget of the Republic of The Congo stating that the settlement with NUFI received the unanimous approval of the government as well as that of the Superior Council of The Republic of The Congo, its legislative body, and stating their wish to conclude this litigation with the settlement recently signed with NUFI.

At a hearing on November 26, 1991, arguments were heard on Amoco's objections to particular provisions of the Order. NUFI and Amoco were directed to submit an order revised in accordance with oral rulings delivered on that date.

Background

Amoco is engaged in a joint venture to explore for and sell Congolese oil pursuant to a May 25, 1979 agreement (the Convention) between the Congo, certain U.S. and Canadian oil companies (one of which later transferred its interest to Amoco) and Hydro-Congo. Berkman Affidavit, Exh. C. The Congo granted an exploration permit to Hydro-Congo for the benefit of the joint venture. The Convention exempts the companies in the joint venture (certain Amoco subsidiaries, Hydro-Congo and Kufpec, a Kuwaiti company) from all Congolese taxes except for mining royalties based on oil production and a corporate income tax. Arts. 6.01 and 7.01. Operations under the permit are also regulated by a Joint Operating Agreement (JOA) between the companies.

In § 8.8(b) of the Credit Facility Agreement The Congo, for itself and any Government Property located outside of the Congo, waived in any court in which proceedings related to the Agreement are commenced, sovereign immunity from suit, jurisdiction, pre-judgment or post-judgment attachment in aid of execution of a judgment, set-off and other legal process.

Under the FSIA, § 1604, subject to international agreements existing at the time the FSIA was enacted, a foreign state is immune from the jurisdiction of U.S. courts except as

3

provided in §§ 1605 to 1607. One of the exceptions is any case in which the foreign state has waived its immunity. Section 1605(a)(1). The District Court has undisputed subject matter jurisdiction under § 1330(a) and personal jurisdiction under § 1330(b) because of The Congo's waiver of immunity from jurisdiction in the Credit Facility Agreement.

The Settlement Agreement

The parties to the Settlement Agreement are The Congo, NUFI and American International Group (AIG). Provisions in which AIG agrees to assist The Congo in procuring financing do not concern us. Pertinent provisions of the Settlement Agreement are the following:

1. The Congo transfers to NUFI all of its right, title and interest in the Royalty Interest, defined as the first 50% of all monies due to The Congo as mineral royalties pursuant to the Convention. Sec. 1.02 and Schedule I.

2. The Congo agrees to join NUFI in notifying the parties to the Joint Operating Agreement of the sale of the Royalty Interest to NUFI and directing them to make all payments due to The Congo in respect of the Royalty Interest directly to The Congo. Sec. 1.03.

3. Upon the entering into effect of the Settlement Agreement, NUFI agrees to withdraw any and all pending legal attachments instituted by it anywhere in the world regarding assets of The Congo. Sec. 1.01(a).

4. Under § 9.11 as amended (a) the Settlement Agreement became effective as of its date, October 14, 1991 and (b) NUFI's obligation to withdraw the citations served upon Amoco is to be accomplished by the entry of an order by this district court substantially in the form of the Order, a copy of which is attached as Annex E to the Amendment dated October 29, 1991 (referred to in NUFI's motion papers as dated October 30, 1991).

The Order

The Order requires Amoco to pay over to NUFI all amounts owed or to be owed by

4

Amoco to The Congo in respect of the royalty interest, specifically including any amounts owed on behalf of Kufpec or Hydro-Congo. All such payments are to be applied against NUFI's outstanding judgment against The Congo. The Order states that it shall constitute a judgment lien on the royalty interests due to The Congo and, subject to the court retaining jurisdiction to enforce the parties' obligations under the Order, all proceedings on all citations to discover assets issued in this case are terminated.

The Issues

There were five issues raised by the motions to quash the citations issued to Amoco and the motions for protective orders filed by Amoco and The Congo.

1. Are the restraining orders and prohibitions void because the citations were issued without a prior court order as required by § 1610(c)?

2. Are the taxes and mineral royalty payments owed by Amoco to The Congo immune from attachment or execution under the FSIA?

3. Are the citations improper because they restrain payments to and seek discovery about Hydro-Congo and other state-owned Congolese companies that are not the judgment debtor?

4. Is Amoco in any event entitled to a set-off greater than the amount of NUFI's judgment?

5. Is NUFI entitled to any discovery? If so, should that discovery be limited based on immunity, relevance and confidentiality concerns?

All of these issues are moot as to The Congo. By entering into the Settlement Agreement and stipulating to the entry of the Order, and by the letter addressed to this court dated November 8, 1991, the Congo has effectively withdrawn its motions to quash and for a protective order.

