UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JENNY RUBIN, et al. ) | |
| ) | Case No.: 1:05-MC-10079 (GAO) |
| Plaintiffs — Judgment Creditors, ) | |
| ) | |
| v. ) | |
| ) | |
| THE ISLAMIC REPUBLIC OF IRAN, ) | |
| et al., ) | |
| ) | |
| Defendants — Judgment Debtors, ) | |
| ) | |
| v. ) | |
| ) | |
| MUSEUM OF FINE ARTS, et al., ) | |
| ) | |
| Trustee Process Defendants. ) | |

**OPPOSITION OF THE MUSEUM OF FINE ARTS TO PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT**

**INTRODUCTION**

On March 28, 2005, Plaintiffs as judgment creditors of the Islamic Republic of Iran (and related judgment debtors) moved pursuant to Rule 69 of the Federal Rules of Civil Procedure to attach any property belonging to Iran in the possession of the Museum of Fine Arts ("MFA"), alleging "on information and belief" that certain antiquities in the MFA's collections "may" be the property of Iran.[1] The Court granted the motion on April 28, and issued a trustee process summons requiring MFA to identify any property belonging to Iran and attaching any such property.[2]

MFA filed a timely Verified Response on June 6 stating that it held no property

---

[1] Memo. in Support of Pls.' Motion for Order of Attachment by Trustee Process at 3.
[2] Summons to Trustee Process Def. the Museum of Fine Arts at 2.

belonging to Iran.[3] Equally to the point, MFA pointed out (*id.* at 3) that the ownership of the antiquities in its collections was ultimately immaterial to this proceeding, since even if Iran were the owner of one or more antiquities, any such property would be immune from attachment under Section 1609 of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1609,[4] since none of the exceptions to immunity listed in Section 1610 of the Act could be applicable because no property in the MFA collections has been "used for a commercial activity" by Iran in the United States.[5]  (Verified Response at 3)

Despite this clear verified statement that MFA held no property belonging to Iran, and that any properties hypothetically owned by Iran would be immune from attachment under sections 1609 and 1610 of the FSIA, Plaintiffs persevered by serving broad document requests on June 27. MFA served a timely response and objections on July 29, which in principal part pointed out that Plaintiffs' burdensome dragnet requests were premature and irrelevant in view of the FSIA's prohibition against attachment of assets belonging (hypothetically, in this case) to a foreign state.

---

[3] Verified Response of MFA to Trustee Process Summons at 2.

[4] 28 U.S.C. § 1609 provides in relevant part ". . . the property in the United States of a foreign state shall be immune from attachment . . . except as provided in sections 1610 and 1611 of this chapter."

[5] 28 U.S.C. § 1610(a) enumerates a number of exceptions to the immunity from attachment set forth in Section 1609, but each is subject to the threshold requirement that the property must have been "used for a commercial activity in the United States." Section 1610(b), which is irrelevant here, provides for similar exceptions allowing the attachment of property of "an agency or instrumentality of a foreign state," but also only if the agency or instrumentality was "engaged in commercial activity in the United States." Section 1610(c) specifies the conditions under which a court may issue an "attachment or execution referred to in subsections (a) and (b)." Section 1611, also mentioned in Section 1609, is irrelevant here, since it merely limits the operation of Section 1610.

On the same day, MFA filed a Motion to Quash the trustee process summons[6] supported by a memorandum explaining the reasons why the plain statutory language of the FSIA, as well as prior court decisions (including a published decision in the Northern District of Illinois ruling against Plaintiffs on the precise issue presented, see *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004)), prohibited attachment of any properties hypothetically owned by Iran since no properties in the MFA collections had been "used for a commercial activity in the United States" by Iran.[7] (MFA Motion to Quash Memo at 5-11)

Anticipating this Motion to Quash, Plaintiffs attempted to preempt the issue by filing the present Motion for Partial Summary Judgment on July 25.[8] Rather than addressing the prohibition against attachment of a foreign state's property set forth in sections 1609 and 1610 of the FSIA, however, Plaintiffs instead asserted that this Court must ignore a controlling federal statute because MFA lacks "standing" to ask the Court to recognize the FSIA's statutory prohibition against attachment. (Pls.' Partial Sum. J. Memo at 5)

There is no issue of "standing." The issue is whether Plaintiffs, who have moved under Rule 69 to attach assets they believe "may" belong to a foreign state, can satisfy the requirements of Rule 69, which explicitly states in any attachment proceeding thereunder "any statute of the United States governs to the extent that it is applicable." The Foreign Sovereign

---

[6] Motion of the Museum of Fine Arts to Quash Trustee Process Summons and Dissolve Attachment.

