# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————————

|   |   |
|---|---|
| JENNY RUBIN, | ) |
| DEBORAH RUBIN, | ) |
| DANIEL MILLER, | ) |
| ABRAHAM MENDELSON, | ) |
| STUART E. HERSCH, | ) Case No.: 1:05-MC-10079 |
| RENAY FRYM, | ) |
| NOAM ROZENMAN, | ) |
| ELENA ROZENMAN and | ) |
| TZVI ROZENMAN | ) |
|   | ) |
| Plaintiffs — Judgment Creditors, | ) |
| v. | ) |
|   | ) |
| THE ISLAMIC REPUBLIC OF IRAN, | ) |
| THE IRANIAN MINISTRY OF INFORMATION | ) |
| AND SECURITY, | ) |
| AYATOLLAH ALI HOSEINI KHAMENEI, | ) |
| ALI AKBAR HASHEMI-RAFSANJANI and | ) |
| ALI FALLAHIAN-KHUZESTANI | ) |
|   | ) |
| Defendants – Judgment Debtors, | ) |
| v. | ) |
|   | ) |
| MUSEUM OF FINE ARTS, a not-for-profit corporation | ) |
| (a/k/a Boston MFA), HARVARD UNIVERSITY, et al. | ) |
|   | ) |
| Trustee Process Defendants. | ) |

———————————————————————————)

## NOTICE OF DECISION *GRANTING* PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT IN RELATED FEDERAL PROCEEDING

Currently before the Court is Plaintiffs' motion for partial summary judgment establishing that the Trustee Process Defendants' have no standing to raise Iran's sovereign immunity defense.

Plaintiffs are currently conducting parallel proceedings in the United States District Court for the Northern District of Illinois seeking to enforce their judgment against Iranian-owned

antiquities held by the University of Chicago and the Field Museum.  <u>Rubin et al. v. Islamic Republic of Iran et al.</u>, (No. 03-C-9370 N.D. Illinois) (the "Chicago Case").  Both Plaintiffs and Trustee Process Defendants in the case before this Court have cited the Chicago Case as relevant authority in their respective pleadings.

Exactly as they have done in the instant case, Plaintiffs filed a motion in the Chicago Case for partial summary judgment establishing that parties other than a foreign state (in this case Iran) lack standing to raise the foreign state's claims to immunity from execution under §§1609-1610 of the Foreign Sovereign Immunities Act, 28 U.S.C. §1602 et seq. ("FSIA") (Docket Nos. 95-96 in the Chicago Case).

On December 15, 2005, the District Court for the Northern District of Illinois granted Plaintiffs' motion for partial summary judgment in the Chicago Case, and held that immunity from attachment under §1609 and §1610 of the FSIA is an affirmative defense which must be specially pleaded and that no party other than Iran may assert Iran's foreign sovereign immunity defenses under §1609 and §1610 of the FSIA.  <u>See</u> <u>Exhibit A</u>.

Plaintiffs respectfully wish to bring this decision to the Court's attention in connection with its consideration of the pending motion here.

> JENNY RUBIN, et al
>
> By their attorneys,
>
>
> /s/ Georgia J. Asimakopoulos
> Richard J. Grahn (BBO# 206620)
> Georgia J. Asimakopoulos (BBO# 658232)
> Looney & Grossman LLP
> 101 Arch Street, 9th Floor
> Boston, MA 02110
> (617) 951-2800
>
> /s/ David Strachman, Esq. (GJA)
> David Strachman, Esq., (BBO# 660136)
> McIntyre, Tate, Lynch & Holt

321 South Main Street, Ste. 400
Providence, RI 02903
Dated:  December 20, 2005                    (401) 351-7700


## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2005 I served a copy of the within pleading upon Trustee Process Defendants by electronic notice and/or mailing copies thereof via first class mail, postage prepaid, properly addressed to the following:

Paul R.Q. Wolfson
(Counsel for Trustee Process Defendant, Harvard)
WILMER CUTLER PICKERING
HALE & DORR LLP
2445 M Street NW
Washington, DC  20037


Mark C. Fleming
(Counsel for Trustee Process Defendant, Harvard)
WILMER CUTLER PICKERING
HALE & DORR LLP
60 State Street
Boston, MA  02109


Timothy R. Shannon
(Counsel for Trustee Process Defendant, Harvard)
WILMER CUTLER PICKERING
HALE & DORR LLP
60 State Street
Boston, MA  02109


Robert J. Muldoon, Jr.
(Counsel for Trustee Process Defendant, MFA)
Sherin & Lodgen LLP
101 Federal Street
Boston, Massachusetts  02110
(617) 646-2000


William D. Iverson
Jason M. Knott
(Counsel for Trustee Process Defendant, MFA)
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 662-6000

Courtney Amber Clarke, Esq.
(Counsel for Trustee Process Defendant, MFA)
Sherin & Lodgen LLP
101 Federal Street
Boston, Massachusetts  02110
(617) 646-2000


Jason M. Knott, Esq.
(Counsel for Trustee Process Defendant, MFA)
Covington & Burling
1201 Pennsylvania Avenue N.W.
Washington D.C. 20004-2401


/s/ Georgia J. Asimakopoulos
Georgia J. Asimakopoulos

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9370 | **DATE** | 12/15/2005 |
| **CASE TITLE** | Jenny Rubin, et al. vs. The Islamic Republic of Iran, et al. | | |

**DOCKET ENTRY TEXT**

Enter memorandum opinion and order. Plaintiffs' motion for partial summary judgment is granted. The parties shall appear before this Court for a status hearing regarding their remaining outstanding discovery motions at 10:00 a.m. on January 19, 2006.

