## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JENNY RUBIN, et al. )
)
   Plaintiffs – Judgment Creditors, )
  v. )
)
THE ISLAMIC REPUBLIC OF IRAN, et al. )
                    )   Case No.: 05-MC-10079 (GAO)
   Defendants – Judgment Debtors, )
  v. )
)
MUSEUM OF FINE ARTS, HARVARD UNIVERSITY, )
et al. )
)
   Trustee Process Respondents. )
)

## TRUSTEE PROCESS RESPONDENTS' JOINT RESPONSE TO PLAINTIFFS' NOTICE OF RELEVANT AUTHORITY

On December 20, 2005, Plaintiffs filed with this Court a magistrate judge's opinion issued in a proceeding in the United States District Court for the Northern District of Illinois, *Rubin v. Islamic Republic of Iran*, No. 03 C 9370 (Dec. 15, 2005) (opinion of Ashman, M.J.). In that opinion, the magistrate—dismissing as "not persuasive" a ruling of a federal court of appeals that had addressed the very same question,[1] and disregarding the background of the Foreign Sovereign Immunities Act (FSIA)—adopted Plaintiffs' contention that the immunity from execution of a foreign sovereign's property may be raised only by the foreign sovereign. A

---

[1] *Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 233 (5th Cir. 2004), *cert. denied*, 125 S. Ct. 1841 (2005).

magistrate's recommendation in a separate case is, of course, in no way binding on this Court.[2]

Furthermore, the Trustee Process Respondents have previously explained, in their oppositions to

Plaintiffs' Motion for Partial Summary Judgment in this case, why Plaintiffs' view of the FSIA is

profoundly mistaken.[3]  The reasoning of the magistrate judge in Chicago does not persuasively

address the authorities cited in those oppositions.

    The Supreme Court has explicitly stated that, "even if the foreign state does not enter an

appearance to assert an immunity defense, a District Court still must determine that immunity is

unavailable under the Act," *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493 & n.20

(1983), just as historically "the responsibility fell to the courts to determine whether sovereign

immunity existed, generally by reference to prior State Department decisions" when the foreign

state did not assert its immunity prior to enactment of the FSIA, *id.* at 487.  The magistrate judge

---

[2] Contrary to Plaintiffs' assertion that "the District Court for the Northern District of Illinois granted Plaintiffs' motion for partial summary judgment," Notice of Decision at 2, the opinion is quite clearly that of Magistrate Judge Ashman.  Moreover, all that the magistrate judge was authorized to issue—and thus all the opinion may be taken as—is a recommendation to District Judge Manning.  *See* Minute Entry Before Judge Blanche M. Manning, *Rubin v. Islamic Republic of Iran*, No. 03-C-9370 (Oct. 12, 2005) ("At Magistrate Judge Ashman's request and in the interest of judicial efficiency, the referral is expanded to include a *report and recommendation* on the motion for partial summary judgment." (emphasis added)), attached as Ex. A.  Because the magistrate judge was considering a dispositive motion, his authority derived from 28 U.S.C. § 636(b)(1)(B), under which "a judge may also designate a magistrate judge . . . to submit to a judge of the court proposed . . . *recommendations* for the disposition, by a judge of the court, of any motion excepted in subparagraph (A)"; *see also* Fed. R. Civ. P. 72(b) ("A magistrate judge assigned without consent of the parties to hear a pretrial matter dispositive of a claim or defense of a party . . . shall promptly conduct such proceedings as are required. . . . The magistrate judge shall enter into the record *a recommendation* for disposition of the matter . . . ." (emphases added)); *Parrish v. Ford Motor Co.*, No. 89-6290, 1990 WL 109188, at *1 (6th Cir. Aug. 2, 1990) (concluding that district court erred in applying deferential review to magistrate judge's recommendation of grant of partial summary judgment; reversing and remanding for *de novo* review).

[3] Trustee Process Respondents Harvard Parties' Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Harvard Opposition"); Opposition of the Museum of Fine Arts to Plaintiffs' Motion for Partial Summary Judgment ("MFA Opposition").

in the Chicago case rejected this Supreme Court authority because *Verlinden* arose in the context

of a dismissal of a suit against a foreign sovereign, rather than, as here, an attempted attachment

of property putatively belonging to the foreign sovereign.  But, as pointed out in the oppositions,

the distinction between foreign sovereign immunity from suit and foreign sovereign immunity

from attachment, if anything, cuts in favor of *broader* immunity principles in the latter context,

which is the context before this Court.  Case law has uniformly held that, historically and under

the FSIA, stricter limits are imposed upon attempts to attach a foreign sovereign's property than

upon suits against the sovereign.  (Harvard Opposition 13-15, MFS Opposition 6-7).  Thus,

whether or not a foreign sovereign has appeared to assert the immunity of foreign sovereign

property from attachment, it is the responsibility of the District Court itself to determine whether

the property is immune from attachment under 28 U.S.C. § 1610(a).[4]

Relying on these principles, the Fifth Circuit expressly held in *Walker Int'l Holdings Ltd.*

*v. Republic of Congo*, 395 F.3d 229, 233 (5th Cir. 2004), *cert. denied*, 125 S. Ct. 1841 (2005),

that the District Court should determine whether foreign sovereign property is immune from

attachment, even if the foreign sovereign is not present before the court to raise that issue.   In so

ruling, the Fifth Circuit squarely rejected exactly the same "standing" argument that Plaintiffs

---

[4] The Solicitor General has recently reiterated in a brief filed in the Supreme Court that,
as explained above, "[e]xecution against a foreign state's property is a more significant affront to
the state's sovereign property than … the adjudication of a controversy involving the foreign
state…."   Brief for the United States as Amicus Curiae at 8, *Ministry of Defense and Support for
the Armed Forces of the Islamic Republic of Iran v. Elahi*, No. 04-1095 (U.S.) (filed Dec. 2005)
(emphasis omitted) (Ex. B).  The government also observed that, "because of the sensitivity of
questions concerning the immunity of foreign states and their property," courts in the United
should "*satisfy themselves* that the prerequisites for the exercise of jurisdiction over foreign
states and attachment of their property are present before they exercise that judicial power."  *Id.*
at 15-16) (emphasis added).  But this Court could not "satisfy itself" that the prerequisites for the
exercise of judicial power to attach property purportedly belonging to Iran were met in this case
if, as Plaintiffs suggest, the Court declined to entertain any foreign sovereign immunity argument
on the ground that such an argument had not been raised by Iran.

assert here.  (*See also* Harvard Opposition 5-6, MFA Opposition 7-9).  As the Fifth Circuit

stated, there is no "authority for the proposition that it is the sovereign's exclusive right to raise

the issue of sovereign immunity under the FSIA.  In fact, the very language of the FSIA makes

clear that the [sovereign's] presence is irrelevant."  *Walker*, 395 F.3d at 233.

