## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JENNY RUBIN, et al. | ) | |
| | ) | |
| Plaintiffs – Judgment Creditors, | ) | |
| v. | ) | |
| | ) | |
| THE ISLAMIC REPUBLIC OF IRAN, et al. | ) | |
| | ) | Case No.: 05-MC-10079 (GAO) |
| Defendants – Judgment Debtors, | ) | |
| v. | ) | |
| | ) | |
| MUSEUM OF FINE ARTS, HARVARD UNIVERSITY, et al. | ) | |
| | ) | |
| Trustee Process Respondents. | ) | |
| | ) | |

## NOTICE OF FILING BY UNITED STATES IN A RELATED CASE

The United States has filed a Statement of Interest in a proceeding in the United States

District Court for the Northern District of Illinois, *Rubin v. Islamic Republic of Iran*, No. 03-CV-

9370 (the "Chicago case"), supporting the position of Citation Respondents there—and also the

position of Trustee Process Respondents here—that the court must consider the immunity from

attachment of a foreign sovereign's property even if the sovereign does not appear in court to

assert that immunity.[1] *Second Statement of Interest of the United States* in *Rubin v. Islamic*

*Republic of Iran*, No. 03-CV-9370 (filed Mar. 3, 2006), *attached as* Exhibit A.[2]  The United

---

[1] The Department of Justice has indicated to undersigned counsel that it has no objection to Trustee Process Respondents' noticing its filing in this Court.

[2] The first Statement of Interest filed by the United States in the Chicago case explained that the antiquities in the University of Chicago's collection are immune from execution or attachment, and that no exception in the FSIA or Terrorism Risk Insurance Act defeats that immunity.  See Ex. B to *Harvard Memorandum In Support Of Motion To Quash Summons And To Dissolve Attachment By Trustee Process* (filed June 27, 2005) ("Harvard Motion to Quash Summons").

States concludes that, since the property of a foreign sovereign is presumptively immune, the

burden is on plaintiffs to establish that one of the statutory exceptions to immunity applies.  It

recommends that the district court "accept the Citation Respondent's Objections to the opinion

of the Magistrate Judge and reverse that opinion as an abuse of discretion."  *Id.* at 15.[3]

     Trustee Process Respondents respectfully submit the Second Statement of Interest to this

Court regarding the Court's power to consider the immunity from attachment, under the FSIA, of

the antiquities in Respondents' collections.[4]  The United States is well aware of the nation's

obligations under international law, and is uniquely placed to determine the interpretation of the

FSIA that comports with those obligations.[5]  See *Second Statement of Interest* at 2 ("[T]he

United States has significant foreign policy interests in ensuring that principles of foreign

sovereign immunities are properly interpreted and applied and . . . believes that the Magistrate

Judge abused his discretion when he refused to impose any burden on the plaintiffs in the

circumstances of this case to demonstrate their entitlement to the properties they seek to attach

solely because of the foreign sovereign's absence."); *Verlinden B.V. v. Central Bank of Nigeria*,

461 U.S. 480, 493 (1983) ("Actions against foreign sovereigns in our courts raise sensitive issues

---

[3] The district court judge has permitted plaintiffs to file a response, due April 10, 2006, so a ruling on the Report and the Citation Respondents' Objections thereto is not imminent.

[4] The magistrate's opinion to which the Second Statement of Interest refers was filed with this Court by Plaintiffs on December 20, 2005.  Trustee Process Respondents filed a response, explaining that the magistrate had wrongly dismissed persuasive and directly relevant federal appellate authority (*Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 233 (5th Cir. 2004)), and had disregarded the background and function of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 ("FSIA"), when he concluded that he could not consider the immunity from attachment of antiquities in the respondent museums' possession unless Iran appeared in court to assert that immunity.  See *Trustee Process Respondents' Joint Response To Plaintiffs' Notice Of Relevant Authority* (filed December 28, 2005).

[5] International law is relevant to the interpretation of the FSIA both because Congress' purpose in enacting the statute was to codify international law, and in light of the principle that an ambiguous statute must be interpreted so as not to conflict with international law.  See generally *Harvard Motion to Quash Summons* at 12-17.

concerning the foreign relations of the United States, and the primacy of federal concerns is evident."). In light of the Statement, and for the reasons given in Trustee Process Respondents' prior filings, this Court should conclude that the antiquities in Respondents' collections, even assuming that they belong to Iran, are presumptively immune from attachment, and that Plaintiffs therefore bear the burden of establishing that a statutory exception to immunity applies. Plaintiffs cannot carry that burden, so this Court should grant Trustee Process Respondents' motions to quash the summons and to dissolve the attachment.

