UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| JENNY RUBIN, | ) |
| DEBORAH RUBIN, | ) |
| DANIEL MILLER, | ) |
| ABRAHAM MENDELSON, | ) |
| STUART E. HERSCH, | ) Case No.: 1:05-MC-10079 |
| RENAY FRYM, | ) |
| NOAM ROZENMAN, | ) |
| ELENA ROZENMAN and | ) |
| TZVI ROZENMAN | ) |
|  | ) |
| Plaintiffs — Judgment Creditors, | ) |
| v. | ) |
|  | ) |
| THE ISLAMIC REPUBLIC OF IRAN, | ) |
| THE IRANIAN MINISTRY OF INFORMATION | ) |
| AND SECURITY, | ) |
| AYATOLLAH ALI HOSEINI KHAMENEI, | ) |
| ALI AKBAR HASHEMI-RAFSANJANI and | ) |
| ALI FALLAHIAN-KHUZESTANI | ) |
|  | ) |
| Defendants – Judgment Debtors, | ) |
| v. | ) |
|  | ) |
| MUSEUM OF FINE ARTS, a not-for-profit corporation | ) |
| (a/k/a Boston MFA), HARVARD UNIVERSITY, et al. | ) |
|  | ) |
| Trustee Process Defendants. | ) |

_____)

## NOTICE OF FILING IN RELATED PROCEEDING

In support of their opposition to Plaintiffs' motion for partial summary judgment

establishing that the Trustee Process Defendants' have no standing to raise Iran's sovereign

immunity defense to execution, Trustee Process Defendants have submitted to the Court a

"Second Statement of Interest" filed by the United States in parallel proceedings brought by the

instant Plaintiffs in the United States District Court for the Northern District of Illinois, *Rubin v. Islamic Republic of Iran*, No. 03-CV-9370 (the "Chicago case").

The Second Statement of Interest urges the Illinois District Court to overrule the decision of United States Magistrate Judge Martin Ashman granting the instant Plaintiffs' motion for partial summary judgment establishing that third-party garnishees have no standing to raise FSIA defenses to attachment and execution. *Rubin et al. v. Islamic Republic of Iran*, 408 F.Supp.2d 549 (N.D.Ill. 2005).

Significantly, the United States has refrained from filing any statement of interest in the instant case. Furthermore, as the Supreme Court recently emphasized, the Executive Branch's views on the scope of the FSIA "merit no special deference" in any event:

> The issue now before us, to which the Brief for United States as Amicus Curiae is addressed, concerns interpretation of the FSIA's reach – a "pure question of statutory construction . . . well within the province of the Judiciary." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446, 448, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). While the United States' views on such an issue are of considerable interest to the Court, <u>they merit no special deference</u>.

*Republic of Austria v. Altmann*, 541 U.S. 677, 701 (2004) (emphasis added). Thus, while the opinion of the Executive Branch might be of interest to the Court, no deference is due that opinion and it is the exclusive mandate of this Court (not the Justice Department) to interpret the FSIA.

Plaintiffs recognize, nonetheless, that the Court will likely study and consider the arguments made in Second Statement of Interest submitted in the Chicago case.

If the Court does indeed consider the arguments raised by the Government in the Second Statement of Interest, Plaintiffs respectfully (but strongly) believe that elementary principles of fairness, as well as the need to determine the instant motion for partial summary judgment on the

basis of a full adversarial briefing, require that the Court give equal attention to the

Memorandum filed by plaintiffs in response to the Second Statement of Interest in the Chicago

case. A copy of that memorandum is attached hereto as Exhibit A.

Plaintiffs' response memorandum thoroughly refutes each of the arguments asserted by

the Government (and echoed here by the Trustee Process Defendants), and demonstrates *inter

alia* that:

- Precisely contrary to the claim of the Government and the Trustee Process Defendants,

  the historical principles of sovereign immunity that inform and underlie the FSIA have

  *always* prohibited any party but a foreign state from raising a sovereign immunity defense.

  The rule for nearly a century – even in the days when sovereign immunity once properly

  invoked was absolute – has always been that "the assertion of the sovereign's immunity

  cannot be made by a private party litigant." *Kunglig Jarnvagsstyrelsen v. Dexter &

  Carpenter*, 32 F.2d 195, 200 (2nd Cir. 1929).

  *See* **Exhibit A at 4-8.**

- The "presumption of immunity" created by the FSIA's burden-shifting formula arises

  only *if and when* sovereign immunity is properly invoked by the foreign state itself – just

  as the presumption of qualified immunity enjoyed by a government official arises only if

  and when the immunity is asserted by the official himself.

  *See* **Exhibit A at 8-11.**

- An FSIA defense to attachment and execution is not within the miniscule class of

  affirmative defenses that may be raised by a court *sua sponte.*

  *See* **Exhibit A at 12-17.**

Moreover, Plaintiffs' response memorandum also shows that the Government *contradicts* and/or *disagrees with* key arguments asserted by the Trustee Process Defendants in this Court:

- The Government concedes (unlike Trustee Process Defendants)[1] that sovereign immunity under the FSIA is an affirmative defense, and argues only that sovereign immunity is a different "sort" of affirmative defense and/or that sovereign immunity is an affirmative defense that can be raised by a court *sua sponte*.

  **See** **Exhibit A at 8-9, 12-17.**

- Trustee Process Defendants seek to rely on the holding of the Fifth Circuit that §1610(c) of the FSIA requires a court to examine *sua sponte* FSIA defenses to execution. *Walker International Holdings Ltd. v. Republic of Congo*, 395 F.3d 229 (5th Cir. 2004); *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240 (5th Cir. 2002). Plaintiffs' papers on the instant motion argue in detail that the Fifth Circuit's construction of §1610(c) in *Walker* and *Connecticut Bank* is erroneous and should not be followed by this Court.

  Significantly, in the Second Statement of Interest, the United States does not endorse the Fifth Circuit's construction of §1610(c). While the Government agrees with and cites *Walker*'s ultimate *result*, it carefully refrains from adopting the Fifth Circuit's erroneous holding that §1610(c) requires a court to examine FSIA defenses to execution.

  **See** **Exhibit A at 19.**

Finally, Plaintiffs' response memorandum shows that the Second Statement of Interest is but another in a long series of efforts by the Executive – which have been repeatedly rebuffed by

---

[1] Unlike Trustee Process Defendants, the United States recognizes the indisputable fact that both Congress (in H.R. Rep. 94-1487 at 17) and the Supreme Court (in *Verlinden v. Central Bank of Nigeria*, 461 U.S. 480 (1983)) have defined sovereign immunity under the FSIA as an affirmative defense.

the Judiciary – to expand foreign sovereign immunities and limit the rights of plaintiffs and

judgment creditors under the FSIA. *See* **Exhibit A at 2-4.**

Plaintiffs therefore respectfully request that, if the Court considers the Second Statement

of Interest filed in the Chicago case, the Court also consider Plaintiffs' response thereto in full

detail.