As to Amoco, Issue 1 is mooted by the Settlement Agreement and the Order. The Congo has withdrawn its objection based on § 1610(c) and Amoco has not raised that issue in

5

its objections to the Order.

As to Amoco, Issue 3 need not be addressed in view of the Settlement Agreement since the termination of the citation proceedings will leave Amoco free to make all payments due to Hydro-Congo and other state-owned Congolese companies.

As to Amoco, Issues 4 and 5 are also moot since Amoco has only claimed a set-off based on amounts due to Amoco from Hydro-Congo. No set-off has been claimed with respect to amounts due to The Congo. Upon termination of the citations NUFI's discovery requests will be withdrawn.

As to Amoco, Issue 2 is moot with respect to taxes due from Amoco to The Congo which are not affected by the settlement or the Order. This issue remains in dispute as to mineral royalty payments due to The Congo under Article VII of The Convention. Amoco's position is that those royalty payments are not property in the United States used for commercial activity in the United States as required by § 1610(a) and for that reason the court lacks subject matter jurisdiction or power to enter any order requiring Amoco to make such payments to NUFI.

Jurisdiction and Standing Under the FSIA

These are the pertinent provisions of the FSIA:

§ 1330 - Actions Against Foreign States

(a)   The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.

§ 1604 - Immunity Of A Foreign State From Jurisdiction

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

6

§ 1605 - General Exceptions To The Jurisdictional Immunity Of A Foreign State

(a)    A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--

   (1)    in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;...

§ 1609 - Immunity From Attachment and Execution of Property Of A Foreign State

   Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.

§ 1610 - Exceptions To The Immunity From Attachment Or Execution

   (a) The property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if --

   (1)    the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, or...

Amoco's arguments are,

1.    FSIA § 1610 is the sole statutory basis on which the Stipulated Turnover Order can issue. Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989); Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 489 (1983).

2.    Section 1610 does not confer jurisdiction to attach foreign state property unless the property is "in the United States" and "used for a commercial activity in the United States."

7

3.    The mineral royalty payments due to The Congo under the Convention are not commercial property in the United States as required by § 1610.

4.    Section 1610 expressly denies courts the power to attach or execute upon non commercial foreign state property not used for U.S. commercial activity.

NUFI responds: Amoco has no standing to assert The Congo's sovereign immunity. Amoco is a mere stake holder garnishee. It has standing to object to the Order only insofar as the Order would adversely affect Amoco.

Amoco insists that its attack on the Order is based on the court's lack of subject matter jurisdiction and power, matters which may be raised by any party or by the court sua sponte and at any time. We conclude however that the immunity rules in §§ 1609 and 1610 for execution upon foreign state property are not rules of subject matter jurisdiction. Immunity under § 1609 may be waived. It has been waived by The Congo.

First, the statute shows that when Congress meant jurisdiction it said so. Sections 1604 and 1605 provide for immunity from jurisdiction. The word jurisdiction does not appear in § 1609 or § 1610. If Congress viewed the immunity rules for foreign state property as jurisdictional, why didn't it say so?

Without some basis for viewing § 1609 immunity as jurisdictional, it is no answer to simply assert, as Amoco does repeatedly, that a lack of subject matter jurisdiction cannot be waived. On the face of the statute, §§ 1609 and 1610 merely provide rules dealing with the availability of certain remedies in litigation against a foreign state, rules which become applicable once the court has subject matter jurisdiction under § 1330(a).

Second. While as a general matter jurisdiction of a federal court cannot be conferred by agreement or waiver, that is not true of the FSIA. Jurisdiction under § 1330(a) and § 1605(a)(1) is expressly based on a waiver of immunity from jurisdiction by a foreign state. The Congo waived such immunity in the Credit Facility Agreement. By entering into the Settlement Agreement and agreeing to the Order it has also waived its immunity defense from

8

execution under § 1609. Amoco has not suggested any reason why a foreign state can waive immunity from adjudication, i.e., jurisdiction to try a case and enter a judgment against it, but cannot do the same thing when it comes to an agreed court order affecting its property.2/

Third. The cases cited by Amoco provide no support for its subject matter jurisdiction argument. In Liberian Eastern Timber Corp. v. Republic of Liberia, 659 F. Supp. 606, 609-10 (D.D.C. 1987) and Birch Shipping Corp. v. Embassy of the United Republic of Tanzania, 507 F. Supp. 311 (D.D.C. 1980), the foreign states resisted attachment or execution and the courts had to decide whether the requirements of § 1610(a) were met. Neither of those cases suggests that the requirements of § 1610 are jurisdictional. In City of Englewood v. Socialist People's Libyan Arab Jamahiriya, 773 F.2d 31 (3d Cir. 1985), the court found both immunity from adjudication and from execution under the FSIA. The court distinguished the two, specifically referring to § 1604 as a bar to jurisdiction but as to § 1609 merely finding the claimed "commercial activity" exception inapplicable. Id. at 36.