[7] MFA's Verified Response stated under oath that "[s]ince the time any property believed to have originated in Iran came into the possession of MFA, it has had no communications with the Islamic Republic of Iran or any other Judgment Debtor concerning such property, and specifically MFA has had no such communication relating to the ownership or use of such property," and therefore there was no possible basis for any contention that Iran had used any such property "for a commercial activity." (Verified Response at 2-3)

[8] See Pls.' Motion for Partial Summary Judgment Establishing That No Person Other Than Iran May Assert Iran's Sovereign Immunity Defenses Under §§ 1609 and 1610 of the FSIA.

Immunities Act, 28 U.S.C. §§ 1602-1611, is a federal statute. Sections 1609 and 1610 are, by their plain language, applicable to this proceeding, and prohibit attachment of properties in the MFA's collections even if one or more properties were owned by Iran. The only court confronted with the argument that in a case where the foreign state had not appeared, no other party has "standing" to ask the Court to apply the FSIA has dismissed the argument as "irrelevant" and of "no merit." *Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 233 (5th Cir. 2004), *cert. denied*, 125 S.Ct. 1841 (2005).

Accordingly, for these reasons, which are more fully set forth below, MFA's Motion to Quash the trustee process summons should be granted, and Plaintiffs' Motion for Partial Summary Judgment asking the Court to ignore the Foreign Sovereign Immunities Act should be denied.

## STATEMENT REGARDING DISPUTED FACTS

MFA agrees with Plaintiffs that there are no disputed facts material to MFA's Motion to Quash and Plaintiffs' Motion for Partial Summary Judgment. The Court can and should determine as a matter of law that, on the undisputed facts presented, Sections 1609 and 1610 of the FSIA prohibit the attachment of any assets in MFA's possession hypothetically belonging to Iran.[9]

---

[9] Plaintiffs do not contend that MFA holds any assets belonging to any judgment debtor other than the Islamic Republic of Iran. MFA's Verified Response states under oath that it does not.

## ARGUMENT

1. **PLAINTIFFS' INVENTED "STANDING" ARGUMENT CANNOT EVADE THE REQUIREMENTS OF RULE 69 AND SECTIONS 1609 AND 1610 OF THE FSIA**

   A. **Plaintiffs Cannot Satisfy the Requirements of Rule 69 and the FSIA to Attach Property Hypothetically Belonging to Iran**

   Plaintiffs initiated this proceeding under Rule 69, but now ask the Court to ignore its explicit requirements. Rule 69 provides that proceedings to enforce a judgment for the payment of money shall be in accordance with the practice and procedure of the state in which the court is located, subject to the further limitation that "any statute of the United States governs to the extent that it is applicable." The Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611, is an applicable statute, and by its terms prohibits maintenance of this action under Rule 69. Plaintiffs insist, however, that MFA is not allowed to call the Court's attention to the FSIA, and that the Court must sternly avert its gaze from the controlling provisions of the FSIA.

   This is a strange argument on its face. Its futility is fully confirmed by a brief review of the purposes and provisions of the FSIA, and prior cases decided under it. Congress enacted the FSIA in 1976 precisely in order to provide the federal courts with a comprehensive set of rules to govern suits against foreign states and efforts to attach their property. *See, e.g., Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488 (1983); *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 252 (5th Cir. 2002). Prior to enactment of the FSIA, federal courts almost always deferred to recommendations by the Executive Branch, particularly the State Department, in deciding whether to take jurisdiction over actions involving foreign states. *Verlinden*, 461 U.S. at 486. Until 1952, the State Department ordinarily requested immunity in all cases. *Id.* In that year, recognizing a trend among other nations, the State Department announced that it would henceforth follow a "restrictive" approach toward foreign sovereign immunity, under which a foreign state would enjoy immunity for its governmental acts,

but not for its strictly commercial acts. *Id.* at 487.