Notices mailed by Judicial staff.
*Copy to judge/magistrate judge.

| | Courtroom Deputy Initials: | IS |
|---|---|---|

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **JENNY RUBIN**, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 03 C 9370 |
| | ) | |
| v. | ) | Judge Blanche M. Manning |
| | ) | |
| **THE ISLAMIC REPUBLIC** | ) | Magistrate Judge |
| **OF IRAN**, et al., | ) | Martin C. Ashman |
| | ) | |
| Defendants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **THE UNIVERSITY OF CHICAGO**, et al., | ) | |
| | ) | |
| | ) | |
| Citation Third Party | ) | |
| Respondents. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, Plaintiffs, Jenny Rubin, Deborah Rubin, Daniel Miller, Abraham Mendelson, Stuart E. Hersch, Renay Frym, Noam Rozenman, Elena Rozenman, and Tvi Rozenman, move this Court for partial summary judgment establishing as a matter of law that no party other than The Islamic Republic of Iran (a/k/a Iran, The Republic of Iran, Republic of Iran, The Government of Iran, Iranian Government, and Imperial Government of Iran), may assert Iran's foreign sovereign immunity defenses under Sections 1609 and 1610 of the Foreign Sovereign Immunity Act, 28 U.S.C. § 1602 et seq. ("FSIA").  Citation respondents, The University of Chicago, Gil Stein, and the Field Museum of Natural History, oppose Plaintiffs' motion.  This ruling is needed now so as to define the limits of

discovery in this citation proceeding. This matter comes before this Court pursuant to 28 U.S.C.
§ 636(b)(1)(A) and Local Rule 72.1.


## I.  Background

On July 31, 2001, Plaintiffs brought a personal injury suit against Iran, The Iranian

Ministry of Information and Security, Ayatolla Ali Hoseini Khamenei, Ali Akbar

Hashemi-Rafsanjani, and Ali Fallahian-Khuzestani (collectively "Defendants") in the courts of

the United States. *Campuzano, et al. v. Islamic Republic of Iran, et al.*, 281 F. Supp. 2d 258,

260-61 (D.D.C. 2003). Jurisdiction over these claims was based on the FSIA. *Id.* at 260,

270-71. On September 10, 2003, the United States District Court for the District of Columbia

entered judgments on behalf of Plaintiffs against Defendants. *Id.* at 279.

Attempting to enforce their judgment against Defendant Iran, Plaintiffs seek execution or

attachment of various collections of Persian artifacts currently in the possession of Citation

Respondents.[1] Persian artifacts in Citation Respondents' possession include, but are not limited

to, collections of ancient Persian seal impressions and cuneiform writings found on clay tablets

and tablet fragments known as the Persepolis Fortification Texts and the Chogha Mish collection.

The Persepolis Fortification Texts and the Chogha Mish collection were loaned to Citation

Respondents, in the 1930s and 1960s respectively, to study for philological and archeological

purposes with the understanding that the collections would be returned to Iran when Citation

Respondents' studies were complete.

---

[1] Further background is set forth in this Court's previous opinion, *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108 (N.D. Ill. 2004), and familiarity with that opinion is presumed.

Citation Respondents have argued all along that Plaintiffs cannot attach the Persian collections, nor demand discovery based on the collections, until they demonstrate that a commercial activity exception to Section 1609 of the FSIA applies. Initially, Plaintiffs appeared to agree with Citation Respondents and demanded in-depth discovery from Citation Respondents in an effort to determine whether the collections in Citation Respondents' possession were being used for commercial activities. Citation Respondents resisted and, on November 30, 2004, this Court rejected Plaintiffs' discovery demands. In short, this Court held that, under Section 1610(a) of the FSIA, Plaintiffs were not entitled to additional discovery from Citation Respondent University of Chicago because the existence of a commercial activity exception to Section 1609 depends upon the actions of the foreign state, Iran, and not the actions of Citation Respondents. *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111-13 (N.D. Ill. 2004). Significantly, Iran has not been shown to have engaged in commercial activity as to the items in question. On March 18, 2005, Judge Manning overruled Plaintiffs' objections to this Court's ruling. Refusing to be deterred, on August 19, 2005, Plaintiffs shifted their focus from Section 1610(a)'s commercial activity exception to Section 1609's immunity from attachment provision and moved this Court to find that Citation Respondents lack standing to raise Iran's Section 1609 immunity arguments. (Pls.' Mot. Part. Summ. J. at 4.) Iran has been given notice of these proceedings but has not appeared.

## II.    Discussion

**A.    Plaintiffs' Motion For Partial Summary Judgment is Appropriate and Not Time Barred.**

Plaintiffs move for partial summary judgment establishing that as a matter of law no party other than Iran may raise Iran's Section 1609 immunity defenses.  Citation Respondents argue that Plaintiffs' motion for partial summary judgment is procedurally improper and that Plaintiffs waited too long to raise the issue of standing.  Specifically, Citation Respondents argue that (1) the courts of the Northern District of Illinois do not issue partial summary judgments, especially where no claims have been filed against the nonmovant, and (2) Plaintiffs waived their standing arguments by not raising them sooner.  (Field Br. at 14; Univ. Chicago Br. at 12-13.)

Partial summary judgment, per Rule 56(d), provides for the situation when judgment is not rendered upon the entire case, but only a potion thereof.  Fed. R. Civ. P. 56(d).  A motion for partial summary judgment that partitions a single claim for relief into constituent parts and then seeks partial summary judgment on some but not all of the constituent parts is not permitted. *Capitol Records, Inc. v. Progress Record Distr., Inc.*, 106 F.R.D. 25, 28 (N.D. Ill. 1985).  Where a party seeks judgment on a complete affirmative defense, however, courts in the Northern District of Illinois routinely entertain motions for partial summary judgment. *Wildey v. Springs*, No. 92 C 8146, 1993 WL 350195, at *1 (N.D. Ill. Sept. 7, 1993). *See also Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, No. 00 C 5658, 2002 WL 1466806, at *12 (N.D. Ill. July 8, 2002); *LCI Intern. Telecom Corp., Inc. v. Am. Teletronics Long Distance, Inc.*, 978 F. Supp. 799, 802 (N.D. Ill. 1997).  Courts in this district have explained Rule 56(d) as follows:

> Although . . . commonly referred to as a "partial summary judgment," it is really no more than a pretrial adjudication, interlocutory in character, specifying certain issues to be "deemed established" for trial. 6 J. Moore & J. Wicker, *Moore's Federal Practice* ¶ 56.20 (2ed. 1948). Its purpose is to "salvage some results from the judicial effort involved in the denial of a motion for summary judgment," and to "frame and narrow the triable issues if the court finds that such an order would be helpful to the progress of the litigation."

*Wildey*, 1993 WL 350195 at *1 (quoting *Lovejoy Elecs., Inc. v. O'Berto*, 616 F. Supp. 1464, 1473 (N.D. Ill. 1985)).  Because Plaintiffs' motion addresses a complete affirmative defense raised by Citation Respondents as a matter of law and does not attempt to partition a single claim for relief into constituent parts, and because resolution of Plaintiffs' motion promotes judicial economy, the Court will rule on the merits of the motion.