     The magistrate correctly recognized that *Walker* is "the only case . . . that is precisely on

point."  Op. at 13 & n.2.  But the magistrate found *Walker* "not persua[sive]," for two reasons:

first, because "immunity from attachment . . . [is] an affirmative defense," and second, because

*Walker*'s conclusion "allows third parties to interfere with the foreign sovereign's ability to

exercise its rights."  Op. at 15.  Neither reason withstands scrutiny.  First, the magistrate's view

that foreign sovereign immunity is an "affirmative defense" that must be raised by the foreign

sovereign party to which the defense belongs is *ipse dixit*, relying on putative analogies to other

types of immunity that do not involve the foreign relations imperative of sovereign immunity:

the obligation to ensure that other nations' immunity is respected in the courts of the United

States.  (Harvard Opposition 15.)  Second, the magistrate's professed concern about third party

interference with foreign sovereigns' rights is specious.  Trustee Process Respondents have never

suggested that their sovereign immunity arguments could trump an express waiver of immunity

made by the foreign sovereign if it chose to participate in the litigation.

     In reaching his decision, the magistrate relied on two sentences in the Fifth Circuit's

earlier opinion in *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240 (5th Cir.

2002), the second of which reads: "But immunity from execution is nevertheless narrower than

jurisdictional immunity."  Op. at 22 (citing *Connecticut Bank*, 309 F.3d at 252 and *De Letelier v.*

*Republic of Chile*, 748 F.2d 790, 798-99 (2d Cir. 1984)).[5]  Although this language does appear in the Fifth Circuit's opinion in *Connecticut Bank*, in context, it is clear that the Fifth Circuit intended to describe the FSIA's *exceptions* to attachment immunity as narrower than the exceptions to immunity from suit—which is, indeed, a holding of that case.  *See* 309 F.3d at 255-56.  Two sentences later in *Connecticut Bank*, the Fifth Circuit correctly described *De Letelier* as holding that "*Congress intended to lift immunity from execution only 'in part,'* that it did not intend to reverse completely the historical and international antipathy to executing against a foreign state's property *even in cases where a judgment could be had on the merits.*"  *Id.* at 252 (emphasis added).   Similarly, three pages later in the opinion, the Fifth Circuit again stated the correct proposition of law.  *Id.* at 255-56 (citing same pages of *De Letelier* for the proposition that "the FSIA's *exceptions* to executional immunity [are] . . . narrower than its exceptions to jurisdictional immunity" (emphasis added)).[6]  Moreover, in its later decision in *Walker*, the Fifth Circuit quoted *Connecticut Bank* for the proposition that "the court may order the attachment or execution *only* as 'referred to in subsections (a) and (b) [of Section 1610]'"—language that the *Walker* court read as providing direct support for the principle that foreign sovereign immunity from attachment under Section 1610 is binding on the district court even if the foreign sovereign

---

[5] The full quotation is: "For both immunity from jurisdiction and immunity from attachment, 'commercial activity' generally constitutes the touchstone of the immunity determination.  But immunity from execution is nevertheless narrower than jurisdictional immunity.  *De Letelier v. Republic of Chile*, 748 F.2d 790, 798-99 (2d Cir. 1984)."  309 F.3d at 252.

[6] The Second Circuit's conclusion in *De Letelier* was that "Congress did in fact create a right without a remedy," 748 F.2d at 798—that a foreign sovereign could be subjected to suit while its property remained immune from execution.  *Id.* at 799 ("[S]ince it was not Congress' purpose to lift execution immunity wholly and completely, a right without a remedy does exist in the circumstances here.").  Given the function that the discussion played in the opinions in *De Letelier* and *Connecticut Bank*, there can be no doubt that it is the *exceptions* to immunity, not the immunity itself, that are narrower for execution than for amenability to suit.

is not present before the court to raise that issue.  *See Walker*, 395 F.3d at 233 (quoting

*Connecticut Bank*, 309 F.3d at 250).   The sentence from *Connecticut Bank* on which the

magistrate relied appears to have been a simple mistake in the printing of the Fifth Circuit's

opinion.  Such a mistake should not be perpetuated as law—especially where the Fifth Circuit

itself has itself rejected the reading of that opinion that Plaintiffs (and the magistrate judge)

would attribute to it.[7]

    Finally, the Illinois law upon which the magistrate judge relied to support his

interpretation (Op. at 10-11) is irrelevant here.  By contrast, Massachusetts's law, to which this

Court should refer under Rule 69 of the Federal Rules, allows Trustee Process Respondents to

raise the issue of sovereign immunity.  (Harvard Opposition 15-16, MFA Opposition 15-17).

---

[7] Not only have Plaintiffs never argued that either *Connecticut Bank* or *De Letelier* supports their position in this case, Plaintiffs openly urge this Court to "reject" *Connecticut Bank*.  Reply in Further Support of Plaintiffs-Judgment Creditors' Motion for Partial Summary Judgment at 14.  This further demonstrates the magistrate judge's plain error in reading *Connecticut Bank* and *De Letelier* as a basis for a decision in Plaintiffs' favor.

Respectfully submitted,

/s/Paul R.Q. Wolfson_____

Paul R.Q. Wolfson (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE
  AND DORR LLP
2445 M Street N.W.
Washington, DC  20037
(202) 663-6000

Mark C. Fleming (BBO # 639358)
Timothy R. Shannon (BBO # 655325)
WILMER CUTLER PICKERING HALE
  AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

*Attorneys for President and Fellows of*
  *Harvard College*

Date: December 28, 2005

/s/William D. Iverson

Robert J. Muldoon, Jr. (BBO # 359480)
Courtney A. Clark  (BBO # 651381)
SHERIN & LODGEN LLP
101 Federal Street
Boston, MA  02110
Tel: (617) 646-2000
Fax: (617) 646-2222

William D. Iverson (admitted *pro hac vice*)
Jason M. Knott (admitted *pro hac vice*)
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel: (202) 662-6000
Fax: (202) 778-5549

*Attorneys for Museum of Fine Arts*

Date: December 28, 2005

## <u>CERTIFICATE OF SERVICE</u>

I, Timothy R. Shannon, attorney for Trustee Process Defendant, Harvard University, hereby certify that on December 28, 2005 I caused a true and accurate copy of the this document to be served on counsel for the parties:

### *<u>Counsel for the Plaintiffs:</u>*

Richard J. Grahn, Esq. (via electronic notification)
Edward V. Colbert III, Esq.
Georgia J. Asimakopoulos, Esq.
Looney & Grossman LLP
101 Arch Street
Boston, MA 02110

David J. Strachman, Esq. (via electronic notification)
McIntyre, Tate, Lynch & Holt
321 South Main Street, Ste. 400
Providence, RI 02903

### *<u>Counsel for Trustee Process Defendant, MFA:</u>*

Robert J. Muldoon, Jr., Esq. (via electronic notification)
Courtney A. Clark, Esq.
Sherin & Lodgen LLP
101 Federal Street
Boston, MA 02110

William D. Iverson, Esq. (via electronic notification)
Jason M. Knott, Esq.
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004

_/s/ Timothy R. Shannon_____
Timothy R. Shannon (BBO #655325)

**EXHIBIT A**

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9370 | **DATE** | 10/12/2005 |
| **CASE TITLE** | Rubin vs. Islamic Republic, et al. | | |

**DOCKET ENTRY TEXT:**

At Magistrate Judge Ashman's request and in the interest of judicial efficiency, the referral is expanded to include a report and recommendation on the motion for partial summary judgment.