Respectfully submitted,

/s/Paul R.Q. Wolfson_____

Paul R.Q. Wolfson (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE
  AND DORR LLP
2445 M Street N.W.
Washington, DC  20037
(202) 663-6000

Mark C. Fleming (BBO # 639358)
Timothy R. Shannon (BBO # 655325)
WILMER CUTLER PICKERING HALE
  AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

*Attorneys for President and Fellows of*
  *Harvard College*

March 24, 2006

/s/William D. Iverson_____

Robert J. Muldoon, Jr. (BBO # 359480)
Courtney A. Clark  (BBO # 651381)
SHERIN & LODGEN LLP
101 Federal Street
Boston, MA  02110
Tel: (617) 646-2000
Fax: (617) 646-2222

William D. Iverson (admitted *pro hac vice*)
Jason M. Knott (admitted *pro hac vice*)
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel: (202) 662-6000
Fax: (202) 778-5549

*Attorneys for Museum of Fine Arts*

March 24, 2006

US1DOCS 5578100v3

## <u>CERTIFICATE OF SERVICE</u>

       I, Timothy R. Shannon, attorney for Trustee Process Respondent the President and Fellows of Harvard College, hereby certify that on March 24, 2006, I caused a true and accurate copy of the this document to be served on counsel for the parties:

       ***<u>Counsel for the Plaintiffs:</u>***

       Richard J. Grahn, Esq. (via electronic notification)
       Edward V. Colbert III, Esq.
       Georgia J. Asimakopoulos, Esq.
       Looney & Grossman LLP
       101 Arch Street
       Boston, MA 02110

       David J. Strachman, Esq. (via electronic notification)
       McIntyre, Tate, Lynch & Holt
       321 South Main Street, Ste. 400
       Providence, RI 02903

       ***<u>Counsel for Trustee Process Respondent, MFA:</u>***

       Robert J. Muldoon, Jr., Esq. (via electronic notification)
       Courtney A. Clark, Esq.
       Sherin & Lodgen LLP
       101 Federal Street
       Boston, MA 02110

       William D. Iverson, Esq. (via electronic notification)
       Jason M. Knott, Esq.
       Covington & Burling
       1201 Pennsylvania Avenue, N.W.
       Washington, DC 20004

                       _/s/ Timothy R. Shannon_____
                       Timothy R. Shannon (BBO #655325)

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JENNY RUBIN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 03-cv-9370 |
| | ) | |
| v. | ) | Judge Blanche M. Manning |
| | ) | |
| THE ISLAMIC REPUBLIC OF IRAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND STATEMENT OF INTEREST OF THE UNITED STATES

### INTRODUCTION

Plaintiffs herein seek to execute on the judgment rendered in their favor against the

Government of Iran in <u>Jenny Rubin, et al. v. Islamic Republic of Iran, et al.</u>, Civil Action No. 01-

1655 (D.D.C.) (RMU), by attaching or otherwise restraining the transfer of certain ancient

Persian artifacts held by the University of Chicago and the Field Museum of Natural History.

Plaintiffs assert that these artifacts belong to the Government of Iran and thus must be made

available to satisfy plaintiffs' judgment under the terms of the Foreign Sovereign Immunities Act

("FSIA"), codified in relevant part at 28 U.S.C. § 1330, 1602-1611.  On December 15, 2005,

Magistrate Judge Martin C. Ashman issued an opinion granting plaintiff's Motion for Partial

Summary Judgment and finding that "as a matter of law, no party other than Iran may assert

Iran's sovereign immunity under Sections 1609 and 1610 of the FSIA."  Memorandum Opinion

and Order (hereinafter "Mem. Op."), Docket No. 123.  Citation Respondents have objected to

this opinion of the Magistrate Judge.  <u>See</u> Docket Nos. 126, 128.  On January 6, 2006, the United

States of America, which is not a party to these proceedings but which previously filed a

Statement of Interest on July 28, 2004 (Docket No. 20),[1] advised the Court that it was considering making a supplemental filing. Docket No. 125.