JENNY RUBIN, et al

By their attorneys,

/s/ Edward V. Colbert III
Richard J. Grahn (BBO# 206620)
Edward V. Colbert III (BBO# 566187)
Looney & Grossman LLP
101 Arch Street, 9th Floor
Boston, MA 02110
(617) 951-2800

/s/ David Strachman, Esq. (GJA)
David Strachman, Esq., (BBO# 660136)
McIntyre, Tate, Lynch & Holt
321 South Main Street, Ste. 400
Providence, RI 02903
Dated:  May 19, 2006                    (401) 351-7700

CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2006 I served a copy of the within pleading upon Trustee
Process Defendants by electronic notice and/or mailing copies thereof via first class mail, postage
prepaid, properly addressed to the following:

Paul R.Q. Wolfson
(Counsel for Trustee Process Defendant, Harvard)
WILMER CUTLER PICKERING
HALE & DORR LLP
2445 M Street NW
Washington, DC  20037

Mark C. Fleming
(Counsel for Trustee Process Defendant, Harvard)
WILMER CUTLER PICKERING
HALE & DORR LLP
60 State Street
Boston, MA  02109

Timothy R. Shannon
(Counsel for Trustee Process Defendant, Harvard)
WILMER CUTLER PICKERING
HALE & DORR LLP
60 State Street
Boston, MA  02109

Robert J. Muldoon, Jr.
(Counsel for Trustee Process Defendant, MFA)
Sherin & Lodgen LLP
101 Federal Street
Boston, Massachusetts  02110
(617) 646-2000

William D. Iverson
Jason M. Knott
 (Counsel for Trustee Process Defendant, MFA)
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 662-6000

Courtney Amber Clarke, Esq.
(Counsel for Trustee Process Defendant, MFA)
Sherin & Lodgen LLP
101 Federal Street
Boston, Massachusetts  02110
(617) 646-2000

Jason M. Knott, Esq.
(Counsel for Trustee Process Defendant, MFA)
Covington & Burling
1201 Pennsylvania Avenue N.W.
Washington D.C. 20004-2401

                    /s/ Edward V. Colbert III
                    Edward V. Colbert III

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JENNY RUBIN, DEBORAH RUBIN,<br>DANIEL MILLER, ABRAHAM MENDELSON,<br>STUART E. HERSH, RENAY FRYM,<br>NOAM ROZENMAN, ELENA ROZENMAN and<br>TZVI ROZENMAN,<br><br>Plaintiffs – Judgment Creditors<br><br>v.<br><br>THE ISLAMIC REPUBLIC OF IRAN,<br>(a/k/a Iran, The Republic of Iran, Republic of Iran,<br>The Government of Iran, Iranian Government, and<br>Imperial Government of Iran), THE IRANIAN<br>MINISTRY OF INFORMATION AND<br>SECURITY, AYATOLLAH ALI HOSEINI<br>KHAMENEI, ALI AKBAR HASHEMI<br>RAFSANJANI and ALI FALLAHIAN<br>KHUZESTANI<br><br>Defendants – Judgment Debtors<br><br>v.<br><br>THE UNIVERSITY OF CHICAGO, a not-for-profit<br>corporation a/k/a and/or d/b/a The Oriental Institute,<br>GIL STEIN, and THE FIELD MUSEUM OF<br>NATURAL HISTORY,<br><br>Citation Respondents | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 03-CV-9370<br><br>Judge Blanche M. Manning<br><br>Magistrate Judge Martin C. Ashman |

## PLAINTIFFS' MEMORANDUM IN RESPONSE TO
## THE SECOND STATEMENT OF INTEREST OF THE UNITED STATES

### Preliminary Statement

Before addressing the Government's Second Statement of Interest ("SOI") on the merits,

plaintiffs respectfully believe that it is important to clarify the exact standing and status of the

Government in this case.

The United States has not intervened in this proceeding as a party, it cannot and so has not alleged that it has any specific interest on the line in this case, and, indeed, has expressly informed the Court that the "United States takes no position on the merits of this dispute." Second SOI at 2.

Rather, the Government characterizes its SOI as "the equivalent of an amicus curiae brief" (Id. at fn. 1) and explains that it has filed the SOI because of the Executive Branch's <u>generalized</u> interest in pressing its own construction of the FSIA. In the Government's words: "the United States has significant foreign policy interests in ensuring that principles of foreign sovereign immunities are properly interpreted and applied . . ." Id. at 2.

While plaintiffs do not dispute the Government's right to file a Statement of Interest and express its opinion as an amicus regarding what it considers the proper interpretation of the FSIA, the Government's views on the scope of the FSIA "merit no special deference," as the Supreme Court recently reiterated:

> The issue now before us, to which the Brief for United States as Amicus Curiae is addressed, concerns interpretation of the FSIA's reach – a "pure question of statutory construction . . . well within the province of the Judiciary." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446, 448, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). While the United States' views on such an issue are of considerable interest to the Court, <u>they merit no special deference</u>.

<u>Republic of Austria v. Altmann</u>, 541 U.S. 677, 701 (2004) (emphasis added). Thus, it is not the Government, but the Judiciary, that is the exclusive arbiter of whether the FSIA is "properly interpreted and applied."

Significantly, moreover, the Judiciary <u>has been repeatedly and consistently constrained to reject</u> efforts by the Government to <u>expand</u> the immunities of foreign states under the FSIA, and <u>restrict</u> the rights of plaintiffs thereunder. See <u>e.g.</u> <u>Republic of Austria</u>, 541 U.S. at 701 ("we reject the United States' recommendation to bar application of the FSIA to claims based on pre-enactment

conduct")[1]; <u>Acree v. Republic of Iraq</u>, 370 F.3d 41 (D.C.Cir. 2004) (rejecting Government's claim that terrorism exception of the FSIA, §1605(a)(7), had been repealed in respect to Iraq, and terming Government's position "bizarre"); <u>Chuidian v. Phillipine Nat'l Bank</u>, 912 F.2d 1095, 1101 (9th Cir. 1990) (rejecting Government's argument that the FSIA is inapplicable to foreign government officials and that the immunity of such officials should be determined by the State Department under pre-FSIA standards); <u>Malewicz v. City of Amsterdam</u>, 362 F.Supp.2d 298, 310-311 (D.D.C. 2005) (rejecting the Government's argument that the "FSIA requires 'fair notice to foreign states that they are submitting themselves to U.S. jurisdiction' and that '[f]oreign states are unlikely to expect' that a loan of artwork could be deemed commercial activity by the foreign state" and concluding that the loaned "artworks were 'present in the United States' for purposes of FSIA jurisdiction."). [2]

The Government's Statement of Interest in the instant case, seeking to have the Court reverse the holding of Magistrate Judge Ashman that an FSIA defense to execution is an affirmative

---

[1] Notably, the United States' Amicus Brief in <u>Republic of Austria</u>, like its Statement of Interest here, made a generalized warning that a failure of the Court to adopt the Government's position "**may have serious consequences for the United States' conduct of its foreign relations, including reciprocal treatment of the United States in foreign courts**." <u>See</u> Brief for the United States as Amicus Curiae Supporting Petitioners, in <u>Republic of Austria v. Altmann</u>, available at 2003 WL 22811828 at 29.