Fourth. In a recent ruling the Second Circuit Court of Appeals squarely held that an immunity claim under § 1609 may be waived. It was waived in that case by failure to timely raise it as required by a local court rule. Caribbean Trading & Fidelity Corp. v. Nigerian National Petroleum Corp., No. 91-7445 (2d Circuit, October 30, 1991). The order there, which required the posting of some $10 million in security, may well have constituted an attachment of non-commercial property of a foreign state. See Judge Mahoney's concurring opinion. But the finding that § 1609 immunity had been waived made it unnecessary to consider the rules in § 1610. The court said, "the applicability and effect of Section 1609 are not matters, like subject-matter jurisdiction, that may be raised at any time by a foreign state." Slip op. at 8420.

_____

2/ Verlinden reserved decision on whether a foreign state could consent to suit under § 1605(a)(1) based on activities wholly unrelated to the United States. 461 U.S. at 490 n. 15. The question has not been raised by NUFI or Amoco. The problem, if there is one, is not presented here since this is a proceeding to enforce a money judgment against The Congo by reaching monies owed to The Congo by U.S. corporations.

9

The statute is clear. The cases support our interpretation. There is no need to analyze the snippets of legislative history cited by Amoco and NUFI. Suffice it to say, we have reviewed them and find them completely consistent with our conclusion.

The FSIA was enacted, among other things, in order to codify a restrictive theory of foreign state sovereign immunity. Verlinden 461 U.S. at 487-88. To the extent that § 1609 provides immunity, it was enacted for the benefit of foreign states. Amoco is not a foreign state. It has no standing to raise an immunity defense under those provisions. See The Republic of the Phillipines v. Marcos, 806 F.2d 344 (2d Cir. 1986).

Amoco argues that Marcos does not apply because it involved commercial property in the United States and did not concern § 1610. Amoco views Marcos as a denial of standing to invoke immunity from suit under § 1604. In fact, Marcos did not discuss any specific provision of the FSIA. The court merely stated its general conclusion that the individual defendants had no standing to assert a foreign immunity claim. Id. at 360. In any case, Amoco's distinction makes no sense. No reason appears why persons who are not foreign states should have standing to urge immunity under § 1609 but not under § 1604.

Since Amoco has no standing to raise an immunity defense under § 1609, it is not necessary to consider whether the mineral royalty payments it owes to the Convention are commercial property under § 1610.

Judicial Power

Apart from questions of subject matter jurisdiction, Amoco insists that no source has been identified for the court's claimed power to enter an order concerning a foreign state's property not used for commercial activity in the United States. But the source of that power is clear. Rule 69(a), Fed. R. Civ. Proc., expressly authorizes enforcement of a judgment for the payment of money by execution in supplementary proceedings conducted in accordance with local state practice and procedure. Enforcement of judgments against foreign state property is

10

limited by the immunity rule of § 1609 subject to the exceptions in § 1610. But The Congo has waived immunity under § 1609. Therefore the court is empowered, with the consent of The Congo, to implement the Settlement Agreement by entering the Order.

The Amended Order

Amoco does have standing to object to the Order insofar as it would prejudice Amoco by adversely modifying its obligations under its agreements with The Congo and the other parties to the Joint Operating Agreement or expose Amoco to some new liability or other risk. On November 22 Amoco filed a further memorandum in support of its motion to vacate and set aside, or to alter and amend, the Turnover Order entered against them, setting forth several requests for modifications in the Order. At the hearing on November 25, 1991 counsel for NUFI and Amoco stated they had agreed on several of the points listed in Amoco's latest brief. On matters remaining in dispute, the court delivered oral rulings and directed both sides to submit an amended turnover order prepared in accordance with those rulings. A copy of that amended order is attached, together with counsel's letter of transmittal dated December 4, 1991.

Conclusion

It is recommended that the Order dated November 1, 1991 be amended and superseded by entry of the amended turnover order attached hereto without any further stay.

Since the central issue we have addressed is one of subject matter jurisdiction, the rulings in this report are dispositive in nature and are therefore submitted in the form of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure.

Under 28 U.S.C. § 636(b)(1) the parties have 10 days from the date of service hereof to file written objections to this Report and Recommendation with Judge Norgle. Failure to file such objections will normally waive the right to appeal the rulings set forth in this Report.

11

Egert v. Connecticut General Life Ins. Co., 900 F.2d 1032, 1039 (7th Cir. 1990).

Respectfully submitted,

Bernard Weisberg

United States Magistrate Judge

Date:  December 5, 1991

cc:     All Attorneys of Record
        (See Attached Service List)

12