This case-by-case approach had its difficulties. For one thing, sometimes a foreign state did not take notice of a case and ask the State Department to request immunity. In such cases, "the responsibility fell to the courts to determine whether sovereign immunity existed, generally by reference to prior State Department decisions." *Id.* Alternatively, foreign nations sometimes applied diplomatic pressure, with the result that "political considerations led to suggestions of immunity" by the State Department in cases that should not have qualified for immunity. *Id.*

In 1976, Congress enacted the FSIA to eliminate such case-by-case, sometimes politically motivated determinations and to "clarify the governing standard" for actions involving foreign states. *Id.* at 488. "The statute must be applied in every action against a foreign sovereign, since subject matter jurisdiction in any such action depends on the existence of one of the specified exceptions to [the default rule of] foreign sovereign immunity," and according the court must apply the Act "even if the foreign state does not enter an appearance to assert an immunity defense." *Id.* at 493 & n.20.[10]

Lawsuits against foreign states are the more common grist of FSIA cases, but because Congress wished to set forth "'comprehensive rules governing sovereign immunity,'" the Act also "specifies the circumstances under which attachment and execution may be obtained

---

[10] As a representative example of Plaintiffs' attempts to sow confusion, their memorandum quotes the Supreme Court's statement in *Verlinden* that "sovereign immunity is an affirmative defense that must be specially pleaded," *id.* at 493 n.20, to argue that "affirmative defenses and personal defenses cannot be raised by third parties" (Pls.' Partial Sum. J. Memo at 8), but omits the Supreme Court's immediately following words that because of the jurisdictional aspect of sovereign immunity, "even if the foreign state does not enter an appearance to assert an immunity defense, a District Court still must determine that immunity is unavailable under the Act." 461 U.S. at 493 n.20.

against the property of foreign states." *Id.* at 495 n.22 (quoting from H.R. Rep. 94-1487, at 12 (1976)). Because "the international community viewed execution against a foreign state's property as a greater affront to its sovereignty than merely permitting jurisdiction over the merits of an action," *Connecticut Bank*, 309 F.3d at 256, limitations upon attaching or executing a judgment upon the property of a foreign sovereign had historically been even stricter than those upon lawsuits against foreign states,[11] and remained so under the FSIA. *See, e.g., id.* at 252; *De Letelier v. Republic of Chile*, 748 F.2d 790, 799 (2d Cir. 1984).

But while there are some difference between the circumstances under which a plaintiff can bring suit against a foreign state and the more limited circumstances under which he or she can attach or execute judgment upon the property of a foreign state, as a matter of first principles the FSIA provides "comprehensive rules" addressing both situations. *Verlinden*, 461 U.S. at 495 n.22. For lawsuits against foreign states, Section 1604 of the FSIA, 28 U.S.C. § 1604, sets forth the general principle of foreign sovereign immunity, and sections 1605 to 1607 enumerate specific exceptions where suit is possible. Correspondingly, Section 1608 sets forth the general principle that the property of a foreign state is immune from attachment, and Section 1610 sets forth the exceptions where attachment is allowed (and Section 1611 limits the operation of those exceptions in certain circumstances).

As Judge Garza of the Fifth Circuit explained in his scholarly analysis of the attachment provisions of the FSIA in *Connecticut Bank*, 309 F.3d at 247, although some state law procedures otherwise applicable under Rule 69 allow judgment creditors to execute against

---

[11] For example, when the State Department adopted a "restrictive" theory of sovereign immunity in 1952 to allow lawsuits against foreign states arising from their commercial activities, it "did nothing to modify the complete immunity enjoyed by foreign sovereigns from execution against their property," so a successful plaintiff "still had to rely on the foreign state to pay the judgment voluntarily." *Connecticut Bank*, 309 F.3d at 252 (citing H.R. Rep. 94-1487, at 8, 27 (1976)).

property simply by applying to the clerk of the court or to a sheriff, because of the sensitive implications of attaching the property of a foreign state, Section 1610(c) of the FSIA "requires a court to enter the writ, so that the court can determine whether the property in question falls within one of the statutory exceptions to foreign sovereign immunity." Next, Section 1610(c) "provides that the court may order the attachment or execution only as 'referred to in subsections (a) and (b).'" *Id.* at 250.