Plaintiffs did not waive their right to challenge Citation Respondents' standing to raise Section 1609 and 1610 immunity arguments.  As an initial matter, standing is jurisdictional and not subject to waiver. *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996); *Perry v. Sheahan*, 222 F.3d 309, 313 (7th Cir. 2000).  Next, Plaintiffs did not wait too long to raise their standing challenge, as the parties are still in the early stages of litigation. *Compare Robinson v. Gov't of Malaysia*, 269 F.3d 133, 146 (2d Cir. 2001) (refusing to entertain arguments raised for first time on appeal).  To date, the parties have litigated a few discovery matters and this Court issued a ruling interpreting Section 1610(a) as it appeared to relate to the scope of discovery in this case, but that is all.  Furthermore, when Judge Manning overruled Plaintiffs' objections to this Court's ruling interpreting Section 1610(a), she explicitly stated that this Court's decision on a discovery issue would not necessarily be the law of this case when it came time to rule on a merits argument. *Rubin v. Islamic Republic of Iran*, No. 03 C 9370, 2005 WL 783057, at *1 (N.D. Ill. Mar. 18,

2005). Plaintiffs' motion for partial summary judgment now before the Court is just such a

merits argument. Finally, Plaintiffs' motion is certainly not estopped as it pertains to Citation

Respondent Field Museum, as the Field Museum received their notice of citation to discover

assets in March 2005 and have only recently appeared in this case. In short, due to both

jurisdictional concerns and the manner in which litigation in this case has proceeded, addressing

the standing issue now before the Court is required under the Constitution and is not unduly

prejudicial or unfair. Accordingly, Plaintiffs are not barred from filing the motion now before

the Court.


**B.      Sections 1609 and 1610 of the FSIA**

Attempting to enforce their judgment against Iran, Plaintiffs seek to attach property of

Iran currently in Citation Respondents' possession. Under Rule 69 of the Federal Rules of Civil

Procedure, proceedings on and in aid of execution shall be in accordance with the practice and

procedure of the state in which the district court is held, except that any statute of the United

States governs to the extent that it is applicable. Fed. R. Civ. P. 69(a). The FSIA is an applicable

statute of the United States and is the jurisdictional basis for Plaintiffs' original action.

*Campuzano*, 281 F. Supp. 2d at 270-72. Sections 1609 through 1611 of the FSIA deal explicitly

with attachment of property in the United States of a foreign state. Sections 1609 and 1610(a)(1)

read:

> Section 1609. Immunity from attachment and execution of property of a foreign
> state
>
> Subject to existing international agreements to which the United States is a party
> at the time of enactment of this Act the property in the United States of a foreign

state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.

Section 1610.  Exceptions to the immunity from attachment or execution

(a)  The property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if–

> (1) the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver . . . .

28 U.S.C. §§ 1609-10.  The parties disagree on how to interpret and apply these sections of the FSIA.  Plaintiffs claim that only Iran has standing to raise Section 1609 immunity defenses to protect its property because Section 1609 is an affirmative defense personal to Iran.  Citation Respondents argue that foreign sovereign immunity in the attachment context is not an affirmative defense and that the Court's subject matter jurisdiction over the property in issue requires the Court to apply Section 1609 regardless of who raises the issue of foreign sovereign immunity.  No court in this circuit has addressed the issue of standing under Section 1609 of the FSIA.

### 1.    Summary Judgment Standard

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship*, 209 F.3d 678, 683 (7th Cir. 2000).  On summary judgment, the

- 7 -

Court must view the evidence, and draw all reasonable inferences therefrom, in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992). If taking the record in its entirety cannot lead a rational trier of fact to find for the nonmoving party, then there is no genuine issue for trial and summary judgment must be granted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### 2.    Immunity from attachment is an affirmative defense.

Plaintiffs properly characterize Section 1609's immunity from attachment as an affirmative defense. Rule 8(c) of the Federal Rules of Civil Procedure addresses affirmative defenses. Fed. R. Civ. P. 8(c). While immunity is not explicitly listed in Rule 8(c), that list is not intended to be exhaustive. *See* 5 C. Wright & A. Miller, *Federal Practice & Procedure*, §1271 (Supp. 2005). Various forms of immunity have been held by federal courts to be affirmative defenses under Rule 8(c). *See Gomez v. Toledo*, 446 US. 635, 640-41 (1980); *Tritsis v. Backer*, 501 F.2d 1021, 1022-23 (7th Cir. 1974). *See also Ironside v. Simi Valley Hosp.*, 103 F.3d 482, 484 (6th Cir. 1996) ("Immunity is an affirmative defense that pursuant to Rule 8(c) must be pleaded."); *Bentley v. Cleveland County Bd. of County Comm'rs*, 41 F.3d 600, 604 (10th Cir. 1994); 5 C. Wright & A. Miller, *Federal Practice & Procedure*, §1271. Foreign sovereign immunity, while perhaps more politically sensitive than other forms of immunity, was enacted by Congress to be "an affirmative defense which must be specially pleaded." H.R. Rep. No. 94-1487, 9th Cong. 2nd Sess., at 17 (1976). Affirmative defenses may be invoked to avoid liability in a plenary case as well as in a citation hearing. *See F.T.C. v. Nat'l Bus. Consultants*,

*Inc.*, 376 F.3d 317, 322 (5th Cir. 2004); *Liberty Leasing Co. v. Crown Ice Mach. Leasing Co.*, 311 N.E.2d 250, 251-52 (Ill. App. Ct. 1974); *Gregory v. Highway Ins. Co.*, 164 N.E.2d 297, 303-04 (Ill. App. Ct. 1960).

Citation Respondents argue that the plain text of the FSIA makes clear that the immunity from attachment enjoyed by a foreign state is not an affirmative defense. According to Citation Respondents, the attachment provisions of the FSIA focus on the property itself and indicate that such property "shall" be immune unless one of the exceptions enumerated in the statute applies. (Field Br. at 5-6; Univ. Chicago Br. at 3.) In other words, no immunity defenses need to be raised because the property in issue is either exempt or nonexempt. (Field Br. at 3.) Citation Respondents conclude that, before Plaintiffs may attach Iranian property in the United States, Plaintiffs must carry the burden of showing that all the elements of nonexempt property are present, i.e., that the property is not immune from attachment.