Docketing to mail notices.

| | Courtroom Deputy Initials: | rs |
|---|---|---|

**EXHIBIT B**

No. 04-1095

# In the Supreme Court of the United States

---

MINISTRY OF DEFENSE AND SUPPORT FOR THE
ARMED FORCES OF THE ISLAMIC REPUBLIC OF IRAN,
PETITIONER

*v.*

DARIUSH ELAHI

---

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT*

---

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

---

PAUL D. CLEMENT
  *Solicitor General*
    *Counsel of Record*
PETER D. KEISLER
  *Assistant Attorney General*
EDWIN S. KNEEDLER
  *Deputy Solicitor General*
JEFFREY P. MINEAR
  *Assistant to the Solicitor
  General*
DOUGLAS N. LETTER
LEWIS S. YELIN
  *Attorneys*
  *Department of Justice*
  *Washington, D.C. 20530-0001*
  *(202) 514-2217*

JOHN B. BELLINGER, III
  *Legal Adviser*
  *Department of State*
  *Washington, D.C. 20530-0001*

**QUESTIONS PRESENTED**

1. Whether petitioner's property in the United States is subject to attachment for satisfaction of an unrelated default judgment under the provisions of the Foreign Sovereign Immunities Act of 1976 that set out exceptions to the immunity from attachment or execution, 28 U.S.C. 1610.

2. Whether petitioner's property is immune from attachment under the exception for military property, 28 U.S.C. 1611(b)(2).

3. Whether petitioner may collaterally attack respondent's default judgment.

(I)

## TABLE OF CONTENTS

Page

Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

  A.  The court of appeals erred in its analysis of the appropriateness of attachment under 28 U.S.C. 1610(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

  B.  The Court should grant, vacate, and remand for further consideration of whether attachment is appropriate under 28 U.S.C. 1610(b)(2) . . . . . . . . . . . 15

  C.  The other questions presented in the petition do not merit review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

Cases:

*Alejandre* v. *Telefonica Larga Distancia, Inc.*, 183 F.3d 1277 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . 16, 17

*Cicippio-Puleo* v. *Islamic Republic of Iran*, 353 F.3d 1024 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 19, 20

*Connecticut Bank of Commerce* v. *Republic of Congo*, 309 F.3d 240 (5th Cir. 2002) . . . . . . . . . . . . . . 2, 3, 8

*Dole Food Co.* v. *Patrickson*, 538 U.S. 468 (2003) . . . . . . . 10

*Elahi* v. *Islamic Republic of Iran*, 124 F. Supp. 2d 97 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 19

*First Nat'l City Bank* v. *Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611 (1983) . . . . . . . . . . . 6, 10

*Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) . . . . . . . . . . . 19

*Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144 (1965) . . . 9

(III)

IV

Cases—Continued:                                                        Page

*Ministry of Def. & Support for the Armed Forces of
the Islamic Republic of Iran* v. *Cubic Def. Sys.,
Inc.*, 29 F. Supp. 2d 1168 (S.D. Cal. 1998)  . . . . . . . . . . . 5

*Oberly* v. *Baltimore & Ohio R.R.*, 479 U.S. 980 (1986)  . . 17

*Republic of Austria* v. *Altmann*, 541 U.S. 677
(2004)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Roeder* v. *Islamic Republic of Iran*, 333 F.3d 228
(D.C. Cir. 2003), cert. denied, 542 U.S. 915 (2004)  . . . . . 9

*Transaero, Inc.* v. *La Fuerza Aerea Boliviana*, 30
F.3d 148 (D.C. Cir. 1994), cert. denied, 513 U.S.
1150 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 16

*Walker Int'l Holdings Ltd.* v. *Republic of Congo*, 395
F.3d 229 (5th Cir. 2004), cert. denied, 125 S. Ct.
1841 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Treaty, statutes and regulations:

Convention on the Recognition and Enforcement of
Foreign Arbitral Awards, adopted June 10, 1958,
21 U.S.T. 2517  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Arbitration Act, ch. 213, 43 Stat. 883  . . . . . . . . . . . 5

Foreign Operations, Export Financing, and
Related Programs Appropriations Act, 1997,
Pub. L. No. 104-208, Div. A, § 101(c)
[Tits. I-V], 110 Stat. 3009-121  . . . . . . . . . . . . . . . . . . . . . 4

        § 589, 110 Stat. 3009-172 (28 U.S.C. 1605 note)  . . . . . 4

Foreign Sovereign Immunities Act of 1976,
Pub. L. No. 94-583, 90 Stat. 2891  . . . . . . . . . . . . . *passim*

        28 U.S.C. 1330  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        28 U.S.C. 1330(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        28 U.S.C. 1602 *et seq.*  . . . . . . . . . . . . . . . . . . . . . . . . . . 1

V

Statutes and regulations:                                   Page

    28 U.S.C. 1603 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    28 U.S.C. 1603(a) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

    28 U.S.C. 1603(b) . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

    28 U.S.C. 1603(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . 10

    28 U.S.C. 1603(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    28 U.S.C. 1604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    28 U.S.C. 1605 (2000 & Supp. II 2002) . . . . . . . . . . . . 1

    28 U.S.C. 1605 note . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    28 U.S.C. 1605(a)(7) . . . . . . . . . . . . . . . . . . . 4, 5, 12, 20

    28 U.S.C. 1605(a)(7) (2000 & Supp. II 2002) . . . . . . 20

    28 U.S.C. 1606 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

    28 U.S.C. 1606-1607 . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    28 U.S.C. 1608 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    28 U.S.C. 1608(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    28 U.S.C. 1609 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    28 U.S.C. 1610 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    28 U.S.C. 1610(a) . . . . . . . . . . . . . . 2, 7, 8, 11, 13, 16, 17

    28 U.S.C. 1610(a)(7) . . . . . . . . . . . . . . . . . . . . 12, 13, 17

    28 U.S.C. 1610(b) . . . . . . . . . . . . . . . 2, 7, 8, 11, 13, 16

    28 U.S.C. 1610(b)(2) . . . . . . . . . . . . . . . . . . . . . *passim*

    28 U.S.C. 1611(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

    28 U.S.C. 1611(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9 U.S.C. 207 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

22 C.F.R. 126.1(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

31 C.F.R. 596.201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Miscellaneous:

  49 Fed. Reg. 2836 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . 4

VI

Miscellaneous—Continued:                                         Page

H.R. Rep. No. 1487, 94th Cong., 2d Sess. (1976)  . . . . . . . 2, 8

11 Charles Alan Wright et al., *Federal Practice and*
*Procedure* (2d ed. 1995)  . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# In the Supreme Court of the United States

No. 04-1095

MINISTRY OF DEFENSE AND SUPPORT FOR THE ARMED
FORCES OF THE ISLAMIC REPUBLIC OF IRAN,
PETITIONER

*v.*

DARIUSH ELAHI

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT*

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

This brief is filed in response to the Court's order inviting
the Solicitor General to express the views of the United
States.