The United States now appears again at this stage of the proceedings because – although it is the official policy of the United States to encourage foreign sovereigns to appear when their interests are threatened in U.S. courts to defend those interests – the United States has significant foreign policy interests in ensuring that principles of foreign sovereign immunities are properly interpreted and applied and, moreover, believes that the Magistrate Judge abused his discretion when he refused to impose any burden on the plaintiffs in the circumstances of this case to demonstrate their entitlement to the properties they seek to attach solely because of the foreign sovereign's absence. The United States takes no position on the merits of this dispute. Nor is it defending Iran's behavior. Nevertheless, the decision of the Magistrate Judge, if it is upheld and applied in later stages of these proceedings, undercuts the purposes intended to be served by the Foreign Sovereign Immunities Act, denies to a foreign sovereign the "grace and comity" to which it is ordinarily entitled, and threatens the foreign policy interests of the United States. Because the Court should exercise its discretion to ensure that plaintiffs have met their burden of demonstrating entitlement to the properties at issue here before it orders their turnover, the United States urges that the Court uphold the objections to the opinion of the Magistrate Judge that have been raised by the Citation Respondents.

## ARGUMENT

In these post-judgment proceedings, plaintiffs have focused their efforts on seeking

---

[1] The United States is authorized by 28 U.S.C. § 517 to appear in proceedings in which it is not a party to "attend to the interests of the United States." The submission of a Statement of Interest does not constitute an intervention in this action but is the equivalent of an amicus curiae brief. See Flatow v. Islamic Republic of Iran, 305 F.3d 1249, 1252-53 & n.5 (D.C. Cir. 2002).

attachment of Iranian property under Section 1610(a)(7) of the FSIA, which allows foreign

sovereign property to be attached in satisfaction of a judgment entered against a foreign

sovereign pursuant to 28 U.S.C. § 1605(a)(7),[2] if that property is used for a commercial activity

in the United States.  See 28 U.S.C. § 1610(a).  In November 2004, in the context of a discovery

dispute, the Magistrate Judge quashed plaintiffs' discovery requests served on the Citation

Respondents and aimed at discovering whether the Citations Respondents were using the

artifacts for commercial purposes.  The Magistrate Judge, applying controlling law, correctly

found that under Section 1610(a), it is the use to which the property is put by the foreign

sovereign, and not by any U.S. possessor, which controls the application of the exception

provisions of the FSIA.  Docket No. 32.  In March 2005, the District Court affirmed this order

over plaintiffs' objections, finding that "[Magistrate] Judge Ashman did not err in holding that

foreign property is immune from execution of judgments unless it is used by the foreign country

for a commercial purpose."  Docket No. 52.

As the United States previously demonstrated in its earlier Statement of Interest, as

argued by the Citation Respondents, and as recognized by the Magistrate Judge, "[s]ignificantly,

Iran has not been shown to have engaged in commercial activity as to the items in question."

Mem. Op. at 3, see also Statement of Interest of the United States, Docket No. 20, at 11-13.[3]

---

[2] Section 1605(a)(7) is the so-called terrorism exception to the ordinary immunity
accorded to foreign sovereigns in U.S. courts, and creates an exception to foreign sovereign
immunity in those cases in which "money damages are sought against a foreign sovereign for
personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft
sabotage, hostage taking, or the provision of material support or resources . . . for such an act"
under certain circumstances.  Plaintiffs' judgment in the United States District Court for the
District of Columbia was jurisdictionally based on this provision.

[3] The United States's earlier Statement of Interest specifically articulated the argument
that the artifacts at issue in these proceedings are not subject to attachment under the FSIA.  See
Statement of Interest, at 11-13.  The Magistrate Judge reasons that he "fails to discern [from this

Thus, there has been no demonstration that the property plaintiffs seek to attach in these proceedings meets the threshold statutory requirement of the FSIA.  Plaintiffs, however, contend that they need not make any such demonstration because the sovereign had not appeared in these proceedings and no one else has "standing" to raise the sovereign's immunity.

The Magistrate Judge, in his December 15, 2005, opinion agreed with this argument.  The Magistrate Judge's opinion is grounded in his finding that sovereign immunity is an affirmative defense that is personal to the sovereign and as to which the sovereign bears the burden.  See Mem. Op. at 11 ("an exemption from attachment must be affirmatively raised, and it is the judgment debtor who bears the burden of proof"); see also id. (describing the reasons why "putting this burden on the debtor makes sense").  Thus, the Magistrate Judge expressed concern that considering the sovereign immunity of Iran in its absence would "impermissibly force[] this Court to consider affirmative defenses sua sponte and impermissibly force[] Plaintiffs to shoulder the burden of disproving affirmative defenses not even raised by Defendant."  Id. at 10.  The Magistrate Judge characterized Citation Respondents' arguments to the contrary as reaching an "absurd conclusion."  Id.