The Government apparently uses this or similar boilerplate language warning vaguely of foreign relations consequences in most of its FSIA-related filings.

[2] A similar pattern has emerged regarding the construction and application of §201 of the Terrorism Risk Insurance Act ("TRIA"). This provision was "specifically intended 'to deal comprehensively with the problem of enforcement of judgments rendered on behalf of victims of terrorism in any court of competent jurisdiction by enabling them to satisfy such judgments through the attachment of blocked assets of terrorist parties.' 148 Cong. Rec. H8728 (Nov. 13, 2002).'" <u>Hill v. Republic of Iraq</u>, 2003 WL 21057173 *2 (D.D.C. 2003).

The Government has made repeated attempts to limit TRIA's scope and application, which have frequently been rejected by the federal courts – including this Court. <u>See</u> e.g. <u>Hegna v. Islamic Republic of Iran</u>, 2003 U.S. Dist. LEXIS 14039 (N.D. Ill. 2003) (granting, over the opposition of the United States, execution against Iranian properties under TRIA §201) <u>vacated on other grounds</u> 380 F.3d 1000 (7th Cir. 2004); <u>Rubin v. Islamic Republic of Iran</u>, 2005 WL 670770 *1-2 (D.D.C. 2005) (Urbina, J.) (granting, over the opposition of the United States, a motion by the instant plaintiffs under TRIA §201 for a writ of execution on Iranian

defense that must be asserted by the foreign state, is simply another in a long line of attempts by the Executive Branch to provide foreign states with privileges that Congress did not intend them to have.

An argument is no more correct simply because it is advanced by the Government. On the contrary, given its long-standing efforts to roll back the FSIA, the Court should view the construction of the FSIA advanced here by the Government with a very critical eye.

Crucially, determining whether §§1609-1610 of the FSIA is an affirmative defense is a "pure question of statutory construction . . . well within the province of the Judiciary" and the Government's views thereon "merit no special deference." Republic of Austria, 541 U.S. at 701.

For the reasons set forth below, in plaintiffs' motion papers to date (incorporated herein by reference)[3] and in Magistrate Judge Ashman's decision, that decision should be affirmed.

**a.   The Principles Underlying the FSIA Have *Always* Required Foreign States to Invoke Their Own Immunity**

The Government traces the history of foreign sovereign immunities law, points out that prior to the enactment of the FSIA foreign state property was absolutely immune from execution, notes that the FSIA codifies "the interests of 'grace and comity' that are the underpinnings of the

---

bank accounts containing some $9,000); Weinstein v. Islamic Republic of Iran, 274 F.Supp.2d 53 (D.D.C. 2003) (Lamberth, J.) (same but on different grounds).

[3] These papers are: (a) Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment (docket #96); (b) Plaintiffs' Reply in Further Support of Their Motion for Partial Summary Judgment (docket #113); (c) Plaintiffs' Notice of Related Proceeding Relevant to Their Motion for Partial Summary Judgment (docket #119); (d) Plaintiffs' Supplemental Notice of Related Proceeding Relevant to Their Motion for Partial Summary Judgment (docket #120); (e) Plaintiffs' Memorandum In Response To Citation Respondents' Objections To The Magistrate Judge's Recommendations Of December 15, 2005 (docket #142) – including all the exhibits thereto.

Since the Court's review of Magistrate Ashman's decision will apparently be *de novo*, and since the decision itself only summarizes many of the issues discussed extensively in plaintiffs' motion and reply papers, the plaintiffs respectfully believe that the Court should conduct its review on the basis of all papers on the motion.

doctrine of foreign sovereign immunity" and stresses that the FSIA only partially lifted the previously absolute bar on execution of foreign state property. Second SOI at 5-7.

The Government's point is clear: the historical principles underlying sovereign immunity doctrine continue to inform the FSIA, and the Court should therefore be mindful of those principles – including the traditional reticence to permit execution against foreign state property – in construing the FSIA.

The Government's argument here assumes that, historically, prior to the FSIA, the absolute ban on execution against foreign state property permitted courts and third parties to raise a foreign state's immunity from execution on their own, irrespective of whether the foreign state appeared to invoke that immunity. Curiously, however, the Government carefully refrains from <u>expressly</u> claiming that this is so. More surprising still, the Government cites no authority or precedent whatsoever demonstrating that parties other than the foreign sovereign (i.e. the court or a third-party) have historically been permitted to invoke sovereign immunity when the foreign state fails to appear.

The Government is deafeningly silent on this point for a simple but dispositive reason: it is long and well established – even prior to the enactment of the FSIA (when sovereign immunity from suit and execution was absolute) – that a sovereign immunity defense can be asserted in the courts of the United States only by the foreign state itself:

> [T]he <u>assertion of the sovereign's immunity cannot be made by a private party litigant</u>. In *Ex parte Muir*, 254 U.S. 522, 41 S.Ct. 185, 65 L.Ed. 383, it is said that a foreign government's claim of immunity for an arrested vessel may be asserted, either by its appearance in the suit, or by the appearance of its accredited representative, or by diplomatic representations to our government which result in the Attorney General of the United States suggesting to the court the foreign government's claim of immunity.
>
> In *The Gul Djemal*, 264 U.S. 90, 44 S.Ct. 244, 68 L.Ed. 574, the claim was set up by the master of a vessel admittedly owned by the Turkish government; but the claim was held ineffective, because made by one

not duly authorized to vindicate the owner's sovereignty. *See, also, The Sao Vicente*, 260 U.S. 151, 43 S.Ct. 15, 67 L.Ed. 179; *Ex parte Transportes Maritimos*, 264 U.S. 105, 44 S.Ct. 236, 68 L.Ed. 580; *The Sylvan Arrow, L.R.* (1923) P.D. 14. These cases, and the reasons for the rule they lay down as to the methods of asserting the immunity of a sovereign, were carefully analyzed by Judge Hand in *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter*, 300 F. 891 (D.C.N.Y.).

Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, 32 F.2d 195, 200 (2nd Cir. 1929) (emphasis

added).

> As Judge Learned Hand taught:

>> [I]t is unfair to private litigants that they should be deprived of a trial through the intervention of one whose authority the sovereign may rightly repudiate, or merely by a suggestion which falls short of a claim of right. Therefore nothing short of a claim made by intervention as a suitor will serve, and obviously this can be done only by some one authorized to assert the sovereign's prerogative.