In short, the statutory regime established by Congress in enacting the FSIA bars attachments of the property of foreign states (Section 1609) <u>unless</u> one of the statutory exceptions (Section 1610(a) and (b)) are satisfied, and requires the court to determine in every case whether this requirement is satisfied (Section 1610(c)). In *Connecticut Bank*, the foreign state, the Republic of the Congo, did not appear in the underlying proceeding that resulted in the entry of a default judgment against it, but did appear to challenge the plaintiff's subsequent attempt to obtain a writ of garnishment against payments a third-party owed to the foreign state, as did the third-party garnishee. 309 F.3d at 247, 251.[12]

Two years later, however, Judge Garza confronted a case where the third-party garnishee rather than the foreign state asserted that the requirements of the FSIA were not satisfied. *Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229 (5th Cir. 2004), *cert. denied*, 125 S.Ct. 1841 (2005). The plaintiff in *Walker* raised what it called a "standing" argument, asserting that only the foreign state could raise the FSIA issues, as do the plaintiffs here. Judge Garza accurately concluded that this argument was "irrelevant" and of "no merit"

---

[12] The court ultimately held in *Connecticut Bank* that although the foreign state had waived any right to claim sovereign immunity from suit or an attachment of its property, *id.* at 247, Section 1610 allowed it to contest whether the property in question had been "used for a commercial activity" by the foreign state "in the United States," *id.* at 256 & n.5, and remanded the case to the District Court for a resolution of that factual issue, *id.* at 260-61.

under the statutory regime created by the FSIA. *Id.* at 233. First of all, the statute "makes clear that the [foreign state's] presence is irrelevant," since the statute contemplates that the foreign state may have "'waived its immunity ... either explicitly or by implication [i.e., by conduct outside the court proceeding],'" and even if a waiver has occurred, Section 1610(c) allows the court to "'order the attachment or execution *only* as "referred to in subsections (a) and (b),"' *Conn. Bank of Commerce v. Republic of Congo,* 309 F.3d 240, 250 (5th Cir. 2002) (emphasis added)." 395 F.3d at 233.

In short, the FSIA requires a court to determine in every case whether the requirements for an exception set forth in Section 1610(a) and (b) have been satisfied, and neither provision "requires the presence of the foreign sovereign or gives the sovereign exclusive standing." *Id.* In applying these principles in *Walker*, the court held in favor of the third-party garnishee that the plaintiff had not satisfied the threshold requirement of Section 1610(a) that the property must have been "used for a commercial activity in the United States" by the foreign state, which prevented the plaintiff from maintaining the action under Rule 69, even though the foreign state had waived its immunity within the meaning of subsection (1) of Section 1610(a). *Id.* at 235-38.

Other courts have also addressed the immunity of a foreign state's property from attachment even though that immunity was raised by a third party. In *Rubin v. Islamic Republic of Iran,* 349 F. Supp. 2d 1108 (N.D. Ill. 2004), these same Plaintiffs attempted to attach property assertedly belonging to Iran in the possession of the Oriental Institute of the University of Chicago. The Oriental Institute challenged the attachment, arguing that the property had not been "used for a commercial activity" by Iran within the meaning of Section 1610(a) of the FSIA, and therefore attachment was barred by the Section 1609 prohibition against attachment of

property belonging to a foreign state. The Plaintiffs did <u>not</u> challenge the "standing" of the University of Chicago to raise this issue, but instead argued that "commercial activity" by the University should be sufficient, and that "commercial activity" by Iran was not required.

The magistrate judge in the Plaintiffs' *Rubin* case rejected this argument, and held that "the proper focus of the commercial activities inquiry" was not the Oriental Institute, "but Defendant Iran." *Id.* at 1112. As a result, he granted the Oriental Institute's motion for a protective order, barring discovery into the actions of the Oriental Institute. *Id.* at 1113.

Nor did the Plaintiffs raise a "standing" argument when they asked the court (unsuccessfully) to vacate the ruling of the magistrate judge.[13] The district court judge affirmed the decision, also without suggesting there was any issue as to the ability of the third-party University of Chicago to request the court to apply the requirements of the FSIA.[14]

The United States has also proceeded under the manifestly correct view that Rule 69 requires a District Court to give effect to applicable federal statutes, and that the FSIA requires a court to determine whether one of the exceptions referred to in Section 1610(a) and (b) is satisfied whenever a plaintiff seeks to attach property assertedly belonging to a foreign state. In the *Rubin* case brought by these Plaintiffs in the Northern District of Illinois, the United States submitted a brief emphatically rejecting their view that Section 1610(a) is satisfied whenever a third-party has used the property in question for commercial activity, and directing the court's attention to the abundant authorities showing that the property must be used for a commercial

---

[13] *See* Pls.' Objections to Magistrate Judge's Memorandum Opinion and Order, *Rubin*, 03-C-9370 (N.D. Ill.) (filed Dec. 17, 2004) (Exhibit B to MFA Motion to Quash Memo).