Citation Respondents' arguments are flawed. First, Citation Respondents read too much into the words "shall be immune." Congress' use of peremptory language in a given provision is no indication that Congress did not intend that provision to provide an affirmative defense. As Plaintiffs highlight in their brief, peremptory language is often used in conjunction with affirmative defenses. (Pls.' Reply Br. at 3.) For example, various statutes of limitations provisions, including the statute of limitations set out in Section 1605(f) of the FSIA, read, "[n]o action shall be maintained . . . unless . . . ." 28 U.S.C. § 1605(f). *See also* 15 U.S.C. § 1711(a); 18 U.S.C. § 2335(a); 28 U.S.C. § 1350(2)(c); 45 U.S.C. § 56. There is no dispute that statutes of limitations are affirmative defenses that are waived if not timely asserted and can only be asserted by the party affected. Fed. R. Civ. P. 8(c). It follows that peremptory language in

-9-

Section 1609 of the FSIA may serve the same purpose of setting out an affirmative defense that will be waived if not timely asserted by an appropriate party.

Next, Citation Respondents' argument that "property" is the grammatical subject of the immunity provision in Section 1609 does not make sense when applied to other instances of peremptory language. According to Citation Respondents' reasoning, if property shall be immune under Section 1609 unless Plaintiffs show that an exception applies, then, in the case of the statutes of limitations discussed above, no action or suit shall be maintained unless Plaintiffs show the statutes of limitations have not run. Thus, Citation Respondents' interpretation creates a presumption that an affirmative defense has been invoked regardless of the parties' pleadings. As discussed above, however, a statute of limitations defense will be waived if not timely raised by the party affected. Fed. R. Civ. P. 8(c). Barring actions or suits because the statute of limitations has run, regardless of whether a party raised that affirmative defense, is simply not the law. It appears, therefore, that Citation Respondents' presumption impermissibly forces this Court to consider affirmative defenses sua sponte and impermissibly forces Plaintiffs to shoulder the burden of disproving affirmative defenses not even raised by Defendant. Because Citation Respondents' reading of Section 1609 appears to reach an absurd conclusion, the Court is not persuaded by it and instead finds that foreign sovereign immunity, as described in Sections 1609 through 1611 of the FSIA, is an affirmative defense.

The Court finds additional support for our interpretation of Section 1609 in Illinois law. Illinois Statute 735 ILCS 5/2-1402(a) governs attachment proceedings in Illinois and states:

> A judgment creditor, or his or her successor in interest when that interest is made to appear of record, is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person *to discover assets*

*or income of the debtor not exempt* from the enforcement of the judgment, a deduction order or garnishment, and of compelling the application of *non-exempt assets* or income discovered toward the payment of the amount due under the judgment.

735 ILCS 5/2-1402(a) (emphasis added). Like Section 1609 of the FSIA, Illinois Statute 735

ILCS 5/2-1402(a) appears grammatically to focus on the property itself when it states that a

judgment creditor is entitled to compel the "non-exempt" assets or income of the debtor toward

the payment of the amount due under the judgment. Id. Under Illinois law, however, exemption

from execution under the statute is a personal privilege to be taken advantage of only by the

execution debtor, and the debtor has the burden of proving the exemption. 19 Ill. Law & Prac.,

Exemptions § 6 (Supp. 2005) (*citing McMasters v. Alsop*, 85 Ill. 157 (1877) and *Burns v. Turner*,

Gen. No. 5941, 1915 WL 2061, at *2 (Ill. App. Ct. Mar. 9, 1915)). Thus, an exemption from

attachment must be affirmatively raised by the judgment debtor, and it is the judgment debtor

who bears the burden of proof. *Burns*, 1915 WL 2061, at *2. Putting this burden on the debtor

makes sense, as the debtor is more likely to know which of his properties qualify for exemptions

and whether he intends to use any of those properties to pay the judgment against him. Thus, the

Court concludes that, like Illinois Statute 735 ILCS 5/2-1402(a), Section 1609 of the FSIA is an

affirmative defense that only the foreign state has standing to invoke.


      3.    <u>Citation Respondents' case law is not persuasive.</u>

Citation Respondents claim that questions of standing under the FSIA have been

answered by other Courts. Citation Respondents site to *Verlinden B.V. v. Central Bank of*

*Nigeria*, 461 U.S. 480 (1983), and *Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229

(5th Cir. 2004), and argue that standing is not relevant to the Section 1609 analysis. In *Verlinden*, the Supreme Court addressed jurisdiction issues under the FSIA. In *Walker*, the Fifth Circuit Court of Appeals explicitly addressed the issue of standing in the context of Section 1609. These cases are not persuasive, however, and do not affect the Court's ruling.

### a.    *Verlinden B.V. v. Central Bank of Nigeria*

Citation Respondents argue that in *Verlinden*, the Supreme Court found that Section 1609 is not an affirmative defense but rather an issue for the district court to assess sua sponte in order to determine subject matter jurisdiction. In footnote 20 of its decision, the *Verlinden* Court wrote:

> The House Report on the [FSIA] states that "sovereign immunity is an affirmative defense that must be specially pleaded," H.R. Rep. No. 94-1487, at 17. Under the Act, however, subject matter jurisdiction turns on the existence of an exception to foreign sovereign immunity, 28 U.S.C. § 1330(a). Accordingly, even if the foreign state does not enter an appearance to assert an immunity defense, a District Court still must determine that immunity is unavailable under the Act.

*Verlinden*, 461 U.S. at 493 n.20. Citation Respondents focus on the words "even if the foreign state does not enter an appearance," and claim that the district court is obligated to consider Section 1609 immunity from attachment whether the foreign state raises the issue or not. The Court is not persuaded by this argument, however, as *Verlinden* does not address attachment under Sections 1609 or 1610.