## STATEMENT

1. Congress enacted the Foreign Sovereign Immunities
Act of 1976 (FSIA) to address the scope of a foreign state's
immunity from suit. See Pub. L. No. 94-583, 90 Stat. 2891 (28
U.S.C. 1330, 1602 *et seq.*). The FSIA largely codifies the so-
called "restrictive theory" of sovereign immunity, which gen-
erally posits that a foreign state shall enjoy immunity from
suit in actions involving the state's sovereign or public acts,
but not its commercial activities. See generally *Republic of
Austria* v. *Altmann*, 541 U.S. 677, 688-691 (2004).

The FSIA expresses the general rule that foreign states
are immune from suit in courts in the United States. 28
U.S.C. 1604. It then sets forth exceptions to that immunity,
28 U.S.C. 1605 (2000 & Supp. II 2002); 28 U.S.C. 1606-1607,

(1)

2

and provides that a federal district court may exercise juris-
diction over a foreign state only if the suit comes within one
of the FSIA's specified exceptions, 28 U.S.C. 1330(a).

In addition to defining a foreign state's jurisdictional im-
munity, the FSIA modifies the traditional rule barring execu-
tion against a foreign state's property. See *Connecticut Bank
of Commerce* v. *Republic of Congo*, 309 F.3d 240, 252 (5th Cir.
2002). The FSIA establishes a general rule that property in
the United States of a foreign sovereign is immune from at-
tachment. 28 U.S.C. 1609. But Congress "partially lower[ed]
the barrier of immunity from execution." H.R. Rep. No. 1487,
94th Cong., 2d Sess. 27 (1976). The FSIA distinguishes be-
tween property belonging to the foreign state itself and prop-
erty belonging to an agency or instrumentality of the foreign
state. Section 1610(a) permits execution against the property
of a foreign state only if (among other things) the property is
"in the United States" and "used for a commercial activity in
the United States." 28 U.S.C. 1610(a). Section 1610(b) goes
further and allows execution against property in the United
States belonging to an "agency or instrumentality" of a for-
eign state that is "engaged in commercial activity in the
United States," without regard to how the particular property
is used. 28 U.S.C. 1610(b).[1]

The FSIA's distinction between the property of a foreign
state and the property of its agencies and instrumentalities

---

[1] Because the FSIA defines a "foreign state" as including an "agency
or instrumentality of a foreign state" (28 U.S.C. 1603(a)), Section
1610(a) applies both to a foreign sovereign and to its agencies or
instrumentalities. H.R. Rep. No. 1487, *supra*, at 28. Section 1610(b)
provides "addition[al]" bases for attachment that apply only to property
of a foreign state's agencies or instrumentalities. 28 U.S.C. 1610(b); see
H.R. Rep. No. 1487, *supra*, at 29 ("Section 1610(b) provides for exe-
cution against the property of agencies or instrumentalities of a foreign
state in circumstances additional to those provided in section 1610(a).").

3

reflects a central feature of the restrictive theory of foreign sovereign immunity. That theory recognizes that, when a foreign state engages in governmental functions, it is generally entitled to immunity, but when it creates agencies or instrumentalities engaged in commercial activity, those entities "are akin to any other player in the market." *Republic of Congo*, 309 F.3d at 253.

The FSIA also identifies certain types of property as immune from attachment, regardless of whether an exception in Section 1610 would otherwise apply. In particular, the property of "a foreign central bank or monetary authority held for its own account" is exempt from attachment unless the bank or the foreign government has waived that immunity. 28 U.S.C. 1611(b)(1). Likewise, property that is used, or is intended to be used, in connection with a military activity is exempt from attachment, provided that the property is of a "military character" or under the control of the military or defense agency. 28 U.S.C. 1611(b)(2).

2. Respondent brought an action against the Islamic Republic of Iran and its Ministry of Information and Security (MIS), alleging that those entities were responsible for the wrongful death of his brother, Cyrus Elahi. See *Elahi* v. *Islamic Republic of Iran*, 124 F. Supp. 2d 97, 99 (D.D.C. 2000). The defendants failed to appear, and the district court entered an order of default. *Id.* at 99-100.

The FSIA does not permit the entry of a default judgment against a foreign state "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. 1608(e). In accordance with that requirement, the district court conducted a trial and found that respondent's evidence established that agents of the MIS murdered Cyrus Elahi at the behest of Iran. *Elahi*, 124 F. Supp. 2d at 105. The district court concluded that Iran lacked sovereign immunity from suit for the murder as a result of the FSIA's excep-

4

tion for terrorist acts, 28 U.S.C. 1605(a)(7).  124 F. Supp. at
106.[2]  The court further determined that respondent had
stated a cause of action against Iran under Section 589 of the
Foreign Operations, Export Financing, and Related Provi-
sions Appropriations Act, 1997, Pub. L. No. 104-208, Div. A,
§ 101(c) [Tits. I-V], 110 Stat. 3009-172 (28 U.S.C. 1605 note),
a provision sometimes referred to as the Flatow Act.  124 F.
Supp. 2d at 106.[3]  The court construed the Flatow Act to au-
thorize compensatory and punitive damages, *id.* at 109, and
awarded respondent $11,740,035 in compensatory damages
and $300,000,000 in punitive damages, *id.* at 115.

3.  Petitioner is the Ministry of Defense of the Islamic
Republic of Iran.  Before the 1979 Iranian revolution, peti-
tioner's predecessor entered into two contracts with Cubic
Defense Systems, a California firm, for certain military goods.
Pet. App. 5-6.  Following the revolution, Cubic did not deliver
the goods.  In 1991, in accordance with the contracts, peti-
tioner sought arbitration by the International Chamber of
Commerce (ICC) in Switzerland.  *Id.* at 6.  Petitioner pre-
vailed before the ICC and obtained an award of $2.8 million.
Petitioner later obtained a judgment confirming that award

---

[2]  Section 1605(a)(7) "creates an exception to the immunity of those
foreign nations officially designated by the Department of State as
terrorist states when that nation commits a terrorist act, or provides
material support and resources to an individual or entity that commits
such an act, resulting in the death or personal injury of a United States
national."  124 F. Supp. 2d at 106.  Cyrus Elahi was a United States
national.  *Id.* at 99.  Since 1984, the State Department has continuously
designated Iran as a state sponsor of terrorism.  See 49 Fed. Reg. 2836
(1984); 22 C.F.R. 126.1(d); 31 C.F.R. 596.201.

[3]  Petitioner (like many courts) refers to the Act as the "Flatow
Amendment."  The United States avoids that usage because it creates
the misimpression that the provision, which addresses the liability of
officials, employees, and agents of foreign states, amends the FSIA,
which governs suits against foreign states.  See 110 Stat. 3009-172.