The Magistrate Judge's opinion in these respects is flawed.  The statutory presumption of

_____

Statement and past practice in FSIA cases] a clear desire by the Executive Branch to prevent the attachment of property of foreign states."  Mem. Op. at 16.  It is true that the United States is not interested in preventing the attachment of property of foreign states per se when attachment is consistent with U.S. treaty obligations and the FSIA.  But the United States has a significant interest, as articulated herein and in its earlier submission, in ensuring that when foreign sovereign property is ordered attached, such orders are issued in strict compliance with the terms of the FSIA, which allows for consideration of treaty provisions, see 28 U.S.C. § 1609, and was intended to provide comprehensive rules governing the immunity of foreign sovereigns and carefully balanced the various competing interests.  The Magistrate Judge here, however, appears to disregard as unimportant the limitations contained in that statute and to ignore the good-faith attempts by Citation Respondents to ensure that those limits are acknowledged.  In taking such a stance, the Magistrate Judge erred.

- 4 -

sovereign immunity is applicable to the property at issue in these proceedings and plaintiffs should have been required to meet their burden of demonstrating that one of the statutory exemptions to that presumption applies, regardless of the presence of the foreign sovereign in this litigation. This is so for a number of reasons. First, the FSIA codifies, as a matter of substantive law, the interests of "grace and comity" that are the underpinnings of the doctrine of foreign sovereign immunity. See Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 486 (1983) ("foreign sovereign immunity is a matter of grace and comity on the part of the United States"). Moreover, "[a]ctions against foreign sovereigns in our courts raise sensitive issues concerning the foreign relations of the United States, and the primacy of federal concerns is evident." Id. at 493. Thus, the FSIA contains "a comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state or its political subdivisions, agencies or instrumentalities," id. at 488, and, critically, "specifies the circumstances under which attachment and execution may be obtained against the property of foreign states." Id. at 495 n.22. In all cases – whether the topic is a sovereign's immunity from suit or the immunity of a sovereign's property – the baseline presumption adopted by the FSIA is that the sovereign is immune. See, e.g., 28 U.S.C. §§ 1604, 1609; see also id. § 1611 (describing additional immunities).

Citation Respondents have correctly noted that the attachment provisions of the FSIA are a significant departure from the traditional practice. Historically, both sovereigns and their property have been considered completely immune from judicial proceedings in the United States. See Verlinden, 461 U.S. at 486 (citing The Schooner Exchange v. McFaddon, 7 Cranch. 116, 3 L. Ed. 287 (1812)). In 1952, the State Department rejected its traditional embrace of absolute sovereign immunity and instead adopted the so-called "restrictive theory" of sovereign

immunity, which allowed U.S. courts to hold foreign sovereigns liable for their commercial acts, but not for their public acts.  See Verlinden, 461 U.S. at 486-87.  This alteration of historical practice, however, "did nothing to modify the complete immunity enjoyed by foreign sovereigns from execution against their property."  H.R. Rep. No. 94-1487, at 3 (1976); see also Connecticut Bank of Commerce v. Republic of Congo, 309 F.3d 240, 252 (5th Cir. 2002).

The Foreign Sovereign Immunities Act ("FSIA"), codified in relevant part at 28 U.S.C. §§ 1330, 1602-1611, implemented the restrictive theory of sovereign immunity as a matter of substantive law.  The FSIA preserved the traditional distinction between two different aspects of sovereign immunity: jurisdictional immunity – that is, a foreign sovereign's immunity from actions brought in United States courts – and immunity from attachment – a foreign sovereign's immunity from having its property attached or executed upon.  With respect to attachment immunity, the FSIA departs from the long-standing practice of affording complete immunity to foreign sovereign property and, instead, "partially lower[s] the barrier of immunity from execution, so as to make this immunity conform more closely with the provisions on jurisdictional immunity."  H.R. Rep. No. 94-1487, at 19; Connecticut Bank of Commerce, 309 F. 3d at 252.  In making this alteration in the FSIA, however, Congress intended to lift the historical immunity only "in part" and did not intend to "reverse completely the historical and international antipathy to executing against a foreign state's property even in cases where a judgment could be had on the merits."  Id.; accord DeLetelier v. Republic of Chile, 748 F.2d 790, 799 (2d Cir. 1984) (finding that Congress, in certain circumstances, created a "right without a remedy" where plaintiff could avoid sovereign immunity and obtain judgment against foreign state under FSIA but could not avoid sovereign immunity when seeking to execute on that judgment).  Thus, contrary to the Magistrate Judge's opinion, cf. Mem. Op. at 22, it is more difficult, and not less,

to seek to execute on foreign sovereign property than it is to obtain a judgment against a foreign state.[4]