>> The law has been of late amply settled by decisions of the Supreme Court, though it chances, irrelevantly in my opinion, that in all the cases the proceedings have been in rem. In *Ex parte Muir*, 254 U.S. 522, 41 Sup.Ct. 185, 65 L.Ed. 383, the question arose on prohibition, and the actual decision indeed rests upon the fact that under the circumstances the issuance of the writ was discretionary, yet the court said that a claim of immunity in favor of an arrested ship must be made either through direct intervention as a party by the sovereign, by his ambassador or minister, or through the usual diplomatic channels eventuating in a suggestion by the Attorney General. In *The Pesaro*, 255 U.S. 216, 41 Sup.Ct. 308, 65 L.Ed. 592, the case came up directly on appeal, so that the question of prohibition was not involved. The result was as was foreshadowed in the dicta of *Ex parte Muir*, *supra*, and the vessel which had been released was held, because the ambassador did not intervene as a suitor and set up the claim as of right, but contented himself merely with a suggestion for such effect as the court might give it.

>> *The Sao Vicente*, 260 U.S. 151, 43 Sup.Ct. 15, 67 L.Ed. 179, turned merely upon the incompetency of a consul general to sue out the writ of certiorari, and may perhaps be distinguished on that account. Yet the question is in fact the same as though it had arisen on an original intervention, and it was so considered by the Circuit Court of Appeals. 281 Fed. 111. *See, also, The Sao Vicente*, 295 Fed. 829 (C.C.A. 3). *Ex parte Transportes Maritimos*, 264 U.S. 105, 44 Sup.Ct. 236, 68 L.Ed . . . turned merely upon the remedy (prohibition), like the actual decision in *Ex parte Muir*, *supra*. The same may be said of *Ex parte Haussein Lutfi Bey*, 256 U.S. 616, 41 Sup.Ct. 609, 65 L.Ed. 1122. But when that case

> came up on direct appeal in *The Gul Djemal*, 264 U.S. 90, 44 Sup.Ct.
> 244, 68 L.Ed. . . . , the court again applied the rule in *The Pesaro*, *supra*,
> and *The Sao Vicente*, *supra*, and declined to recognize the claim because,
> although the claimant appeared in the suit, he was thought not properly
> authorized to claim immunity.
>
> There is no difference between a libel in rem, under which a ship is
> arrested, and an action in personam against an agent of the sovereign.
> When the claimant appears and claims the ship, he in fact takes the
> position of reus, and the suit proceeds between the parties. If the
> sovereign choose to come forward as claimant, it is enough, as well as if
> the ambassador appear as such. At least it is said so in *Ex parte Muir*,
> supra, though Justice Story doubted it in *The Anne*, 3 Wheat. 435, 446, 4
> L.Ed. 428. But when the party before the court as claimant or as
> defendant is neither the sovereign nor his ambassador, it is now the
> established rule that the claim will not be recognized, unless by
> diplomatic intervention.

Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, 300 F. 891, 893-894 (D.C.N.Y. 1924)

Thus, the Government's entire argument is based on an utter fiction. It has <u>always</u> been the rule, even when sovereign immunity was absolute, that no one but the foreign state itself could assert its immunity. The plain fact is that the "*interests of 'grace and comity' that are the underpinnings of the doctrine of foreign sovereign immunity*," upon which the Government purports to found its argument, have <u>never</u> permitted United States courts to entertain a claim of sovereign immunity raised by a party other than the foreign state itself – even when that immunity, had it been asserted by the foreign state, would have been absolute.

On the contrary, the rule has always been that "the assertion of the sovereign's immunity cannot be made by a private party litigant." Kunglig Jarnvagsstyrelsen, 32 F.2d at 200.

Could this rule possibly be more explicit?

Moreover, the cases quoted above (and the string of Supreme Court cases cited therein) make perfectly evident that <u>when Congress defined sovereign immunity under the FSIA as an "affirmative defense" that must be asserted by the foreign state itself, it was merely codifying a longstanding and well-established principle of United States law</u>.

Thus, Magistrate Judge Ashman's holding that "as a matter of law, no party other than Iran may assert Iran's foreign sovereign immunity defenses" (408 F.Supp.2d at 563) perfectly reflects and conforms to what the Government terms "the underpinnings of the doctrine of foreign sovereign immunity" which the "FSIA codifies, as a matter of substantive law." Second SOI at 5.

Indeed, Magistrate Judge Ashman, Congress, and nearly a century of federal case law, stretching back to Judge Learned Hand, all state the same consistent rule: foreign sovereign immunity is an affirmative defense that can be raised only by the foreign state.[4]

Therefore, it is not Magistrate Judge Ashman, but the Government and the Citation Respondents, who are in error here.

**b.      The "Presumption of Immunity" Arises Only *After* Sovereign Immunity is Properly Invoked by the Foreign State**

Faced with the indisputable fact that both Congress (in H.R. Rep. 94-1487 at 17) and the Supreme Court (in Verlinden v. Central Bank of Nigeria, 461 U.S. 480 (1983)) have defined sovereign immunity under the FSIA as an affirmative defense, the Government admits, as it must, that Magistrate Judge Ashman was correct in finding that sovereign immunity is an affirmative defense.[5]   The Government argues, however, that sovereign immunity under the FSIA "does not

---

[4] Legal scholars agree.  As Professor Mary Kay Kane of Hastings College of the Law has explained:

> Since the principal purpose of immunity is to protect the interests of the foreign state, the state should bear the burden of asserting the doctrine if it desires that protection.   A court is under no obligation to investigate questions of immunity on its own motion and indeed, in fairness to the plaintiff, should not do so . . .
>
> The legislative history of the Act suggests this conclusion, although there it is phrased in terms of whether immunity is an affirmative defense that the state must plead.

Mary Kay Kane, Suing Foreign Sovereigns: A Procedural Compass, 34 Stan. L. Rev. 385, 416, fn. 163 (January 1982).

[5] The Government wisely abandoned the effort by the Citation Respondents to deny entirely that sovereign immunity is an affirmative defense.

constitute an affirmative defense _of the sort_ the Magistrate Judge assumed." Second SOI at 8 (emphasis added).

According to the Government, sovereign immunity is a different "sort" of affirmative defense because, under the burden-shifting regime created by the FSIA, a foreign state enjoys a "presumption of immunity" which must be overcome by the plaintiff.[6]

In other words, claims the Government, Congress could not have intended sovereign immunity to be a true affirmative defense, because the FSIA provides foreign states with a presumption of immunity. Second SOI at 8, et seq.