[14] *Rubin v. Islamic Republic of Iran*, 03-C-9370 (N.D. Ill. Mar. 18, 2005) (order overruling objections) (Exhibit A to MFA Motion to Quash Memo).

activity by the foreign state.[15] It plainly never crossed the Government's mind that the FSIA was a forbidden subject that the court was obligated to ignore unless Iran appeared to present the argument, just as it never occurred to the Plaintiffs or the court.

Similarly, in *Flatow v. Islamic Republic of Iran*, 76 F. Supp. 2d 16 (D.D.C. 1999), the court found that Iranian assets that were not used for commercial activity were protected from attachment under the FSIA. *Id.* at 25. Iran did not appear in *Flatow*, and the United States intervened to argue that the FSIA prohibited attachment of the Iranian property. *Id.* at 18. The plaintiff in *Flatow* did not argue that only Iran could present the FSIA issue, nor did the court perceive any such problem. Rather, it found that the real properties at issue did not fall within the definition of commercial activity, and were therefore protected from attachment. *Id.* at 23.

B.  **Plaintiffs Have Presented No Authority To Support The Newfound "Standing" Argument They Have Conjured**

Plaintiffs do not address the reasoning of the decisions in *Connecticut Bank* or *Walker*, but merely dismiss *Walker* in a footnote as wrongly decided. (Pls.' Partial Sum. J. Memo at 10 n.9) Plaintiffs instead rely upon a motley array of off-point "authority" in support of their new argument (most of which previously appeared in the unsuccessful petition for certiorari in *Walker*) while not explaining how they themselves missed for over a year what they now describe as a "wall-to-wall" authority (*id.*) supporting their new theory while they were litigating the FSIA issues in the Northern District of Illinois.

In *Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir. 1986), the plaintiff was a foreign state seeking to enjoin the dissipation of assets alleged to be beneficially owned by a corrupt former president and his wife. The titleholders tried to argue that the former president

---

[15] Statement of Interest of the United States, *Rubin v. Islamic Republic of Iran*, 03-C-9370 (N.D. Ill.) (filed July 28, 2004) (Exhibit C to MFA Motion to Quash Memo).

was entitled to sovereign immunity. The court, unsurprisingly, expressed profound skepticism of the merits of this claim, and also observed without explanation that the titleholders had no standing to raise this claim. The only support offered for this statement was a citation to the pre-FSIA Restatement (Second) of Foreign Relations Law § 71 (1965), which described the general practice before enactment of the FSIA that foreign states would normally ask the State Department to recommend that the court apply the doctrine of sovereign immunity to a claim.

But in fact, as the Supreme Court pointed out in *Verlinden*, the pre-FSIA practice was also that when a foreign state did not ask the State Department to recommend recognition of its sovereign immunity, "the responsibility fell to the courts to determine whether sovereign immunity existed, generally by reference to prior State Department decisions." 461 U.S. at 487. The same responsibility for courts to address issues of sovereign immunity even when not asserted by a foreign state remains under the FSIA. *Id.* at 494 n.20. So it clearly was not the practice before the FSIA that sovereign immunity claims could only be raised by the foreign state, and the generalized description of the former practice in the old Restatement suggested no such thing (no comparable provision appears in the present Restatement).[16]

*Wilmington Trust v. United States District Court*, 934 F.2d 1026 (9th Cir. 1991) is even further afield. The case involved neither an attempted attachment of foreign state property nor a suit against a foreign state. The case instead involved conflicting efforts to foreclose first and second mortgages on a ship, and the issue on appeal was whether a labor union holding a second mortgage was entitled to a jury trial on its claims against the trustee of the first mortgage.

---

[16] The court's only mention of the FSIA in the *Marcos* case was to suggest, without any citation to a specific section of the statute, that the "commercial activity" exception would also very likely vitiate any claim of sovereign immunity.

In an effort to avoid a jury trial, the trustee made "undocumented assertions," *id.* at 1028, that an agency of a foreign government had extended a letter of credit to finance part of the acquisition cost of the ship at a foreclosure sale. Ergo, argued the trustee, the labor union was really making a claim ultimately against the agency of the foreign government, and therefore was not entitled to a jury trial. The court, understandably unimpressed, suggested that if the foreign state really felt its interests were at stake in this procedural quagmire, it should speak for itself. *Id.* at 1032-33.