In *Verlinden*, the Supreme Court found that Congress, in enacting the FSIA, did not exceed the scope of Article III of the U.S. Constitution by granting federal courts subject matter jurisdiction over certain civil actions by foreign plaintiffs against foreign sovereigns where the

rule of decision may be provided by state law. *Id.* at 491. The Supreme Court reasoned that a suit against a foreign state under the FSIA necessarily raises questions of substantive law at the very outset and hence clearly arises under federal law, as that term is used in Article III. *Id.* at 492-93. Thus, Sections 1604 though 1607 of the FSIA, which explicitly address jurisdictional immunity, in conjunction with 28 U.S.C. § 1330, conflate subject matter jurisdiction, personal jurisdiction, and the question of sovereign immunity into one inquiry. Because subject matter jurisdiction depends on the outcome of this inquiry, a district court must consider jurisdictional immunity under Section 1604, as well as exceptions to jurisdictional immunity under Section 1605, whether a foreign sovereign is present or not. *Id.* at 493 n.20. *Verlinden's* footnote 20, then, addresses jurisdiction over the foreign state, not the property of the foreign state, and does not answer the standing question now before this Court. Judgement having already been rendered against Iran, the question of plenary subject matter jurisdiction has already been decided.

### b. *Walker Int'l Holdings Ltd. v. Republic of Congo*

Citation Respondents cite to *Walker* for the proposition that there is nothing in the plain text to suggest that "the sovereign ownership of property must be called to the Court's attention by the foreign state and no one else." (Univ. Chicago Br. at 4.) *Walker* appears to be the only case cited by either party that is precisely on point.[2] In *Walker*, the plaintiff won a judgment

---

[2] In their briefs, Plaintiffs cite to several cases involving attempts by third parties to invoke foreign sovereign immunity (or procedural rights belonging to a foreign sovereign) in the plenary case. *See e.g., Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1290 (11th Cir. 1999) (question of jurisdiction over the foreign sovereign); *Wilmington Trust v.*

(continued...)

against the Republic of Congo (ROC) but the ROC refused to pay the judgment. *Walker*, 395

F.3d at 231. The plaintiff then filed a garnishment action against an American company that

owed the ROC money, and moved for a temporary restraining order to prevent the American

company from making payments to the ROC or the ROC's oil company. *Id.* The district court

granted the American company's motions to vacate the temporary restraining order, dissolve the

writs of attachment and garnishment, and dismiss the case. *Id.* On appeal, the plaintiff argued

that the American company lacked standing to invoke Section 1609's immunity from attachment.

*Id.* at 233. The Fifth Circuit rejected the plaintiff's argument and found that:

> [Plaintiff] cites no authority and we were unable to find any authority for the
> proposition that it is the sovereign's *exclusive* right to raise the issue of sovereign
> immunity under the FSIA. In fact, the very language of the FSIA makes clear that
> the [foreign state's] presence is irrelevant: "The property in the United States of a
> foreign state . . . shall not be immune from attachment . . . if (1) the foreign
> state has waived its immunity . . . either explicitly or by implication." 28 U.S.C.
> § 1610(a). The FSIA sets parameters in which property may be attached: "the
> court may order the attachment or execution *only* as 'referred to in subsections (a)
> and (b).'" *Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 250 (5th
> Cir. 2002) (emphasis added). Neither 28 U.S.C. § 1610(a) nor (b) requires the
> presence of the foreign sovereign or gives the sovereign exclusive standing to

---

[2](...continued)
*United States Dist. Court for Dist. of Hawaii*, 934 F.2d 1026, 1032-33 (9th Cir. 1991) (holding
that only foreign sovereign has standing to assert its right to a bench trial in maritime cases);
*Republic of Philippines v. Marcos*, 806 F.2d 344, 360-61 (2d Cir. 1986) (preliminary injunctions
against former head of state); *Acree v. Republic of Iraq*, 276 F. Supp. 2d 95, 97 (D.D.C. 2003)
*rev'd on other grounds* (attempted intervention on the part of the U.S. Government where foreign
sovereign held to have waived immunity under Section 1605). Because foreign sovereign
immunity in the plenary case involves different procedural and jurisdictional questions than
citation proceedings, Plaintiffs' cases are not relevant to the inquiry now before the Court. For
their part, Citation Respondents cite to *Bayer & Willis Inc. v. Republic of Gambia*, 283 F. Supp.
2d 1 (D.D.C. 2003), where a court permitted a nonsovereign to raise sovereign immunity
defenses in a garnishment proceeding. In *Bayer & Willis*, however, neither the parties nor the
court ever raised the issue of standing, so that decision sheds little light on the case at bar.

raise the waiver element. Hence, we find no merit to [plaintiff's] standing argument . . . .

*Id.*

This Court is neither bound nor persuaded by the reasoning in *Walker*. First, as discussed above, this Court reads the same statutes as the *Walker* Court but understands immunity from attachment under Sections 1609 and 1610 to be an affirmative defense with limits on when and by whom it may be asserted. Second, finding that a foreign sovereign does not have the exclusive right to raise the issue of foreign sovereign immunity under Sections 1609 and 1610 is problematic, as it allows third parties to interfere with the foreign sovereign's ability to exercise its rights. If, for instance, a foreign sovereign comes before the district court and chooses not to assert Section 1609 immunity from attachment, but fights attachment on other grounds, a citation respondent should not be permitted to do for the foreign sovereign what the sovereign has decided not to do itself. Similarly, a foreign sovereign may prefer to pay a judgment with potentially immune property in order to prevent plaintiffs from attaching other property located in the United States. In such a case, third party interveners should not have standing to prevent the foreign sovereign from exercising its rights. In the case at bar, for example, Iran may prefer that the collections at issue be used to pay the judgment award, as opposed to other of its property.[3] This is a decision that belongs exclusively to Iran as a foreign sovereign and Citation Respondents cannot be permitted to force Iran to make arguments or engage in litigation against its will. For these reasons, the Court remains unconvinced by *Walker*.

---

[3] Iran has chosen to fight Plaintiffs' attachment efforts in Belgium, (Pls.' Notice of Related Proceeding at Exs. A and B), and clearly does not wish to pay the judgment award with the properties in issue there.