5

in the United States District Court for the Southern District of California, pursuant to the Federal Arbitration Act's implementation of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, adopted June 10, 1958, 21 U.S.T. 2517. *Ibid.*; see 9 U.S.C. 207; *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran* v. *Cubic Def. Sys., Inc.*, 29 F. Supp. 2d 1168 (S.D. Cal. 1998).

After obtaining his default judgment against Iran and its MIS, respondent registered that judgment in the same court in which petitioner had obtained its judgment confirming its arbitration award against Cubic. Respondent then filed a notice of lien against petitioner's judgment against Cubic, in an amount equal to the compensatory damages he had been awarded. See 98-CV-1165 Notice of Lien 1-3 & Exh. A (S.D. Cal. filed Nov. 1, 2001) (Docket No. 67); Pet. App. 7.

Petitioner sought a ruling from the district court that the Cubic judgment was immune from attachment. Pet. App. 7. The district court, however, rejected petitioner's contentions. The court held that, by seeking arbitration and then by reducing the award to judgment, petitioner had waived its immunity to attachment. *Id.* at 58. The court therefore did not consider whether the attachment fell within the exception to that immunity in either 28 U.S.C. 1610(a)(7) or 1610(b)(2). Pet. App. 57 & n.9. The district court ruled that the Cubic judgment did not come within the military property exception to attachment, 28 U.S.C. 1611(b)(2), because petitioner admitted that the judgment would revert to Iran's central bank and petitioner failed to establish that the property "*is, or is intended to be*, used in connection with a military activity." Pet. App. 54 (quoting 28 U.S.C. 1611(b)(2)). The court further ruled that the judgment did not come within the FSIA's "central bank" exception, 28 U.S.C. 1611(b)(1), because that exception applies only to property "of a central bank * * * held for its own account." Pet. App. 55-56. The court also rejected

6

petitioner' collateral attack on the punitive damages portion of the default judgment against MIS because that challenge was not "jurisdictional in nature." *Id.* at 46. [4]

4. Petitioner sought appellate review of the district court's decision, and the court of appeals affirmed. See Pet. App. 19-37. The court of appeals stated at the outset that petitioner's voluntary resort to a United States court implicitly waived its sovereign immunity from jurisdiction—as petitioner itself conceded, *id.* at 21—but held that the waiver did not extend to the immunity of petitioner's property from attachment, *id.* at 22.

Although the district court had not decided the issue and respondent had not raised it on appeal, the court of appeals further ruled that the Cubic judgment is subject to attachment under Section 1610(b)(2), respecting property of an "agency or instrumentality of a foreign state," because petitioner is engaged in commercial activity in the United States and respondent's claim is one for which petitioner is not immune. Pet. App. 23-28. The court applied a "two-step analysis." *Id.* at 28. First, it concluded that the Cubic judgment falls under the exception to foreign sovereign immunity from attachment set out in 28 U.S.C. 1610(b)(2). Pet. App. 23-26. Second, it concluded that petitioner is liable for attachment of its property to enforce a judgment against Iran —notwithstanding the normal presumption under *First National City Bank* v. *Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611 (1983)(*Bancec*), that a foreign state and its "agency or instrumentality" have juridically separate statuses—because petitioner is a "central organ of the Iranian

---

[4] Another creditor, Stephen Flatow, also filed a lien against the Cubic judgment, Pet. App. 4, 7, but the district court issued an order striking that lien, see *id.* at 48-53, 60, and the court of appeals affirmed that order, *id.* at 10-18, 37. Flatow has not petitioned for certiorari.

7

government" and that therefore "the *Bancec* presumption of separate judicial status is overcome." Pet. App. 28.

The court of appeals concluded that the Cubic judgment is not exempt from attachment as either military property or the property of a central bank, essentially for the reasons given by the district court. Pet. App. 29-33. Finally, the court of appeals rejected petitioner's collateral attack on respondent's default judgment against Iran. *Id.* at 34-38.

## DISCUSSION

Petitioner presents three issues for this Court's review. The court of appeals erred in its resolution of the first issue. See Pet. 13-20. In holding that petitioner's judgment against Cubic is subject to attachment, the court relied on a provision of the FSIA, 28 U.S.C. 1610(b)(2), that was not relied upon by respondent in the court of appeals and that is at least presumptively inapplicable to property of a foreign state's defense ministry. We therefore suggest that the Court vacate the judgment of the court of appeals and remand the case to that court for further consideration of Question 1 in the petition. The court of appeals correctly decided the remaining two issues—whether the property qualifies for the "military property" exception to attachment (Pet. 20-22) and whether petitioner may collaterally attack the default judgment (Pet. 22-29). Those rulings do not warrant review by this Court.

### A. The Court Of Appeals Erred In Its Analysis Of The Appropriateness Of Attachment Under 28 U.S.C. 1610(b)(2)

The FSIA contains separate provisions addressing attachment of the property of a foreign state (28 U.S.C. 1610(a)) and attachment of the property of a foreign state's agencies and instrumentalities (28 U.S.C. 1610(b)). The distinction is undeniably important. The FSIA largely preserves the historic rule that the property of a foreign state is immune from attachment, relaxing that rule only if the property is "used for

8

a commercial activity in the United States" and other speci-
fied conditions are met. See 28 U.S.C. 1610(a). The FSIA
allows greater latitude for attachment, however, in the case
of the property of a foreign state's agencies and instrumental-
ities. Most significantly, it eliminates the requirement that
the property itself be "used for a commercial activity in the
United States." See 28 U.S.C. 1610(b).

The FSIA's distinction recognizes that a foreign state,
which typically owns and utilizes property for core govern-
mental purposes, is entitled to greater protection from attach-
ment than its agencies or instrumentalities, which are more
likely to be commercial entities that participate in the market-
place as equals with non-sovereign commercial entities. See
*Republic of Congo*, 309 F.3d at 253. *Execution against a for-
eign state's property* is a more significant affront to the state's
sovereignty than either the *adjudication* of a controversy
involving the foreign state or *execution against* the property
of a state's *agencies or instrumentalities*. See *id*. at 256; see
also H.R. Rep. No. 1487, *supra*, at 27 ("the enforcement [of]
judgments against foreign state property remains a somewhat
controversial subject").

Petitioner contends that it is a core component of the Ira-
nian government and therefore is subject only to the limited
exceptions to attachment set out in Section 1610(a), not a sep-
arate "agency or instrumentality" that is subject to the
broader exceptions set out in Section 1610(b). See Pet. 14.
There is considerable force to petitioner's contention.

1. The threshold question here is whether the Cubic
judgment, which is payable to petitioner—Iran's Ministry of
Defense—is property of an Iranian "agency or instrumental-
ity." The answer to that question depends on the FSIA's defi-
nitions of "foreign state" and "agency or instrumentality," see
28 U.S.C. 1603, and the relationship between Iran and its
Ministry of Defense.