The reason for the very circumscribed nature of the lifting of the ordinary immunity of foreign sovereign property contemplated by the FSIA is obvious: judicial incursion on a foreign sovereign's property is often likely to be far more problematic from a foreign relations point of view than simply requiring the sovereign to appear to defend a lawsuit on the merits. Thus, the sensitive foreign relations considerations associated with the partial lifting of sovereign immunity embodied in the FSIA were carefully weighed by Congress in circumscribing the limits within which a foreign sovereign's property might be attached, and the baseline presumption that Congress adopted was that foreign sovereign property was to be treated as immune. 28 U.S.C. § 1609. The most fundamental criterion to be applied if that baseline immunity is to be overcome is that the property must be used in the United States for commercial purposes. See 28 U.S.C. § 1610(a) (setting this as the antecedent condition for all other exemptions). This limitation is directly reflective of the restrictive theory of sovereign immunity adopted by the United States and is intended to ensure that only the commercial property and not the public property of foreign sovereigns is made available for attachment in U.S. courts. Moreover, the limitation reflects the practical knowledge that U.S. property located abroad will be subject to reciprocal treatment. Inconsistent application of the restrictive theory of sovereign immunity by allowing the attachment of foreign sovereign property that does not fall within the terms of that

---

[4] In holding to the contrary, the Magistrate Judge relied on what is apparently a misstatement in the Connecticut Bank of Commerce opinion. Although that Court stated "immunity from execution is nevertheless narrower than jurisdictional immunity," 309 F.3d at 252, it is apparent from the discussion in that opinion and from the discussion in DeLetelier, upon which the Connecticut Bank of Commerce court explicitly relied, that, as explained above, the opposite is true.

theory, thus, has the potential to jeopardize U.S. efforts to protect its own property located abroad.

Where Congress has directly indicated its intent to limit the attachment of foreign sovereign property in this matter, and has done so for purposes of protecting the foreign policy interests of the nation, the court errs if its fails to ensure that the plaintiffs' effort to attach particular property comes within the terms of the FSIA.[5]  In other words, the sovereign immunity reflected in Sections 1609 and 1610 of the FSIA does not constitute an affirmative defense of the sort the Magistrate Judge assumed.[6]  To the contrary, the presumption of immunity afforded by

---

[5]  Similarly, the Magistrate Judge's opinion appears to make no allowance for the circumstance where a treaty obligation of the United States might prevent the attachment of a foreign sovereign's property, see 28 U.S.C. § 1609 (setting forth the presumption of immunity afforded to sovereign property "subject to existing international agreements to which the United States is a party at the time of enactment of this Act"), or for those circumstances where Congress specifically identified property that would not be subject to attachment even when the exceptions to immunity articulated in the FSIA were present.  See 28 U.S.C. § 1611 (immunizing certain property, including property held for the account of a foreign central bank and certain military property, from attachment notwithstanding the provisions of Section 1610).  Because these considerations affect substantial interests of the United States apart from any particular property that might be at issue – and are part and parcel of the balancing Congress undertook when it enacted the FSIA – they should not be ignored simply because the foreign sovereign to which any particular piece of property belongs fails to appear.

[6]  The Magistrate Judge's decision turns principally on his determination that attachment immunity constitutes an affirmative defense under Fed. R. Civ. P. 8(c).  Rule 8, however, applies to "pleadings" and Rule 8(c) requires an assertion of affirmative defenses "[i]n pleading to a preceding pleading."  Rule 7 gives a restrictive definition of "pleadings."  "Pleadings" include only complaints, answers, replies to counterclaims, answers to cross-claims, third-party complaints, and third-party answers.  "No other pleading shall be allowed."  Fed. R. Civ. P. 7(a).  Any other application to a court for an order "shall be by motion."  Id. 7(b).  Thus, an application for attachment in aid of execution (under the FSIA or any other statute) does not fall within the restrictive technical definition of "pleading."  Compare Verlinden, 461 U.S. at 492 n.20 (discussing legislative history, which characterized immunity from suit (but makes no reference to immunity from attachment) as an "affirmative defense," but recognizing that subject matter jurisdiction turns on the existence of an exception to the immunity and making clear that even where immunity from suit is technically an affirmative defense (and thus would be pled in response to a complaint), the Court has an independent obligation to assess its own jurisdiction).  Unlike the substantive immunity from suit, however, which, at least potentially would be pled in