This argument is meritless because it confuses and conflates two completely different questions: (a) the respective burdens and presumptions under the FSIA once immunity is properly invoked and (b) the question of who may invoke immunity in the first place.[7]

The fact that a foreign state enjoys a presumption of sovereign immunity _once that immunity is properly invoked_ in no way contradicts or derogates from the fact that sovereign immunity is full-fledged affirmative defense that may be invoked only by the foreign state itself. This is easily demonstrated by reference to the "qualified immunity" enjoyed by government officials:

It is well established that, like foreign sovereign immunity, the qualified immunity enjoyed by governmental officials creates a "presumption of immunity" when properly invoked:

---

[6] Apparently fearful that the Court might miss this point, the Government weaves the phrases "presumption of immunity" or "presumptive immunity" into its memorandum no less than 17 times. Indeed, this "presumption of immunity" argument is the very gravamen of the Government's SOI.

Disturbingly, the Government also weaves the term "presumption" into several of its tail citations, despite the fact that the word presumption appears nowhere in those decisions.

[7] For the same reason, the question of whether bringing a plenary suit against a foreign state is more or less difficult than executing against foreign state property (Second SOI at 6-7, fn. 4) is a total non sequitur. The scope of the immunity, once property raised, has nothing to do with the question of who may properly raise it.

> The question of qualified immunity is a threshold issue that determines Defendants' immunity from suit, that is, their ability to avoid a trial altogether, rather than merely their immunity from damages. Qualified immunity shields government officials performing discretionary functions from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. When sued in his individual capacity, a governmental employee is <u>entitled to a presumption of qualified immunity from suit</u>.

<u>Bessman v. Powell</u>, 991 F.Supp. 830, 837 (S.D.Tex. 1998) (emphasis added, internal citations and quotations omitted).

Likewise,

> The doctrine of qualified immunity protects government officials who perform discretionary functions from suit and from liability for monetary damages under 42 U.S.C. §1983. <u>This defense is designed to create a rebuttable presumption of immunity</u> from personal liability to cover all executive officers that perform discretionary functions.

<u>Nunez Gonzalez v. Vazquez Garced</u>, 389 F.Supp.2d 214, 222 (D.P.R. 2005) (emphasis added, citation omitted).[8]

At the same time, it is equally well established that qualified immunity is an affirmative defense that can only be invoked by the government official himself. <u>See</u> <u>e.g.</u> <u>Harlow v. Fitzgerald,</u>

---

[8] <u>See</u> <u>also</u> <u>e.g.</u> <u>Valentin Rodriguez v. Municipality of Barceloneta</u>, 236 F.Supp.2d 189, 193-194 (D.P.R. 2002) (same); <u>Johnson v. Odom</u>, 910 F.2d 1273, 1277 (5th Cir. 1990) (Plaintiff may demonstrate that a defendant government official is not entitled to qualified immunity by pleading "facts sufficient to overcome the presumption of immunity"); <u>Gasho v. U.S.</u>, 39 F.3d 1420, 1438 (9th Cir. 1994) (Under the "doctrine of qualified immunity" a police officer "is presumed to be immune from any damages caused by his constitutional violation. To overcome this presumption, a plaintiff must show that the officer's conduct was so egregious that any reasonable person would have recognized a constitutional violation.") (internal citations and quotes omitted); <u>Mick v. Brewer</u>, 76 F.3d 1127, 1134 (10th Cir. 1996) ("The plaintiff initially bears a heavy two-part burden when the defendant pleads the defense of qualified immunity."); <u>Cooper v. Sheriff, Lubbock County</u>, 929 F.2d 1078, 1084 (5th Cir. 1991) (Jail officials' qualified immunity would not bar inmate's §1983 action since plaintiff "satisfied his obligation to allege sufficient facts in his complaint to overcome the presumption of immunity."); <u>Jackson v. Jackson County, Miss.</u>, 956 F.Supp. 1294, 1304 (S.D.Miss. 1995) (Plaintiff's allegations fail to "overcome the presumption that the defendants are shielded by qualified immunity."); <u>Jackson v. City of Amite</u>, 1998 WL 118081 *3 (E.D.La. 1998) ("As state actors, these defendants had a presumption of immunity unless one or more of them violated a clearly established right of the plaintiff--a violation that any reasonable person would recognize."); <u>Trujillo v. Board of Educ. of Albuquerque Public Schools</u>, 377 F.Supp.2d 977, 988 (D.N.M. 2004) ("The plaintiff has the significant burden of rebutting the presumption that qualified immunity applies to preclude his claims against the defendant.").

457 U.S. 800, 815 (1982). ("Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official."); <u>Straub v. Does</u>, 63 Fed.Appx. 309 (9th Cir. 2003) ("the district court erred in raising the defense of qualified immunity *sua sponte* on behalf of the defendants. Qualified immunity is an affirmative defense that must be raised and affirmatively established by the Defendants, not the district court.") (citing <u>Harlow</u>); <u>Liston v. Steffes</u>, 300 F.Supp.2d 742, 753 (W.D.Wis. 2002) ("Qualified immunity is an affirmative defense").

**Thus, qualified immunity is an affirmative defense that can be asserted only by the defendant government official – but once properly invoked creates a presumption of immunity.**

As an incontrovertible empirical fact, then, an immunity defense may (a) be a full-blown affirmative defense and (b) create a presumption of immunity once properly asserted. Thus, contrary to the Government's entire theory here, there is no conflict whatsoever between these two characteristics of an immunity defense. And since there is no such conflict, there is absolutely no basis for the Government's claim that Congress could not really have meant sovereign immunity to be a full-fledged affirmative defense because the FSIA, once properly invoked, gives rise to a presumption of immunity.

Therefore, the putative contradiction upon which the Government seeks to rely here is simply non-existent and its entire "presumption of immunity" argument is thus baseless. Congress meant what it said: sovereign immunity is an affirmative defense, period, and no amount of sophistry or rhetorical gymnastics by the Government can change that fact.[9]

---

[9] Congress' intention that foreign states must assert their own immunity defenses is also expressed in 28 U.S.C. §1602, which sets forth the Congressional "Findings and declaration of purpose" that underlie the FSIA. That section pointedly states – twice – that "*claims of foreign states to immunity*" are to be determined by the courts in conformity with the provisions of the FSIA.