The final appellate decision Plaintiffs rely upon, *Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279 (11th Cir. 1999), also did not involve an attachment of property belonging to a foreign state. The case instead involved a suit against an agency of a foreign state, and the court correctly held that since the trial court's jurisdiction depended on the presence of the foreign state, the trial court acted properly in allowing a party other than the foreign state to raise the issue of sovereign immunity, *id.* at 1290 – an outcome that places Plaintiffs, having relied upon *Aquamar*, in the unhappy position of arguing two pages later that it is really irrelevant to this case. (*Compare* Pls.' Partial Sum. J. Memo at 7 *with id.* at 9)

None of the district court cases Plaintiffs attempt to rely upon involved the attachment of a property belonging to a foreign state, and those cases are similarly irrelevant here.[17] The single exception is an unpublished magistrate's recommendation in *Nat'l Union Fire*

---

[17] In *Didi v. Destra Shipping Co., Ltd.*, Civ. A. No. 93-1851, 1993 WL 232075 (E.D. La. Jun. 17, 1993), the Maldives had not "affirmatively assert[ed] a defense of sovereign immunity," *id.* at *2, but the court still addressed the sovereign immunity issue and found that further proceedings were necessary, *id.* at *4. In *Acree v. Republic of Iraq*, 276 F. Supp. 2d 95, 102 (D.D.C. 2003), *rev'd on other grounds*, 370 F.3d 41 (D.C. Cir. 2004), the court merely rejected the United States' motion to intervene in the case after judgment was entered to belatedly assert Iraq's sovereign immunity. *See* 276 F. Supp. 2d at 100-01. *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289 (S.D.N.Y. 2003), did not even address any issue of sovereign immunity, but instead rejected arguments by a third party that issues of international comity barred claims against it. *See id.* at 342 n.42.

*Ins. Co. v. People's Republic of the Congo*, No. 91-C-3172, *slip op.* at *9 (Dec. 6, 1991) (report and recommendation by magistrate judge). In that case, the foreign state was present and had settled with the plaintiff. The third-party garnishee attempted to challenge the garnishment under the FSIA. The magistrate concluded that the foreign state had waived immunity and that was an end of the matter. *Slip op.* at *8. In that the magistrate was flat wrong, as shown by the text of the statute (Section 1610(a) requires a threshold determination that property is "in the United States" and has been "used for a commercial activity in the United States," even if there has been a waiver of immunity by the foreign state under subsection (1)); *see also Walker*, *supra*, 395 F.3d at 235-238. The magistrate also relied upon *Marcos* for the "general conclusion that the individual defendants had no standing to assert a foreign immunity claim," acknowledging that "*Marcos* did not discuss any specific provision of the FSIA." *Slip op.* at 10. The magistrate's report does nothing to remedy Plaintiff's inability to muster support for their theory – the fact that they are forced to rely on such threadbare authority merely underscores the emptiness of their argument.

    **C.**    **Plaintiffs' Argument Would Stand the Foreign Sovereign Immunity Act Upon Its Head By Making It Easier To Attach The Property Of A Foreign State Than To Bring Suit Against A Foreign State**

Plaintiffs are ultimately driven to a confused admission that their "standing" argument has no applicability when a plaintiff brings a lawsuit against a foreign government, since in such cases a federal court has subject matter jurisdiction only under 28 U.S.C. § 1330, which in turn depends upon the presence of an exception to the foreign sovereign immunity. Since it is elemental that any party may raise a challenge to subject matter jurisdiction at any time, and that the court may do so sua sponte, Plaintiffs must and do concede that in a suit against a foreign state, "sovereign immunity can be raised by someone other than the foreign state (i.e. by the court or another party)." (Pls.' Partial Sum. J. Memo at 9).

This concession leaves Plaintiffs in the position of arguing that it is easier to attach the property of a foreign state than to bring suit against the foreign state, since in an attachment suit the FSIA can be applied only if the foreign state appears to challenge the attachment (according to the Plaintiffs), while in the case of a lawsuit against a foreign state, any party and the court as well can raise the FSIA issue.