- 15 -

4.    Citation Respondents' policy arguments are not persuasive.

Citation Respondents raise several policy arguments in opposition to Plaintiffs' motion. First, Citation Respondents argue that the Executive Branch of the U.S. Government abhors attachment of foreign property and consistently argues that third parties have standing to raise Section 1609 immunity defenses. (Field Br. at 8-10.) Second, Citation Respondents claim that the history and policy behind the FSIA require this Court to consider Section 1609 sua sponte and ignore the issue of standing. (Univ. Chicago Br. at 4-7.)

a.    **Executive Branch's interest**

Citation Respondents cite to *Flatow v. Islamic Republic of Iran*, 76 F. Supp. 2d 16 (D.D.C. 1999), and *Cicippio v. Islamic Republic of Iran*, Civil Action No. 96-1805 (D.D.C.), and argue that the Executive Branch of the U.S. Government has consistently taken the position that, under the FSIA, third-party standing is a nonissue and property belonging to a foreign state should be exempt from execution. (Field Br. at 8-9.) According to Citation Respondents, given the obligations of the Executive Branch to administer United States foreign policy, *see Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003), the Executive Branch's consistent position on the FSIA should be given great weight by the Court. The Court, however, fails to discern a clear desire by the Executive Branch to prevent attachment of the property of foreign states.

In *Flatow*, the U.S. Government argued that, under Section 1609 and 1610 of the FSIA, the district court lacked jurisdiction over certain Iranian properties, despite the fact that Section 1609 and 1610 immunity defenses had been raised by a non-agent third party. *Flatow*, 76 F. Supp. 2d at 20, 23. The non-agent third party in *Flatow*, however, was the U.S. Government

- 16 -

itself, which had standing to assert FSIA defenses because it took custody of and leased the

Iranian properties in issue against Iran's wishes but pursuant to the Foreign Missions Act, 22

U.S.C. § 4305(c).[4]  *Id.* at 21.  Not surprisingly, the *Flatow* Court found that, "although leasing of

property by a private party might be commercial in nature, taking custody over diplomatic

property under the authority granted by a federal statute or treaty is decidedly sovereign in

nature."  *Id.* at 23.  Thus, the U.S. Government's filings in *Flatow* do not truly address third-party

standing to assert Section 1609 immunity defenses, nor the Executive Branch's position on

attaching the property in the United States of a foreign state.

     In *Cicippio*, the plaintiffs won a judgment against Iran, 18 F. Supp. 2d 62, 70 (D.D.C.

1998), and then sought to attach certain Iranian bank accounts held by Bank of America.

*Cicippio*, Civil Action No. 96-1805 (D.D.C.)  The U.S. Government filed a brief with the District

Court for the District of Columbia on August 16, 2000, arguing that the Bank of America

accounts were exempt from attachment because: (1) the accounts were blocked or frozen

pursuant to Executive Order 12170 and its implementing regulations, the Iranian Assets Control

Regulations, 31 C.F.R. § 535.201 (which expressly prohibits attachment of blocked funds); (2)

the accounts were being maintained in accordance with United States obligations under the

Vienna Conventions on Diplomatic and Consular Relations; (3) the original funds in the accounts

were intended for diplomatic and consular purposes so there was no applicable FSIA exception;

and (4) one of the accounts was in the custody of the Office of Foreign Missions pursuant to the

---

    [4]  Under the Foreign Missions Act, the U.S. Secretary of State may preserve and protect
the property of a foreign mission when that mission has ceased conducting diplomatic, consular,
and other governmental activities in the United States.  22 U.S.C. § 4305(c).

Foreign Missions Act (which prohibits attachment). (U.S. Mem. Supp. Mot. to Quash at 1-10.)[5] Thus, with regard to the FSIA, the U.S. Government simply argued that Section 1610's commercial activity exception depends on the actions of the foreign state and would not apply to monies designated for diplomatic and consular purposes. (U.S. Mem. Supp. Mot. to Quash at 18-19.) Given the numerous considerations involved in *Cicippio*, and the very narrow arguments concerning the FSIA, the Court does not consider the U.S. Government's position in *Cicippio* to be evidence that the Executive Branch has consistently intervened and argued that property belonging to a foreign state should be exempt from execution under Section 1609 of the FSIA.

Significantly, on July 28, 2004, the U.S. Government filed a statement of interest in this case. In its statement of interest, the U.S. Government does not challenge the propriety of attaching property belonging to a foreign sovereign nor discuss the issue of standing. Rather, the U.S. Government simply argues that the Persepolis and Chogha Mish collections are not blocked assets under the Terrorism Risk Insurance Act of 2002 and that Citation Respondents' activities are not relevant to a commercial activity analysis under Section 1610(a) of the FSIA. (U.S. Statement of Interest at 11-12.) The U.S. Government's interpretation of Section 1610(a)'s commercial activity exception does not shed any light on the Executive Branch's approach to standing under Section 1609 or 1610 nor reveal a strong desire to invoke immunity from attachment whenever possible. Accordingly, the Court is not persuaded by Citation Respondents' representations of the desires of the Executive Branch of the U.S. Government.

---

[5] A copy of the U.S. Government's brief, entitled "Memorandum of Points and Authorities in Support of Motion to Quash Plaintiffs' Writs of Attachment Delivered to Bank of America," is attached as Exhibit 1 to the Field Museum's Memorandum of Law in Support of its Motion for Protective Order.

b.     Legislative history and purpose of the FSIA

Citation Respondents argue that the legislative history and the purpose of the FSIA disfavor attachment of the property of foreign states and support granting third parties standing to raise Section 1609 immunity defenses.  Specifically, Citation Respondents claim third parties should be granted standing to raise Section 1609 defenses because: (1) Congress views attachment of the property of a foreign state to be an affront to that state; and (2) the FSIA not only codified the restrictive theory of foreign sovereign immunity but intentionally made it more difficult for plaintiffs to overcome foreign sovereign immunity under Section 1609 (attachment) than under Section 1604 (jurisdiction).  (Field Br. at 9-10; Univ. Chicago Br. at 4-7.)

Citation Respondents cite to House Report, H.R. Rep. No. 94-1487, 9th Cong. 2nd Sess., at 27 (1976), and argue that Congress placed severe restrictions on litigants' ability to attach property of a foreign state because such attachments are a "significant irritation" and cause "serious friction in United States' foreign relations."  (Field Br. at 9.)  While attachment may very well cause friction in foreign relations, the passage relied upon by Citation Respondents explicitly refers to "[a]ttachment for jurisdictional purposes [which] . . . involv[e] U.S. courts in litigation not involving any significant United States interest or jurisdictional contacts, apart from the fortuitous presence of property in the jurisdiction."  H.R. Rep. No. 94-1487, at 26.  The House Report continues:

> Claimants will clearly benefit from the expanded methods under the bill for
> service on a foreign state (sec. 1608), as well as from the certainty that section
> 1330(b) of the bill confers personal jurisdiction over a foreign state in Federal and
> State courts as to every claim for which the foreign state is not entitled to
> immunity.  The elimination of attachment as a vehicle for commencing a lawsuit
> will ease the conduct of foreign relations by the United States and help eliminate

- 19 -

> the necessity for determinations of claims of sovereign immunity by the State
> Department.