9

The FSIA defines the term "foreign state" by inclusion. See 28 U.S.C. 1603(a). Section 1603(a) provides that:

> A "foreign state", except as used in section 1608 of this title [addressing service of process], includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined by subsection (b).

28 U.S.C. 1603(a). Under that definition, the term "foreign state," as used in the FSIA's attachment provisions, necessarily includes a foreign state's ministry of defense. A defense ministry, which coordinates a nation's military operations, engages in a quintessential core sovereign function and is presumptively inseparable from the foreign state itself. See *Transaero, Inc.* v. *La Fuerza Aerea Boliviana*, 30 F.3d 148, 151-153 (D.C. Cir. 1994), cert. denied, 513 U.S. 1150 (1995).

Iran's Ministry of Defense, like its Ministry of Foreign Affairs, is part of the Iranian "foreign state." See *Roeder* v. *Islamic Republic of Iran*, 333 F.3d 228, 234-235 (D.C. Cir. 2003) (holding that the Iranian Ministry of Foreign Affairs was to be "treated as the state of Iran itself rather than as its agent" because "[t]he conduct of foreign affairs is an important and 'indispensable' governmental function") (quoting *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144, 160 (1963)), cert. denied, 542 U.S. 915 (2004). Petitioner is therefore subject to the limited exceptions to immunity from attachment set out in Section 1610(a).

The question remains, however, whether petitioner is also subject to exceptions that pertain only to an "agency or instrumentality" of a foreign state. The FSIA defines an "agency or instrumentality" restrictively. See 28 U.S.C. 1603(b). Section 1603(b) states in relevant part:

> An "agency or instrumentality of a foreign state means any entity—

10

> (1) which is a separate legal person, corporate or
> otherwise, and
>
> (2) which is an organ of a foreign state or political
> subdivision thereof, or a majority of whose shares
> or other ownership interest is owned by a foreign
> state or political subdivision thereof.

28 U.S.C. 1603(b). See *Dole Food Co.* v. *Patrickson*, 538 U.S. 468, 473 (2003). That definition makes clear that, for purposes of the FSIA, a foreign governmental entity cannot qualify as an "agency or instrumentality" unless it is a "separate legal person." 28 U.S.C. 1603(b)(1).

The FSIA's definition of "agency or instrumentality" reflects the understanding that, over the last century, "governments throughout the world have established separately constituted legal entities to perform a variety of tasks." *Bancec*, 462 U.S. at 624.[5] Such an entity typically does not engage in core governmental functions, but instead is "run as a distinct economic enterprise." *Ibid.* Consequently, an instrumentality is able to operate with "a greater degree of flexibility and independence from close political control" than entities that are not separate from the state. *Id.* at 624-625.

It would be extraordinary for a foreign state to constitute its ministry of defense as a "separate legal person," 28 U.S.C. 1603(b)(1), with "independence from close political control," *Bancec*, 462 U.S. at 624. A foreign state's organization of its

---

[5] While those instrumentalities take many forms, they are "typically established as a separate juridical entity, with the powers to hold and sell property and to sue and be sued. Except for appropriations to provide capital or to cover losses, the instrumentality is primarily responsible for its own finances." *Bancec*, 462 U.S. at 624. See *id.* at 625-626 ("[T]he instrumentality's assets and liabilities must be treated as distinct from those of its sovereign in order to facilitate credit transactions with third parties.").

11

defense ministry as a "separate" entity would, by definition, provide the foreign state with diminished control over a core sovereign function. In addition, a foreign state's constitution of its ministry of defense as a "separate legal person" would subject the ministry to diminished immunity from suit and attachment of its property in foreign countries in which it may have a presence.[6] Petitioner's protestation that the court of appeals erred in treating it as an "agency or instrumentality" would appear, accordingly, to be justified, and the court's ruling that petitioner is subject to the exceptions to immunity from attachment in Section 1610(b) would appear, correspondingly, to be incorrect.[7]

---

[6] The *Transaero* court concluded that the prospect that a foreign state would organize its armed forces as a "separate legal person" is so improbable that it adopted a categorical rule that the armed forces should always be treated as part of the foreign state. See *Transaero*, 30 F.3d at 151-153. But even if a foreign state conceivably might formally organize its ministry of defense as a "separate legal person," cf. *id.* at 156 (Mikva, J., dissenting), there should be, at a minimum, a strong presumption that it has not.

[7] The court of appeals held that the Cubic judgment was subject to attachment under Section 1610(b) because petitioner's predecessor had engaged in commercial activity in the United States. Pet. App. 24. If petitioner is not an "agency or instrumentality," the Cubic judgment would be subject to attachment only if it satisfied the requirement in Section 1610(a) that the attached property be "used for a commercial activity." 28 U.S.C. 1610(a). As the district court observed, that would be a "thornier" basis for attachment. Pet. App. 57 n.9. Resolution of that question would require a determination whether merely obtaining a money judgment qualifies as "use[] for a commercial activity," 28 U.S.C. 1610(a), where the military goods to be acquired by petitioner pursuant to the contract on which the judgment was based were not themselves to be used for commercial purposes. See 28 U.S.C. 1603(d) ("The commercial character of an activity shall be determined by reference to the nature of * * * [the] act.").

12

2.  The court of appeals' disposition is difficult to square not only with the very nature of a foreign state's defense ministry, as just explained, but also with the course of proceedings in the court of appeals.  The district court did not consider whether the attachment was authorized by the exception to immunity in either 28 U.S.C. 1610(a)(7) or 28 U.S.C. 1610(b)(2), because it held that petitioner had waived its immunity from attachment by submitting to arbitration and then seeking confirmation of the arbitration award.  Pet. App. 57-58 & n.9.  In its opening brief on appeal, petitioner challenged that waiver determination and argued as well that the property was immune under the military and central-bank provisions.  See Pet. C.A. Br. 2-3 (questions presented).  Petitioner did not address the applicability of 28 U.S.C. 1610(a)(7) or 28 U.S.C. 1610(b)(2), perhaps because the district court had not done so.

In his brief as appellee, respondent disagreed with the arguments in petitioner's brief and also argued, *inter alia*, that the Cubic judgment is subject to attachment under 28 U.S.C. 1610(a)(7) because it was "used for a commercial activity in the United States" and his own judgment against Iran "relate[d] to a claim for which the foreign state is not immune" under Section 1605(a)(7) (the antiterrorism provision).  See Resp. C.A. Br. 7-8, 45-50.  Respondent did not argue that petitioner is a mere "agency or instrumentality" of the government of Iran and that the judgment therefore is also subject to attachment under 28 U.S.C. 1610(b)(2).[8]  In its reply brief, petitioner contended that the judgment is not subject to attachment under 28 U.S.C. 1610(a)(7).  Pet. C.A. Reply Br. 25-27.  But presumably because respondent did not rely on

---

[8]  Respondent did assert in a footnote (see Resp. C.A. Br. 45 n.27) that, *if* petitioner is considered an agency or instrumentality of Iran, the attachment would still be valid because other conditions for application of the exception in 28 U.S.C. 1610(b)(2) were satisfied.