Section 1609 arises whenever the property of a foreign state is at issue, and here, Iran's status as a foreign sovereign is not only undisputed, it is a <u>necessary</u> element to plaintiff's request for ultimate relief in the form of turnover of Iran's assets.[7]  Plaintiffs seeks to execute on a judgment against the Republic of Iran, a judgment which was founded on an exception to the ordinary presumption against foreign sovereign immunity as to jurisdiction.  <u>See</u> Mem. Op. at 2 (describing the bases for plaintiffs' judgment); <u>Campuzano v. Republic of Iran</u>, 281 F. Supp. 2d 258 (D.D.C. 2003) (makings findings of fact and conclusions of law relevant to the <u>Rubin</u> plaintiffs);  28 U.S.C. § 1605(a)(7).  Thus, plaintiffs can obtain property in satisfaction of that judgment only if the property belongs to Iran, and both plaintiff's judgment and their claim to the property at issue here are predicated on the recognition that Iran is a foreign sovereign.

In short, plaintiffs concede the only fact necessary for presumptive immunity to attach, and Iran's presence should not have been found necessary to judicial review of that presumption. <u>See</u> <u>Walker Int'l Holdings Ltd. v. Republic of Congo</u>, 395 F.3d 229, 233 (5th Cir. 2004) (finding the sovereign's presence or absence "irrelevant" for purposes of applying presumption of sovereign immunity in an attachment context), <u>cert</u>. <u>denied</u>, ___ U.S. ___, 125 S. Ct. 1841 (2005); <u>Phaneuf v. Republic of Indonesia</u>, 106 F.3d 302, 306 (9th Cir. 1997) ("defendants . . . are entitled to a presumption of immunity if they are foreign states within the meaning of the Act.");

---

answer to a complaint, a motion for attachment is a motion under Rule 7(b), and requires no "pleading" in response.  Rule 8(c) relating to affirmative defenses thus has no application to attachment proceedings.  For this reason, it was error for the Magistrate Judge to rely on "affirmative defense" jurisprudence in considering whether third parties may raise attachment immunity.

[7]  The United States understands that, at least as to some of the property, there is some question as to whether the property at issue belongs to Iran.  Obviously, this is a significant preliminary question that must be addressed before attachment of the property can even be contemplated in satisfaction of plaintiffs' judgment against Iran.

see also Enahoro v. Abubakar, 408 F.3d 877, 882 (7th Cir. 2005) (finding that immunity was presumptively invoked upon a finding that the party entitled to the immunity "satisfied the FSIA's definition of a foreign state"), cert. denied, ___ S. Ct. ___, 2006 WL 386482 (Feb. 21, 2006); accord Int'l Ins. Co. v. Caja Nacional de Ahorro y Seguro, 293 F.3d 392, 397 (7th Cir. 2002).

Once presumptive immunity attaches, "the burden of going forward shifts to the plaintiff to produce evidence that the entity is not entitled to immunity." Enohoro, 408 F.3d at 882; Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines, 965 F.2d 1375, 1383 (5th Cir. 1992); accord Southway v. Central Bank of Nigeria, 328 F.3d 1267, 1271 (10th Cir. 2003). Where "grace and comity" warrant the recognition of foreign sovereign immunity, where the United States' foreign policy interests favor ensuring that the terms of the FSIA are given full effect, and where plaintiffs concede – as they must in the context of these proceedings – the only fact necessary to the invocation of sovereign immunity, the Magistrate Judge erred in not recognizing the presumption of immunity, which plaintiffs then bear the burden to overcome.[8]

Second, although much of the Magistrate Judge's opinion is based on his speculation as to Iran's purposes in not appearing in these proceedings, see Mem. Op. at 15, such speculation into the motives of a foreign sovereign is highly suspect. The Magistrate Judge imagined that

---

[8] The Magistrate Judge's extended analogy to ordinary rules governing statutes of limitations is, accordingly, inapplicable. Statutes of limitations defenses are not subject to the sort of burden shifting applicable to sovereign immunity as codified in the FSIA, and in any event, as described infra, at 13-14, courts have the discretion to examine such defenses sua sponte in certain circumstances. See, e.g., Acosta v. Artuz, 221 F.3d 117, 121 (2d Cir. 2000). Similarly, the magistrate judge's reliance on Illinois law in order to reach the conclusion that the judgment debtor bears the burden of proof on an exemption from attachment, see Mem. Op. at 11, is overly facile. As described above, in the context of the FSIA, sovereign immunity attaches by presumption so long as the property in question belongs to the foreign state. The burden of production then shifts to the plaintiff to demonstrate that an exemption from attachment applies.