If Congress had intended to permit third parties to assert the sovereign immunity of a foreign state, §1602 would have provided that the "*immunity of foreign states*" or "*claims of immunity of foreign states*" be determined in conformity with the FSIA. Instead, precisely because sovereign immunity is an affirmative

**c.** **The Government Fails to Prove That the Court Has Authority to Consider an FSIA Defense to Execution Sua Sponte in "Special Circumstances"; Any Such Authority Would Only *Support* Plaintiffs' Position**

The Government argues further that "even if the Magistrate Judge were correct that the sovereign immunity embodied in Section 1609 of the FSIA constituted a traditional form of affirmative defense," the courts have "discretion to consider affirmative defenses not raised by the party to which the defense belongs" in certain "special circumstances." Second SOI at 12-13. This argument fails on multiple grounds:

<u>First</u>, it is incontrovertible – as the very cases relied upon by the Government expressly state – that when, and to the extent, that a court has any authority to raise an affirmative defense *sua sponte*, such authority is an <u>exception</u> to the general rule. In <u>Hardiman v. Reynolds</u>, 971 F.2d 500 (10th Cir. 1992), cited by the Government itself, the Tenth Circuit stated:

> Generally, where the parties have not raised a defense, the court should not address the defense sua sponte. "The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one." *United States v. Burke,* 504 U.S. 229, 112 S.Ct. 1867, 1877, 119 L.Ed.2d 34 (1992) (Scalia, J., concurring) (citation omitted).

<u>Id</u>. at 502.

Similarly, in <u>Acosta v. Artuz</u> (the lead case cited by the Government) the Second Circuit emphasized that "Generally, courts should not raise sua sponte nonjurisdictional defenses not raised by the parties." <u>Acosta v. Artuz</u>, 221 F.3d 117, 122 (2nd Cir. 2000).

Thus, the burden is on the Government to demonstrate any exception to the rule.

---

defense, Congress specifically referred here to "***claims of foreign states to immunity.***" The use of the possessive preposition "***of***" shows that the "***claims***" to immunity must be asserted by the foreign state.

      Secondly, the cases cited by the Government permit a court to consider an affirmative defense *sua sponte* only in two narrow and distinct circumstances, neither of which is remotely relevant to the issue at bar:

      The primary rationale relied upon in all of the cases cited by the Government for permitting a court to consider an affirmative defense *sua sponte* is the need to prevent waste of judicial resources and to promote judicial efficiency.  This rationale comes into play when, for example, a party fails to raise a defense of res judicata or claim preclusion, or fails to exhaust other remedies, as discussed at length in the cases cited by the Government.

      The Government does not even attempt to demonstrate, because it cannot, how permitting *sua sponte* consideration of a sovereign immunity defense to execution would preserve judicial resources and boost efficiency.

      On the contrary, while *sua sponte* consideration of a res judicata defense will obviously save judicial resources, it would be an egregious waste of judicial time and effort for a court to consider an FSIA defense to execution when the foreign state involved has failed to assert it.  The instant proceeding is a perfect case in point: if Magistrate Judge Ashman's decision is overruled, this Court will need to expend significant time and resources determining whether (as plaintiffs would argue) the Iranian property at issue is amenable to execution under TRIA §201 and/or under FSIA §1610. Determining whether the property is subject to execution under §201 or §1610 is to a great extent a fact-dependant inquiry, and the Court would therefore also need to supervise the remaining discovery, including the long-delayed examinations of Citation Respondents' affiants, and to resolve any discovery disputes.[10]  Indeed, plaintiffs successfully moved to stay discovery pending

---

[10] Even if this Court ultimately affirms its interlocutory holding that §1610 requires that the property be used in the United States for a commercial activity by the foreign state itself, plaintiffs intend to demonstrate that the loan of the Persepolis collection to the University of Chicago by Iran constitutes commercial use of the property in the United States by Iran itself.  See Malewicz v. City of Amsterdam, 362 F.Supp.2d 298 (D.D.C. 2005) (holding that loan of artwork by foreign state to U.S. museums for exhibition constitutes commercial activity in the United States by the foreign state under the FSIA.).  Clearly, this will be a fact-heavy inquiry.

disposition of their motion for partial summary judgment <u>precisely in order to spare the Court</u> and the parties the extensive – and unnecessary – efforts involved in litigating Iran's immunity defenses. <u>See</u> Plaintiffs' Motion To Stay Discovery Pending Determination Of Plaintiffs' Motion For Partial Summary Judgment, docket #83.

Thus, the very goal underlying the cases cited by the Government – judicial efficiency – strongly <u>favors</u> and <u>supports</u> Magistrate Judge Ashman's decision.

The other line of cases cited by the Government involves the rather obscure and extremely narrow world of affirmative defenses to federal habeas petitions brought against state court criminal convictions. The affirmative defenses involved are non-exhaustion of state remedies and abandonment of state law remedies (i.e. failure to appeal).[11] The cases cited by the Government hold that when a federal court finds one of these affirmative defenses applicable, it may elect to raise the defense *sua sponte*, and decline to entertain a habeas challenge to the state court conviction being challenged.

The rationale for this allowance is that when a state convict has failed to pursue or exhaust his state law remedies, constitutional principles of federalism may sometimes favor a federal court declining to disturb the state court conviction. Simply put, the convict should not be permitted to seek federal court review of his state court conviction while ignoring or circumventing state law procedures and remedies. That would upset the delicate balance of power between the federal government and those of the several States.

---

Plaintiffs take this opportunity to stress, once again, that they are well-aware of the importance of these artifacts and intend, when the time comes for turnover, to ask for appointment of a receiver to contact museums or academic institutions (possibly even the Citation Respondents themselves) interested in purchasing these collections for study and/or exhibition.

[11] Notably, the habeas cases cited by the Government all also rely heavily on the ground of judicial efficiency and conservation of judicial resources.

What this line of cases could possibly have to do with the case at bar only the Government knows. The balance of power between the federal government and the States is dictated by the Constitution and is *sui generis*, and cannot possibly be analogized to the relations between the United States and a foreign country. Federal power vis-à-vis the States – including the power to disturb a State court conviction – is limited by the Constitution, whereas any immunity granted by the United States to foreign nations "is a matter, not of legal right, but of 'grace and comity.'" Republic of Austria, 541 U.S. at 711. Furthermore, there is no issue here of failing to recognize or respect a judgment of a foreign court, because, obviously, there is no foreign judgment involved here at all. Indeed, by definition, an FSIA judgment-creditor is seeking to enforce a judgment against a scofflaw foreign judgment-debtor which (despite the passage of a reasonable period of time as required by FSIA §1610(c)) has refused to honor a United States judgment. Requiring such a scofflaw foreign state to assert its own FSIA defenses (i.e. subjecting it to the minor inconvenience of retaining a lawyer) therefore implicates literally none of the concerns at play in the cases cited by the Government.

Thus, in sum, the Government has utterly failed to demonstrate any rationale for adding an FSIA defense to execution to the miniscule class of affirmative defenses that may be raised by a court *sua sponte*. On the contrary, the main rationale cited by all the cases relied upon by the Government – judicial efficiency – militates strongly against *sua sponte* consideration of a sovereign immunity defense.[12]

---

[12] The Government also cites Hassan v. United States Postal Service, 842 F.2d 260, 263 (11th Cir. 1988) as authority for allowing a party to raise an affirmative defense untimely. It also cites Mitchell v. Jefferson County Bd. of Educ., 936 F.2d 539, 543 (11th Cir. 1991) which, upon examination, turns out to contain nothing but a dictum citing to Hassan.