Every authority reviewed in this memorandum, however, and every authority the Court will find elsewhere addressing this issue, emphasizes that historically and under the FSIA today, the limitations upon attaching the property of a foreign state are *more* restrictive than those upon bringing suit against a foreign state. *See Connecticut Bank*, 309 F.3d at 252, 256; *De Letelier*, 748 F.2d at 799; *see also, e.g., Ministry of Def. and Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 385 F.3d 1206, 1219 (9th Cir. 2004); *City of Englewood v. Socialist People's Libyan Arab Jamahiriya*, 773 F.2d 31, 36 (3d Cir. 1985).

Plaintiffs should be required to provide strong reasoning and supporting authority to justify the anomalous result they seek. In fact, they have provided no reasoning to suggest why Congress in enacting the FSIA would have intended to reverse historical practice by making it easier to attach a foreign state's property than to sue the foreign state in the manner Plaintiffs' assert. And as discussed previously, Plaintiffs have provided no authority supporting their novel and anomalous position.

2. **APPLICABLE STATE LAW ALSO ALLOWS MFA TO CHALLENGE PLAINTIFFS' ATTEMPT TO ATTACH PROPERTY THEY BELIEVE "MAY" BELONG TO IRAN**

Under Rule 69, the attachment procedure in this action "must be in accordance with the practice and procedure" of the state of Massachusetts except as that practice may governed by a federal statute. Rule 69 thus allows the exercise of jurisdiction over property in the possession of MFA only through the use of state law processes. *U.S.I. Properties Corp. v.*

*M.D. Const. Co.*, 230 F.3d 489, 496 (1st Cir. 2000) (federal jurisdiction over execution proceedings is present "where the state procedural enforcement mechanisms incorporated by Rule 69(a) allow the court to reach assets of the judgment debtor"). Trustee process in Massachusetts is "in the nature of a proceeding in rem." *American Bank v. Rollins*, 99 Mass. 313, 314 (1868). MFA holds property Plaintiffs believe may belong to Iran. If any such property is immune from attachment because the FSIA prohibits attachment (as it does), Plaintiffs may not obtain it through trustee process under Massachusetts law, and Plaintiffs cannot assert *in rem* jurisdiction over such property. *See Auer v. Costa*, 23 F. Supp. 22 (D. Mass. 1938) (dismissing trustee process action because attached funds belonging to Portugal were "exempt from seizure or attachment in domestic courts"); J. M. Connors *et al.*, 48 Massachusetts Collection Law § 5:82 (3d ed. 2004) ("A party may move for dissolution of an attachment by trustee process on the ground that the property attached was exempt from attachment").

Whether Iran has used property held by MFA for a commercial activity in the United States is therefore also decisive under Massachusetts law in determining whether any property held by MFA hypothetically owned by Iran is subject to attachment. On this decisive issue Plaintiffs' own theory of their case demonstrate that they cannot contend that any such use by Iran for a commercial activity has occurred. Plaintiffs claim that "these antiquities and artifacts were removed from Iran without Iran's permission or knowledge." (Pls.' Partial Sum. J. Memo at 2 n.2) Needless to say, MFA strongly disagrees with Plaintiffs' vision of history.[18] But even if Plaintiffs were right, their own contentions show that Iran – in their view the victim of

---

[18] If it were necessary to address Plaintiffs' theory that antiquities were stolen from Iran, the law is also clear that Plaintiffs could not, as creditors, assert Iran's claim to recover the property. *See, e.g., Leveraged Leasing Admin. Corp. v. Pacificorp Capital, Inc.*, 87 F.3d 44, 50 (2d Cir. 1996) ("An action for conversion can be maintained only by the true owner of the property"). Plaintiffs' theories also suffer from manifold other jurisdictional and other defects.

the theft of antiquities – has not used any such properties for a commercial use in the United States.  Massachusetts law requires a resolution of the immunity issue, and because any relevant property cannot be attached, Plaintiffs cannot maintain this action under Massachusetts law.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Partial Summary Judgment and grant MFA's Motion to Quash the Trustee Process Summons.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), the Museum of Fine Arts requests oral argument on Plaintiffs' Motion for Partial Summary Judgment.

Dated:  August 29, 2005

Respectfully submitted,

/s/ Courtney A. Clark
Robert J. Muldoon, Jr. BBO#: 359480
Courtney A. Clark BBO#: 651381
SHERIN & LODGEN LLP
101 Federal Street
Boston, MA  02110
Tel: (617) 646-2000
Fax: (617) 646-2222

William D. Iverson
Jason M. Knott
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel: (202) 662-6000
Fax: (202) 778-5549

*Attorneys for Museum of Fine Arts*