Id. at 27. Thus, under the FSIA, plaintiffs may not attach property of a foreign state as a vehicle

to establish jurisdiction but instead must wait to attach property of a foreign state until

jurisdiction is established under Section 1604, the foreign state has been found liable, and the

foreign state has received proper notice of attachment proceedings per Section 1608. At that

point, the foreign state may very easily exercise all of its rights under the FSIA simply by

appearing and requesting Section 1609 immunity from attachment. Iran, in particular, is an

experienced litigant in the United States federal court system and should have no difficulty

invoking all of its rights under the FSIA. *See Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1,

6 n.1 (D.D.C. 1998) ("Iran is an experienced litigant in the United States federal court system

generally and in this Circuit."). *See also Ministry of Defense and Support for Armed Forces of*

*Islamic Republic of Iran v. Cubic Defense Sys.*, 385 F.3d 1206, 1210 (9th Cir. 2004) (Iran filed

petitions, motions, and appeals); *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 230

(D.C. Cir. 2003) ("Iran chose not to defend its action in this Court, despite its long history of

adjudicating claims in this Circuit."); *Cicippio v. Islamic Republic of Iran*, 30 F.3d 164, 165

(D.C. Cir. 1994) (Iran filed motion to dismiss); *Foremost-McKesson v. Islamic Republic of Iran*,

905 F.2d 438, 440-41 (D.C. Cir. 1990) (Iran filed motion to dismiss and an appeal); *Berkovitz v.*

*Islamic Republic of Iran*, 735 F.2d 329, 330-31 (9th Cir. 1984) (Iran filed motion to dismiss).

Given all of the procedural safeguards and the extensive rights granted to foreign

sovereigns, the Court is not convinced that FSIA attachment proceedings after a judgment has

been entered are necessarily a significant irritation to foreign states. The FSIA goes a long way

toward promoting harmonious international relations by protecting the rights and properties of

foreign states so there is no need for this Court to create new rights under the FSIA for

third-party interveners, such as Citation Respondents here. Creating new rights in this case is

particularly unnecessary, as Iran is clearly capable and willing to assert immunity defenses when

it so desires.

Next, Citation Respondents incorrectly assert that the FSIA intentionally made it more

difficult for litigants to overcome foreign sovereign immunity under Section 1609 than under

Section 1604. Prior to 1952, the U.S. Government generally afforded foreign sovereigns

absolute immunity from the jurisdiction of the courts, including complete immunity from

execution. *Verlinden,* 461 U.S. at 486; *Conn. Bank of Commerce v. Republic of Congo,* 309 F.3d

240, 251 (5th Cir. 2002). In 1952, by way of the "Tate Letter,"[6] the U.S. State Department

announced its adoption of the restrictive theory of foreign sovereign immunity. *Verlinden,* 461

U.S. at 486-87. Under the restrictive theory, foreign sovereign immunity is confined to suits

involving the foreign state's public acts, and does not extend to cases arising out of a foreign

state's strictly commercial acts. *Id.* at 487. Even after adopting the restrictive theory, however,

the U.S. Government did not modify the complete immunity enjoyed by foreign sovereigns from

execution against their property. *Id.* In short, if a plaintiff successfully obtained a final judgment

against a foreign state, he still had to rely on the foreign state to pay the judgment voluntarily.

*Conn. Bank of Commerce,* 309 F.3d at 252 (citing H.R. Rep. No. 94-1487, at 8, 27, and

---

[6] Letter from Jack B. Tate, Acting Legal Adviser, Department of State, to Acting
Attorney General Philip B. Perlman (May 19, 1952), reprinted in 26 Dep't of State Bull. 984-985
(1952), and in *Alfred Dunhill of London, Inc. v. Cuba,* 425 U.S. 682, 711 (1976) (Appendix 2 to
opinion of White, J.).

- 21 -

Restatement (Third) of the Foreign Relations Law of the United States § 460 cmt. a (1987)). The FSIA, enacted in 1976, essentially codified the restrictive theory of sovereign immunity as described in the Tate Letter, but also modified the rule barring execution against a foreign state's property by "partially lowering the barrier of immunity from execution," H.R. Rep. No. 94-1487, at 27, and making it more difficult for foreign states to invoke immunity from attachment than immunity from jurisdiction. *See De Letelier v. Republic of Chile*, 748 F.2d 790, 798-99 (2d Cir. 1984). For both immunity from jurisdiction and immunity from attachment, commercial activity generally constitutes the touchstone of the immunity determination. But immunity from execution is nevertheless narrower than jurisdictional immunity. *See Conn. Bank of Commerce*, 309 F.3d at 252; *De Letelier*, 748 F.2d at 798-99. Thus, the FSIA made it easier, not harder, for plaintiffs to attach property in the United States of a foreign state.

Because it is not abhorrent to apply the traditional rules of affirmative defenses to the FSIA and because there are no strong policy reasons to grant Citation Respondents standing to invoke Iran's Section 1609 immunity claims, the Court is not tempted to create new rights under the FSIA for third parties, such as Citation Respondents.

**C.    Citation Respondents May Not Invoke Iran's Section 1609 Immunity Claims by Proxy.**

Citation Respondents claim that even if they lack standing under the FSIA they have standing to raise Iran's immunity defenses by proxy under *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991). (Univ. Chicago Br. at 10.) As a general rule, a litigant must assert his own legal rights and cannot assert the legal rights of a third party. *Powers*, 499 U.S. at 410; *In re*

*African-American Slave Descendants Litigation*, 375 F. Supp. 2d 721, 753 (N.D. Ill. 2005). In

*Powers*, the Supreme Court found that a litigant may assert the rights of an absent third party in

some limited circumstances. *Powers*, 499 U.S. at 410-11. To determine whether a litigant has

standing to assert the rights of an absent third party, the Court applies a two part test. First the

litigant must have suffered an "injury in fact." *Id.* at 411. Second, certain prudential

considerations must point in favor of permitting the litigant to assert the third party's rights. *Id.*;

*In re African-American Slave Descendants Litigation*, 375 F. Supp. 2d at 753. Such

considerations include the requirement that the litigant have a close relationship with the third

party, and that there exists a hindrance to the third party's ability to protect its own rights.