13

Section 1610(b)(2) as an independent basis for the attachment, respondent did not discuss at any length whether petitioner is an "agency or instrumentality" of the Iranian government whose property would be subject to attachment under that provision.[9] Petitioner did note, however, that Section 1610(a), on which respondent had relied in its brief as appellee, concerns "property belonging directly to a foreign state" and "permits execution only narrowly," whereas Section 1610(b) "is broader." *Id*. at 26; see *id*. at 27 (Section 1610(a) "means what it says: property of a foreign sovereign, unlike property of a mere agency or instrumentality, may be executed against only if it is 'used for' a commercial activity.").

Given the way the parties presented the case on appeal, it is puzzling that the court of appeals failed to consider the applicability of Section 1610(a)(7), which respondent had expressly identified as an alternative ground for affirmance, and instead proceeded to hold that the property is subject to attachment under Section 1610(b)(2), on which respondent had not relied as an alternative ground for affirmance. The court did so, moreover, without even adverting to the critical antecedent question of whether petitioner falls within the FSIA's definition of an "agency or instrumentality" covered by Section 1610(b)(2). Perhaps because the parties had not addressed the applicability of Section 1610(b)(2) as an independent basis for the attachment, the court overlooked that critical distinguishing feature of Section 1610(b)(2).

Petitioner, however, then failed to avail itself fully of an opportunity to correct those errors. For although petitioner filed a petition for rehearing, it did not raise the antecedent

---

[9] Petitioner discussed Section 1610(b)(2) only to the extent of contrasting the prerequisite for its application (that the agency or instrumentality is engaged in commercial activity in the United States) with that of Section 1610(a)(7) (that the property itself is used for a commercial activity). Pet. C.A. Reply Br. 10.

14

point that Section 1610(b)(2) is altogether inapplicable be-
cause petitioner is not a mere agency or instrumentality of
Iran, but rather is a core component of the Iranian govern-
ment itself. Instead, petitioner argued only that Section
1610(b)(2) does not justify the attachment because petitioner
was not "engaged in commercial activity" in the United
States. See C.A. Pet. for Reh'g 2-11. Petitioner did further
state, however, that it was also seeking rehearing on the
ground that it had been precluded from discussing the appli-
cation of Section 1610(b)(2) on appeal because it reasonably
assumed that the application of Section 1610(b)(2) "had been
put to rest by the decision in the District Court and the fail-
ure of [respondent] to raise it" in his brief as appellee. *Id.* at
2; see also *id.* at 10.

It is regrettable that petitioner did not present in its re-
hearing petition the argument it now presents to this
Court—*viz.*, that Section 1610(b)(2) is altogether inapplicable
because petitioner is not a mere agency or instrumentality of
the Iranian government. The court of appeals might well
have revised its decision in response to such a petition. That
prospect would have been particularly likely had petitioner
coupled that argument with the point (which it did make in its
rehearing petition) that respondent did not even rely on Sec-
tion 1610(b)(2) in the court of appeals, and if petitioner had
further explained that it is exceedingly unlikely that a foreign
state's ministry of defense would be a mere agency or instru-
mentality, possessing a legal status that is separate from the
state itself. Indeed, the court of appeals itself concluded else-
where in its opinion, in holding that the presumption of juridi-
cally separate status of an agency or instrumentality had been
overcome under *Bancec*, that petitioner "is a central organ of

15

the Iranian government under direct control of the govern-
ment." Pet. App. 28.[10]

Still, the fact remains that the court of appeals does ap-
pear to have erred, on both procedural and substantive
grounds, in holding that Section 1610(b)(2) rendered the prop-
erty at issue here subject to attachment. And petitioner
should not be deemed to have forfeited any objections to that
ruling by not raising them, or arguing them more fully, in its
rehearing petition. Respondent has not suggested otherwise.

### B. The Court Should Grant, Vacate, And Remand For Further Consideration Of Whether Attachment Is Appropriate Under 28 U.S.C. 1610(b)(2)

The court of appeals' decision is of concern to the United
States because of the effect it may have on the attachment of
the assets of central organs of foreign governments, or on the
service of process on such entities under Section 1608, which
sets forth different rules for agencies and instrumentalities.
See *Transaero*, *supra*. The United States is also concerned
because of the possibility of reciprocal treatment in foreign
courts of the assets held or used by this Nation's Depart-
ments of Defense and State. And more generally, because of
the sensitivity of questions concerning the immunity of for-
eign states and their property, the United States has an inter-
est in ensuring that courts in the United States are especially
careful in their application of the FSIA, that they afford for-
eign states full procedural protections in the adjudication of
claims of immunity, and that the courts satisfy themselves

---

[10] Petitioner does not argue in its certiorari petition that Section
1610(b)(2) permits attachment of the property of an entity that actually
*is* an "agency or instrumentality" only to satisfy a judgment entered
against that particular agency or instrumentality, and not to satisfy a
judgment entered against the foreign state itself. Accordingly, the
United States expresses no view on such a contention.

16

that the prerequisites for the exercise of jurisdiction over foreign states and attachment of their property are present before they exercise that judicial power. Finally, the Ninth Circuit's ruling—even though rendered without express analysis of whether petitioner is an "agency or instrumentality" of the Iranian government—is in considerable tension with the D.C. Circuit's holding in *Transaero* that a foreign state's armed forces are categorically to be regarded as inseparable from the foreign state itself, not as an agency or instrumentality thereof. See 30 F.3d at 151-153.

At the same time, plenary review is not required at the present time. Contrary to petitioner's assertion, we do not perceive a pattern of "analytic confusion" (Pet. 14) respecting Section 1610(a) and (b) in the courts of appeals. In particular, we do not agree with petitioner's contention that two other courts of appeals have "replicated" the court of appeals' apparent error. Pet. 15 (citing *Walker Int'l Holdings Ltd.* v. *Republic of Congo*, 395 F.3d 229 (5th Cir. 2004), cert. denied, 125 S. Ct. 1841 (2005), and *Alejandre* v. *Telefonica Larga Distancia, Inc.*, 183 F.3d 1277 (11th Cir. 1999)).[11] In addition,

---

[11] In *Walker*, a judgment creditor of the Congo sought to attach funds owed to the foreign state and its national oil company. The Fifth Circuit held that property belonging to the Congo was not subject to attachment under Section 1610(a) because the property was not used for a commercial activity in the United States. 395 F.3d at 235. The judgment creditor asserted that the national oil company was either the Congo's alter ego, or it was an agency or instrumentality. Without deciding the company's status, the Fifth Circuit held that its property was not attachable under either theory. If the company were the Congo's alter ego, then the property could not be attached under Section 1610(a) because the property was not used for commercial activities in the United States. *Id.* at 237-238. Alternatively, if the company were an agency or instrumentality of the Congo, its property could not be attached under Section 1610(b) because plaintiff failed to show that the criteria of that section were satisfied. *Id.* at 237.