Iran may have chosen not to appear to defend these properties because "Iran may prefer that the collections at issue be used to pay for the judgment award, as opposed to other of its property," id., but it is just as possible that Iran is not defending these properties because some of them are subject to proceedings against the United States before the Iran-U.S. Claims Tribunal, see Statement of Interest of the United States, Docket No. 20, at 5, and thus Iran may intend to seek compensation from the United States, and ultimately from U.S. taxpayers, in those proceedings, if the artifacts are improperly allowed to be attached here. Similarly, even with respect to property not subject to international tribunal proceedings, Iran may intend only to let matters play out in the Court and then use any potential loss as a diplomatic negotiating tool, thereby complicating the achievement of foreign relations goals of the United States. Indeed, certain sovereigns may choose as a matter of principle not to appear in U.S. courts because they still adhere to a more "absolute" approach to sovereign immunity, under which they may contend that any attachment of sovereign property is objectionable.

Congress recognized the dangers inherent in attributing motives to foreign sovereigns in circumstances such as these and, thus, it specifically included among the exceptions to foreign sovereign immunity from attachment the circumstance where a foreign sovereign "waive[s] its immunity from attachment in aid of execution or from execution, either explicitly or by implication." 28 U.S.C. § 1610(a)(1). It is noteworthy that plaintiffs do not seek to rely on this exemption,[9] and it would not apply in any event. See Frolova v. Union of Soviet Socialist

---

[9]    Plaintiffs rely on 28 U.S.C. § 1610(a)(7), which provides that the presumption of immunity is overcome when "the judgment relates to a claim for which the foreign state is not immune under section 1605(a)(7), regardless of whether the property is or was involved with the act upon which the claim is based." Like all of the exceptions to foreign sovereign immunity from attachment or execution, however, property sought to be attached under this subsection must still be property that "is used for a commercial activity in the United States." See 28 U.S.C. § 1610(a).

Republics, 761 F.2d 370, 377 (7th Cir. 1985) (Congress "anticipated, at a minimum, that waiver would not be found absent a conscious decision to take part in the litigation and a failure to raise sovereign immunity despite the opportunity to do so").[10] The Magistrate Judge's ruling, thus, impermissibly conflates Iran's failure to appear with a waiver of the immunity. This is not what Congress intended and it poses substantial problems for the "grace and comity" to be accorded foreign sovereigns.

Even if it were true that that Iran had waived its interests by failing to appear in these proceedings, waiver alone is insufficient under the FSIA to supersede the sovereign immunity that is presumptively available to a foreign state and its assets. Instead, as with all the exceptions to foreign sovereign immunity contained in Section 1610, the property sought to be attached must be "used for a commercial activity in the United States." 28 U.S.C. § 1610(a). As described above, these statutory limitations are the result of careful balancing of competing interests by Congress and are directly reflective of significant foreign policy interests of the United States, including the United States's interest in giving effect to the restrictive theory of sovereign immunity, and its interests in protecting its own sovereign property located abroad. Absent any showing to that the attachment effort made by plaintiffs here falls within those carefully circumscribed statutory limitations, the Court should not order the attachment of the property at issue. See Walker Int'l Holdings, Ltd., 395 F.3d at 233; Connecticut Bank of Commerce, 309 F.3d at 250.

Third, even if the Magistrate Judge were correct that the sovereign immunity embodied in

---

[10] See also Frolova, 761 F.3d at 377 (finding that implicit waivers of sovereign immunity under the FSIA are limited to the circumstances where (1) a foreign state agrees to arbitration in another country; (2) the foreign state agrees that a contract is governed by the laws of a particular country; or (3) the foreign state files a responsive pleading without raising the immunity defense).