These cases are wholly irrelevant, since Iran has not appeared to assert its FSIA defense untimely, or at all.

Finally, even in respect to those few types of affirmative defenses that may be raised by a court *sua sponte*, the court is not <u>required</u> to raise the defense but merely <u>permitted</u> to do so in appropriate circumstances:

> We hold here only that a court *may* raise the state procedural bar defense sua sponte, not that it *must* raise such a defense if the parties fail to raise it on their own.  Indeed, as we stressed above, in an adversarial system such as ours, it will generally be better to consider only those defenses that are properly raised by the parties.  <u>We merely recognize here the court's power to raise the state procedural bar defense sua sponte when, within its discretion, the court deems it appropriate to do so.</u>

<u>Hardiman</u>, 971 F.2d at 504-505 (emphasis in italics in the original, emphasis by underline provided).

Thus, even if the Government had offered a convincing rationale for adding an FSIA defense to execution to the small class of affirmative defenses that can be raised by the court *sua sponte* (and it has not), that would mean only that a court <u>may</u> do so "when, within its discretion, the court deems it appropriate to do so" in a given, specific case.  <u>Id</u>.

Here, the Government has not even argued – let alone shown – any grounds whatsoever as to why in the <u>instant case</u> the court would or should consider Iran's FSIA defenses *sua sponte* (assuming, purely *arguendo*, that the court had discretion to do so).  The Government has not pointed to any such grounds because none are even wildly imaginable in the instant case.  Iran is a state-sponsor of terrorism which trained and financed the terrorists who injured the plaintiffs.  Iran has refused to honor the judgment of a United States federal court, and forced plaintiffs to expend years of effort and significant resources in an almost entirely vain effort to locate and execute upon Iranian assets.  Moreover, Iran is perfectly capable of appearing to seek to assert its own FSIA defenses, as Magistrate Judge Ashman found in the context of his analysis of Citation Respondents' proxy pleading arguments.[13]

---

[13] The Government's claim that "much of the Magistrate Judge's opinion is based on his speculation as to Iran's purposes in not appearing in these proceedings" (Second SOI at 10) is absurd.  Magistrate Judge

Thus, even if courts had the authority, in appropriate cases, to raise an FSIA defense to execution *sua sponte*, this would most certainly not be such a case.

Moreover, assuming, *arguendo*, that courts could – where appropriate and in special circumstances – consider an FSIA defense to execution on their own motion, the existence of such authority would support, not undermine, Magistrate Judge Ashman's conclusion. Such authority, if it existed, would allow courts, where some extraordinary interest or right was at stake, to take the initiative and protect that interest or right. Such authority would therefore function as a "safety valve" exception and allow application of the general rule (i.e. that no party but the foreign state may raise the defense) absent extraordinary exigencies, and at the same prevent any dire consequences that might result in the rare case by inflexible application of the general rule. The existence of such exceptional authority would therefore render the rule laid down by Magistrate Judge Ashman all the more just and reasonable.

### d.    Fed.R.Civ.P. 8 Is Irrelevant Here

The Government criticizes Magistrate Judge Ashman for purportedly basing his decision on Rule 8 of the Federal Rules of Civil Procedure. Second SOI at fn. 6.

In fact, Magistrate Judge Ashman did no such thing. Magistrate Judge Ashman's analysis of Rule 8 was made in <u>response</u> to and in <u>refutation</u> of a claim by the Citation Respondents that sovereign immunity could not be an affirmative defense because it is not specifically enumerated in Rule 8. <u>See</u> Field Museum's memorandum in opposition to plaintiffs' motion for partial summary judgment, at 4-5. ("The exemption from execution appearing in section 1610 of the FSIA is not among the affirmative defenses recognized by the federal rules").

---

Ashman's analysis of Iran's ability to appear was made in response to Citation Respondents' attempt to claim that Iran was unable to do so, founded on their own speculations as to Iran's motives, and that proxy pleading should therefore be allowed. Moreover, the evidence presented to Magistrate Judge Ashman conclusively proved that Iran is easily capable of appearing, which is the only relevant question in this regard.

Plaintiffs rebutted this argument in detail. <u>See</u> Plaintiffs' Reply in Further Support of Their Motion for Partial Summary Judgment, at 6-9 (docket #113).

Thus, plaintiffs have never asserted Rule 8 as ground for anything. Rather, plaintiffs addressed Rule 8 only for the purpose of refuting the Field Museum's argument that the language of Rule 8 somehow "proves" that sovereign immunity cannot be an affirmative defense. Magistrate Judge Ashman's discussion of Rule 8 was made entirely for the purpose of disposing of the Field Museum's Rule 8 argument.

Indeed, Rule 8 is irrelevant to the issue before the Court. Sovereign immunity is an affirmative defense because, as shown <u>supra</u>, nearly a century of case law and Congress have defined it as such. The FSIA is a free-standing statute that must be interpreted within the context of its own legislative history and purpose. Moreover, the FSIA applies in both federal and state courts. 28 U.S.C. §1602. Therefore, neither federal nor state rules of procedure governing affirmative defenses could possibly dictate whether or not foreign sovereign immunity is an affirmative defense.[14]

The Government's Rule 8 argument therefore misconstrues Magistrate Judge Ashman's purpose in addressing Rule 8, and is in any case wholly irrelevant to the issue before the Court.[15]

---

[14] Presumably, however, state and federal rules of procedure might well apply to the <u>timing</u> and <u>form</u> of the assertion of a foreign sovereign immunity defense.

[15] In any case, aside from being irrelevant, the Government's Rule 8 argument is specious. The Government claims that Rule 8 only applies to "pleadings" and so cannot apply to a "motion" for an attachment. This argument fails on several grounds. First, this court has interpreted the phrase "pleadings" in Rule 8 to include motions. <u>See</u> <u>e.g.</u> <u>Dumas v. Chicago Housing Authority</u>, 930 F.Supp. 1238, 1240 (N.D.Ill. 1996) (applying Rule 8 to motion for summary judgment). Second, the Government's assumption that turnover proceedings must be brought by "motion," rather than plenary action, is utterly baseless. Indeed some jurisdictions <u>require</u> that enforcement proceedings be brought by a plenary action. <u>See</u> <u>e.g.</u> New York C.P.L.R. §§ 401, 402, 5225, 5227 (mandating that turnover proceedings be brought by a plenary "special proceeding"). Turnover is also permitted in many jurisdictions by a creditor's suit. <u>See</u> <u>generally</u> 21 Am. Jur. 2d Creditors' Bills §25. Third, the authorities and case law cited by plaintiffs in their reply in further support of their motion for partial summary judgment demonstrate incontrovertibly that Rule 8 applies to affirmative defenses to judgment enforcement proceedings. <u>Id</u>. at 6-9.