*Powers*, 499 U.S. at 411; *In re African-American Slave Descendants Litigation*, 375 F. Supp. 2d

at 753-54. Citation Respondents claim that they have standing to assert Iran's rights in this case

because: (1) they will suffer an injury in fact; (2) they are close to Iran; and (3) Iran is unable to

protect its own rights. (Univ. Chicago Br. at 10-12.)

   First, Citation Respondents contend that they will suffer an injury in fact if Plaintiffs are

permitted to execute on and attach the Persian collections currently in Citation Respondents'

possession. The specific injuries identified by Citation Respondents include: (1) the inability to

complete scholarly studies that they are currently conducting; and (2) the undermining of their

credibility when it comes to safeguarding and housing other collections or exhibits in the future.

(Univ. Chicago Br. at 11.) Citation Respondents identify reasons why they have an interest in

Plaintiffs' attempts to attach the Persian collections but fail to identify injuries in fact. Citation

Respondents' claims are especially weak given that: (1) the Chogha Mish and Persepolis

collections that Plaintiffs seek to attach were loaned to Citation Respondents and are currently

packaged and awaiting shipment back to Iran; and (2) attachments of any of the collections would, of course, be subject to any possessory rights that Citation Respondents may have. Furthermore, if the laws of the United States do not permit Citation Respondents to make certain arguments on behalf of foreign states, Citation Respondents' fear of losing credibility when they are barred from making those arguments can be a legitimate concern of Congress but not of the Court.

Next, Citation Respondents argue that they maintain a close relationship with Iran and are capable of arguing effectively on Iran's behalf. (Univ. Chicago Br. at 11.) Regardless of whether Citation Respondents are capable of arguing effectively on Iran's behalf, Citation Respondents are not sufficiently close to Iran to satisfy the second prong of the *Powers* test. Even if Citation Respondents have maintained a working relationship with Iran over the last seventy years, the Citation Respondents' incentives for enforcing foreign sovereign immunity against attachment do not suggest that the parties are that closely aligned. *See Singleton v. Wulff*, 428 U.S. 106, 115 (1976). Even more importantly, Citation Respondents are not Iran's representatives in the United States and are not invested with any authority to represent Iran.

Finally, under the *Powers* test, Citation Respondents must demonstrate that there exists a hindrance to Iran's ability to protect its own rights. *Powers*, 499 U.S. at 410-11; *In re African-American Slave Descendants Litigation*, 375 F. Supp. 2d at 753-54. Citation Respondents do not identify a specific hindrance to Iran's ability to protect its own rights but claim that any number of legitimate reasons might keep Iran from asserting its rights in this case and "[i]t is not necessary to speculate as to the reasons behind Iran's non-appearance . . . ." (Univ. Chicago Br. at 12.) The Court agrees that legitimate reasons might keep Iran from

asserting its own rights but notes that there are no legal barriers that Iran must overcome in order to appear in this case. In fact, Iran is perfectly capable of raising its foreign sovereign immunity rights in U.S. courts when it so chooses. *See Ministry of Defense and Support for Armed Forces of Islamic Republic of Iran*, 385 F.3d at 1210; *Flatow*, 999 F. Supp. at 6 n.1; *Roeder*, 333 F.3d at 230; *Cicippio*, 30 F.3d at 165; *Foremost-McKesson*, 905 F.2d at 440-41; *Berkovitz*, 735 F.2d at 330-31. Furthermore, Iran is currently defending itself in attachment proceedings related to this case in Belgium, (Pls.' Notice of Related Proceeding at Exs. A and B), and Iran is currently fighting the sale of antiquities originating in Persepolis in England. (Pls.' Supp. Notice of Related Proceeding at Ex. A.) Thus, it appears that Iran is capable of asserting its rights when it pleases and the Court will not simply gloss over this part of the *Powers* test. *See U.S. v. Holm*, 326 F.3d 872, 876 (7th Cir. 2003) (barring claim by third party where there is no barrier preventing first party from filing claim); *Massey v. Wheeler*, 221 F.3d 1030, 1035 (7th Cir. 2000) (denying standing to third party litigant where no obstacle prevents first party from asserting his rights and first party "seems quite expert" at bringing his own cases).

Citation Respondents fail to meet any of the requirements under *Powers* and therefore lack standing to raise claims as a proxy on behalf of Iran. It follows that only Iran may raise its affirmative defenses in opposition to attachment.

## IV.  Conclusion

For the reasons stated above, the Court finds that, as a matter of law, no party other than Iran may assert Iran's foreign sovereign immunity defenses under Sections 1609 and 1610 of the FSIA. Accordingly, Plaintiffs' motion for partial summary judgment is granted. The parties shall

appear before this Court for a status hearing regarding their remaining outstanding discovery

motions at 10 a.m. on January 19, 2006.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated:  December 15, 2005.

- 26 -

Copies have been mailed to:

DAVID J. STRACHMAN, Esq.
ROBERT S. PARKER, Esq.
McIntyre, Tate, Lynch & Holt
321 South Main Street
Suite 400
Providence, RI  02903

ROBERT D. CHEIFETZ, Esq.
DANIEL A. SHMIKLER, Esq.
Sperling & Slater, P.C.
55 West Monroe Street
Suite 3200
Chicago, IL  60603

THOMAS A. DOYLE, Esq.
MATTHEW G. ALLISON, Esq.
Baker & McKenzie, L.L.P.
One Prudential Plaza
Suite 3500
130 East Randolph Drive
Chicago, IL  60601

LAWRENCE W. NEWMAN, Esq.
JACOB M. KAPLAN, Esq.
Baker & McKenzie, L.L.P.
805 Third Avenue
New York, NY  10022

R. CLAY BENNETT, Esq.
THOMAS J. CUNNINGHAM, Esq.
Lord, Bissell & Brook, L.L.P.
115 South LaSalle Street
Chicago, IL  60603

Attorneys for Plaintiffs

Attorneys for Citation Third Party
  Respondents