In *Alejandre*, judgment creditors of Cuba sought to enforce their

17

because the Ninth Circuit's decision does not analyze the antecedent question of whether petitioner is an "agency or instrumentality" of Iran, there may be some uncertainty concerning the extent to which it will be regarded as binding precedent on that issue. And precisely because neither the Ninth Circuit nor the district court analyzed that question, the record and procedural posture of this case make it less than ideal as a vehicle for plenary review.

Under these circumstances, it would be appropriate for the Court to grant the petition as to Question 1 in the certiorari petition, vacate the judgment of the court of appeals, and remand the case to that court for consideration in the first instance of whether respondent adequately raised the question of the applicability of Section 1610(b)(2) in the court of appeals and, if so, whether petitioner is an "agency or instrumentality" of Iran whose property is subject to attachment under that Section. In the alternative, the Court could vacate the judgment of the court of appeals and remand to that court for further consideration in light of the position of the United States on that question in this brief. See, *e.g.*, *Oberly* v. *Baltimore & Ohio R.R.*, 479 U.S. 980 (1986).[12]

---

judgment by attaching funds owed to a Cuban telecommunications company. The district court determined that the company was an agency or instrumentality of Cuba, and the company did not challenge that conclusion on appeal. 183 F.3d at 1283. The judgment creditors asserted that attachment was available under Section 1610(a). *Ibid.* However, the Eleventh Circuit held that, as an instrumentality, the company enjoyed a presumption of juridical separateness from the foreign state under the *Bancec* decision. *Id.* at 1283-1284. Because the judgment creditors did not overcome the presumption of separateness, the company could not be held substantively liable for the judgment against Cuba, and its property could not be attached. *Id.* at 1286.

[12] If the court of appeals concludes on remand that Section 1610(b)(2) is unavailable as a basis for attachment, it could then consider whether the attachment is authorized by Section 1610(a)(7) (see note 7, *supra*),

18

### C. The Other Questions Presented In The Petition Do Not Merit Review

1.  Petitioner contends that the court of appeals erred in its application of the provisions of the FSIA that categorically exclude from attachment any property of a foreign state that "is, or is intended to be, used in connection with a military activity" and that "is of a military character" or "is under the control of a military authority or defense agency." 28 U.S.C. 1611(b)(2). Petitioner contends that the court held that the Cubic judgment would not come within the military property exception to attachment even if the funds were "destined to fund military activities." Pet. 21 (quoting Pet. App. 30 n.19). That argument, which relies on mere dicta, does not accurately characterize the court of appeals' decision. The court held that the exception is inapplicable because petitioner has not made the required showing that "any proceeds from the Cubic judgment are to be used in any way related to Iran's military activities." Pet. App. 30. Rather, "[petitioner's] only statements regarding the future of any monies stemming from the judgment [are] that they are to revert to Iran's Central Bank." *Ibid.* Petitioner does not dispute the court of appeals' assessment, and its failure to show that the funds will be "used in connection with a military activity" is fatal to its claim that the Cubic judgment is immune from attachment under the military property exception.

2.  Petitioner is also mistaken in its contention that the court of appeals should have allowed its collateral attack on respondent's default judgment. Petitioner argues that the D.C. District Court improperly awarded respondent punitive damages against Iran's MIS. Pet. 25. The FSIA prohibits the award of punitive damages against a foreign state, but it permits such awards against a state's agencies or instrumentali-

---

which respondent invoked as an alternative ground for affirmance.

19

ties. 28 U.S.C. 1606. The district court awarded punitive damages against the MIS based on its conclusion that the MIS is an agency or instrumentality of Iran. *Elahi*, 124 F. Supp. 2d at 113-114. Petitioner contends that the MIS is part of the Iranian state and not one of its agencies or instrumentalities. Pet. 25. Petitioner further contends that it may attack the punitive damages award because an award of punitive damages under Section 1606 implicates the district court's subject matter jurisdiction. Pet. 26. Those contentions are irrelevant here. Respondent's lien on the Cubic judgment is only for an amount equal to the *compensatory* portion of his judgment against Iran. See 98-CV-1165 Notice of Lien 2 & Exh. A, *supra*. Thus, this attachment proceeding in no way implicates respondent's punitive damages award against the MIS.

Petitioner also contends that respondent's default judgment was based on an invalid underlying cause of action and is, for that reason, void. Respondent asserted a cause of action under the Flatow Act. See p. 4, *supra*. Four years after the default judgment was entered, the D.C. Circuit held that "neither 28 U.S.C. § 1605(a)(7) nor the Flatow Amendment, nor the two considered in tandem, creates a private right of action against a foreign government." *Cicippio-Puleo* v. *Islamic Republic of Iran*, 353 F.3d 1024, 1033 (D.C. Cir. 2004). Thus, in light of *Cicippio-Puleo*, respondent's default judgment was based on an invalid cause of action.

As a general matter, "[a] defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982). But such a collateral attack can only rely on truly jurisdictional grounds, and petitioner's argument based on *Cicippio-Puleo* is not such an argument.

20

The court of appeals properly determined that the D.C. District Court had *jurisdiction* over respondent's action because the United States designated Iran as a state sponsor of terrorism, and respondent's suit against Iran was for "money damages * * * for personal injury or death that was caused by an act of * * * extrajudicial killing" by an "agent of" Iran that was acting within the scope of its agency. Pet. App. 36-37; see 28 U.S.C. 1605(a)(7) (2000 & Supp. II 2002). While the default judgment was erroneous because it was based upon an invalid cause of action, "[a] judgment is not void merely because it is erroneous. It is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2862, at 326-329 (2d ed. 1995) (footnotes omitted). Because petitioner did not show that the district court lacked subject-matter jurisdiction to enter the default judgment, the court of appeals properly denied the collateral challenge.[13]

## CONCLUSION

The petition for a writ of certiorari should be granted, the judgment of the court of appeals vacated, and the case remanded to the court of appeals for further consideration of Question 1 in the petition, as suggested in this brief. In all other respects, the petition should be denied.

Respectfully submitted.

---

[13] Petitioner asserts that the court of appeals' decision is in "conflict[]" (Pet. 10) with or "rejected" (Pet. 27) the *Cicippio* decision. But as the Ninth Circuit observed (Pet. App. 37), the D.C. Circuit itself recognized in *Cicippio* that the absence of a cause of action does not affect a district court's jurisdiction under the FSIA. See, *e.g.*, *Cicippio*, 353 F.3d at 1034 ("The [FSIA] thus confers subject matter jurisdiction on federal courts over such lawsuits [brought under Section 1605(a)(7)], but does not create a private right of action.").

21

PAUL D. CLEMENT
    *Solicitor General*
PETER D. KEISLER
    *Assistant Attorney General*
EDWIN S. KNEEDLER
    *Deputy Solicitor General*
JEFFREY P. MINEAR
    *Assistant to the Solicitor
    General*
JOHN B. BELLINGER, III          DOUGLAS N. LETTER
    *Legal Adviser*             LEWIS S. YELIN
    *Department of State*           *Attorneys*

DECEMBER 2005