Section 1609 of the FSIA constituted a traditional form of affirmative defense, it is well established that the Court has the discretion to consider affirmative defenses not raised by the party to which the defense belongs "where the defense implicates values beyond the interests of the parties." Acosta v. Artuz, 221 F.3d 117, 121 (2d Cir. 2000); see id. (citing "long line of precedent establishing the authority of the courts to raise sua sponte affirmative defenses"); see also Arizona v. California, 530 U.S. 392, 412 (2000) (noting Court's discretion "in special circumstances" to raise a waivable defense sua sponte and citing United States v. Sioux Nation of Indians, 448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting) ("while res judicata is a defense that can be waived, . . . a court may dismiss the action sua sponte, even though the defense has not been raised" where such a result is "fully consistent with the policies underlying res judicata")); Kratville v. Runyon, 90 F.3d 195, 198 (7th Cir. 1996) ("Although claim preclusion is an affirmative defense that can be waived . . . we have recognized that courts, in the interests of judicial economy, may raise the issue of preclusion sua sponte even when a party fails to do so.") (citations omitted); Mitchell v. Jefferson County Bd. of Educ., 936 F.2d 539, 543 (11th Cir. 1991) ("[I]t is not an abuse of discretion for a district court to receive and consider evidence in support of an affirmative defense that a defendant has failed to plead"). Thus, for example, where an affirmative defense is "grounded upon considerations of comity between sovereigns," a court may exercise its discretion to raise the defense sua sponte even where the defendant does not. See Hardiman v. Reynolds, 971 F.2d 500, 504 (10th Cir. 1992) (discussing the need for comity between the federal and state judicial systems). For all the reasons set forth above, such considerations "beyond the interests of the parties," Acosta, 221 F.3d at 121, are clearly at play here, and the Magistrate Judge should have recognized the necessity to ensure that plaintiffs demonstrate their entitlement to the property they seek here to attach.

- 13 -

Finally, the purpose of the general rule that affirmative defenses are waived where not raised is "simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it." Hassan v. United States Postal Service, 842 F.2d 260, 263 (11th Cir. 1988) (citing Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found., 402 U.S. 313, 350 (1971)). As the Magistrate Judge recognized, all parties to these proceedings have, from the very beginning, understood that the critical question to be answered in this case is whether the properties at issue here fall within the exemptions from sovereign immunity set forward in the FSIA. See Mem. Op. at 2 ("Citation Respondents have argued all along that Plaintiffs cannot attach the Persian collections . . . until they demonstrate that a commercial activity exception to Section 1609 of the FSIA applies. Initially, Plaintiffs appeared to agree with Citation Respondents . . ."). Thus, "where a plaintiff has notice that an affirmative defense will be raised," here, the defense of sovereign immunity, "[f]ailure to affirmatively plead the defense is simply noncompliance with a technicality and does not constitute waiver where there is no claim of surprise." Hassan, 842 F.2d at 263 (quoting Jones v. Miles, 656 F.2d 103, 107 n.7) (5th Cir. 1981)).

In these circumstances, this Court should ensure that plaintiffs meet their burden of showing that the property is subject to attachment. In other words, plaintiffs should be required to demonstrate that the property they seek in satisfaction of their judgment against Iran is – as the Magistrate Judge correctly found in his earlier opinion, Memorandum Opinion and Order (Nov. 30, 2004), Docket No. 32, affirmed by this Court, Minute Order (March 18, 2005), Docket No. 52 – property used for a commercial activity in the United States by Iran. As the United States previously demonstrated in its earlier Statement of Interest, as argued by the Citation Respondents, and as recognized by the Magistrate Judge, "[s]ignificantly, Iran has not been

shown to have engaged in commercial activity as to the items in question."  Mem. Op. at 3, <u>see</u> <u>also</u> Statement of Interest of the United States, Docket No. 20, at 11-13.  Unless plaintiffs can make that threshold demonstration, as required by the FSIA, any property at issue in these proceedings belonging to Iran should be deemed exempt from the FSIA's attachment provisions.

## CONCLUSION

Wherefore, for the reasons stated herein, the Court should accept the Citation Respondent's Objections to the opinion of the Magistrate Judge and reverse that opinion as an abuse of discretion.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

PATRICK FITZGERALD
United States Attorney

JOSEPH H. HUNT
Director, Federal Programs Branch

VINCENT M. GARVEY
Deputy Director, Federal Programs Branch


_____/s/ Rupa Bhattacharyya_____
RUPA BHATTACHARYYA
Senior Trial Counsel
Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883, 20 Massachusetts Ave, N.W.
Washington, D.C.  20044
Tel: (202) 514-3146
Fax: (202) 318-7593
Email: rupa.bhattacharyya@usdoj.gov

Dated:  March 3, 2006