**e.**   **The Government Has Carefully Refrained from Endorsing the Fifth Circuit's Construction of § 1610(c) of the FSIA**

The Citation Respondents and the Government concede, as they must, that the sole authority contrary to Magistrate Judge Ashman's decision is <u>Walker International Holdings Ltd. v. Republic of Congo</u>, 395 F.3d 229 (5th Cir. 2004).

As discussed in detail in Section (b) of Plaintiffs' Memorandum In Response To Citation Respondents' Objections To The Magistrate Judge's Recommendations Of December 15, 2005 (docket #142), the holding in <u>Walker International</u> is based directly on <u>Connecticut Bank of Commerce v. Republic of Congo</u>, 309 F.3d 240 (5th Cir. 2002), in which the Fifth Circuit erroneously interpreted §1610(c) as requiring a court to examine FSIA defenses to execution *sua sponte*.

As plaintiffs demonstrated (<u>Id</u>.), if the construction of §1610(c) set out in <u>Connecticut Bank</u> is rejected by this Court – as it surely should be – the derivative holding in <u>Walker</u> evaporates.

Citation Respondents, who correctly recognize that the Fifth Circuit's interpretation of §1610(c) is the *sine qua non* gravamen of <u>Walker</u>, have argued heatedly (but baselessly) that that interpretation is correct.

In notable contrast, the Government has <u>not</u> endorsed the Fifth Circuit's interpretation of §1610(c).  The Government cites <u>Walker</u> in its SOI as authority for its bottom-line holding, but the Government carefully – and very significantly – refrains from adopting the Fifth Circuit's holding that §1610(c) requires a court to examine FSIA defenses to execution *sua sponte*.

The reason for the Government's silence is not hard to guess: it knows that the <u>Connecticut Bank</u>/<u>Walker</u> construction of §1610(c) is not correct.

**f.**   **Nothing in Magistrate Judge Ashman's Decision Detracts From The United States' Treaty Obligations or Statutory Rights**

The Government complains that "the Magistrate Judge's opinion appears to make no allowance for the circumstance where a treaty obligation of the United States might prevent the attachment of a foreign sovereign's property." Second SOI at 8, n. 2.[16]

This claim is a baseless red herring. Plaintiffs themselves expressly stated that "the United States may have the right to file a statement of interest, or even intervene, in a proceeding that potentially violates a treaty obligation or a statutory right of the United States itself . . ." Plaintiffs' Reply In Further Support Of Their Motion For Partial Summary Judgment, at 21 (docket #113).

Indeed, plaintiffs cited numerous examples of treaties and statutes – none of which are relevant or applicable here – that might give the United States standing to oppose execution of foreign state property. Id. at Section (h).

Thus, Magistrate Judge Ashman did not address this issue, because it is not relevant here and so not in dispute.[17]

---

[16] In that same footnote, the Government also complains that Magistrate Judge Ashman did not address §1611 of the FSIA, which provides that certain types of foreign state property are immune from attachment even when used for a commercial purpose in the United States. On the one hand, there is no clear reason why a foreign state would not have to raise its §1611 defense. On the other hand, it's possible that §1611 is in the nature of lex specialis. In any case, since none of the property here is subject to §1611, and since Magistrate Judge Ashman did not discuss §1611, the Court has absolutely no reason to reach this question.

[17] Another – whopping – red herring contained in the SOI is the statement that "Iran may intend to seek compensation from the United States, and ultimately from U.S. taxpayers, in [the Iran-U.S. Claims Tribunal] if the artifacts are improperly allowed to be attached here . . ." Id. at 11. This remark, which appears designed to frighten the Court, is wildly misleading:

First, only a small fraction of the assets here are before the Tribunal (the Chogha Mish collection). Second, the SOI coyly says only that Iran may "intend to seek" compensation because, on information and belief, there would be no basis whatsoever for Iran to actually receive any compensation through the Tribunal for assets it lost via judgment execution proceedings in U.S. courts, particularly since its judgment debt would be credited with the value of any such assets. Third, in an execution proceeding brought by the plaintiffs in the Northern District of Texas against a home in Lubbock owned by Iran and at issue before the Claims Tribunal, the Government itself informed the district court that "under the current legal framework, the United States is not in a position to interpose any objection to the seizure and sale of the property . . ." See Notice of the United States, filed in Rubin v. Islamic Republic of Iran, Civil No. 2-03MC-0014J (N.D.Tex) docket #10; Hegna v. Islamic Republic of Iran, 376 F.3d 485 (5th Cir. 2004) (noting that the home was at issue before the Claims Tribunal). Thus, the fact that the Chogha Mish collection is at issue before the Claims Tribunal does

20

## Conclusion

Magistrate Judge Ashman's decision should be affirmed.


Respectfully Submitted,

JENNY RUBIN, DEBORAH RUBIN,
DANIEL MILLER,  ABRAHAM MENDELSON,
STUART E. HERSH, RENAY FRYM, NOAM
ROZENMAN, ELENA ROZENMAN and TZVI
ROZENMAN

By:____/S/   David J. Strachman_____
David J. Strachman
Robert S. Parker
McIntyre, Tate, Lynch & Holt
321 South Main Street, Suite 400
Providence, RI 02903
(401) 351-7700
(401) 331-6095 (fax)

Robert D. Cheifetz
Daniel A. Shmikler
Sperling & Slater, P.C.
55 West Monroe Street, Suite 3200
Chicago, IL 60603
(312) 641-3200
(312) 641-6492 (fax)

CERTIFICATION

I hereby certify that on the 12th day of April 2006, a true copy of the within has been forwarded to the following via ECF:

Matthew Allison
Thomas A. Doyle
Richard Franklin
Baker & McKenzie
1 Prudential Plaza, Suite 3500
130 East Randolph Drive
Chicago, IL 60601

---

not put the United States is a position to "interpose any objection to the seizure and sale of the property," and the reference to the Claims Tribunal in the SOI is therefore meaningless.

Thomas Walsh
U.S. Attorney's Office
219 S. Dearborn Street, 5th Floor
Chicago, IL 60604

Thomas J. Cunningham
R. Clay Bennett
Lord Bissell & Brook
111 South Wacker Drive
Chicago IL 60606

David J. Lanciotti
Vice President and Counsel
Chicago Title and Trust
171 North Clark Street, 4th Floor
Chicago, IL 60601

Rupa Bhattacharyya
United States Department of Justice
Federal Programs Branch
P.O. Box 883
901 East Street, N.W., Room 910
Washington, DC 20044

And by regular mail to

Lawrence W. Newman
Jacob M. Kaplan
Baker & McKenzie
1114 Avenue of the Americas
New York, NY 10036

/S/ David J. Strachman

_____